Kenneth A. Plevan
kenneth.plevan@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036 – 6522
Phone: (212) 735-3410
Fax: (212) 777-3410

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MUENCH PHOTOGRAPHY, INC.,<br><br>*Plaintiff,*<br><br>- v -<br><br>HOUGHTON MIFFLIN HARCOURT PUBLISHING COMPANY and R.R. DONNELLEY & SONS COMPANY,<br><br>*Defendants*. | ECF CASE<br>ELECTRONICALLY FILED<br><br>09-CV-2669 (LAP) (JCF) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION**
**TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

**Table of Contents**

Table of Authorities ..................................................................................(ii)

INTRODUCTION ......................................................................................1

ARGUMENT..............................................................................................5

I.   THIS COURT HAS NO JURISDICTION OVER PLAINTIFF'S CLAIMS
     BECAUSE THE REGISTRATIONS PLAINTIFF RELIES ON CANNOT
     UNDER THE CONTROLLING STATUTE, 17 U.S.C. § 409, SERVE AS
     VALID REGISTRATIONS OF THE COPYRIGHTS AT ISSUE ....................5

     A.   The Registrations Alleged In The Complaint Are Invalid On Their Face
          As to Plaintiff.................................................................................5

     B.   The Registrations Procedures Followed Here Were The Result Of Private
          Discussions Between The Copyright Office And The Representatives Of
          Certain Stock Photo Agencies ..........................................................6

     C.   The Privately Discussed Registration Process Plaintiff Relies On Deserves
          No Deference And Directly Contradicts The Clear Terms Of The
          Controlling Statute..........................................................................10

     D.   The Registration Procedure Relied On By Plaintiff Conflicts with
          Copyright Office Regulations..........................................................12

     E.   Properly Developed And Implemented Rules For The Registration Of
          Large Numbers Of Photographs Already Exist ....................................13

CONCLUSION..........................................................................................15

## Table of Authorities

**Cases**                                                                      **Page(s)**

*Bean v. McDougal Littell*, No. 07-8063-PCT-JAT, 2008 WL 2896950
(D. Ariz. July 28, 2008) ............................................................................... 3

*Boyds Collection, Ltd. v. Bearington Collection, Inc.*, 360 F. Supp. 2d 655 (M.D. Pa. 2005) ..... 11

*Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837 (1984) ...................... 10

*Christensen v. Harris County*, 529 U.S. 576 (2000) ...................................................... 11

*Fonar Corp. v. Domenick*, 105 F.3d 99 (2d Cir. 1997) ..................................................... 5

*Goldman v. Belden,* 754 F.2d 1059 (2d Cir. 1985) ........................................................ 2

*Gross v. NYP Holdings, Inc.*, No. 06 Civ. 7863 (RMB)(JCF), 2007 WL 1040033
(S.D.N.Y. Apr. 4, 2007) ............................................................................... 2

*Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257 (2d Cir. 2005) ........... 2

*Kelly v. L.L. Cool J.*, 145 F.R.D. 32 (S.D.N.Y. 1992), *aff'd*, 23 F.3d 398 (2d Cir. 1994) .......... 1, 5

*Kenbrooke Fabrics Inc. v. Soho Fashions Inc.*, 13 U.S.P.Q.2d (BNA) 1472 (S.D.N.Y. 1989) ..... 6

*Morris v. Bus. Concepts, Inc.*, 259 F.3d 65 (2d Cir. 2001), *opinion modified,*
*reh'g denied*, 283 F.3d 502 (2d Cir. 2002) ............................................................ 5

*Kugel v. United States*, 947 F.2d 1504 (D.C. Cir. 1991) .............................................. 13

*Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144 (1991) ...................... 10

*Reed Elsevier, Inc. v. Muchnick*, 129 S. Ct. 1523 (2009) ............................................. 1

*Schweiker v. Hansen*, 450 U.S. 785 (1981) ............................................................. 12

*United States v. Mead Corp.*, 533 U.S. 218 (2001) ..................................................... 10

**STATUTES**                                                                   **PAGE(S)**

17 U.S.C. § 408 ........................................................................................ 13

17 U.S.C. § 409 ................................................................................. 2, 5, 6, 11

17 U.S.C. § 411 ...................................................................................... 1, 5

ii

37 C.F.R. § 202.3 ............................................................................................... 3, 12, 13

**OTHER**                                                                                    **PAGE(S)**

5 William F. Patry, *Patry On Copyright* § 17:111 (2007) ............................................. 6

H.R. Rep. No. 94-1476 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659 ................................ 11, 13

Group Registration of Photographs, 66 Fed. Reg. 37142 (July 17, 2001) .................................... 13

## <u>MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION</u>

Defendants Houghton Mifflin Harcourt Publishing Company ("HMH") and R.R. Donnelley & Sons Company (collectively, "Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(1), respectfully submit this Memorandum of Law in Support of Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction.

### INTRODUCTION

The Complaint herein, dated March 23, 2009, alleges two claims for copyright infringement, one against each Defendant. Plaintiff Muench Photography, Inc. ("MPI") alleges infringement of 188 licenses to publish approximately 180 unique copyrighted photographs. (MPI does not offer any specifics regarding the number of images, but the total of 180 photographs can be estimated based on the number of unique "Corbis Image #'s" in the chart annexed to the Complaint). (Ex. A to Compl.)

To satisfy its initial burden of establishing subject matter jurisdiction with proof that the 180 copyrights at issue are validly registered with the United States Copyright Office, *see Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 37 n.6 (S.D.N.Y. 1992) (under 17 U.S.C. § 411(a), "[c]opyright registration is a jurisdictional prerequisite to an infringement suit"), *aff'd*, 23 F.3d 398 (2d Cir. 1994),[1] MPI alleges that all 180 copyrights are covered by one of six copyright registration numbers. (Ex. A to Compl.) As MPI did not attach the actual registration certificates to its

---

[1]     On March 2, 2009, the Supreme Court granted certiorari on the question of whether § 411(a) limits a court's jurisdiction. *Reed Elsevier, Inc. v. Muchnick*, 129 S. Ct. 1523 (2009). That case will not likely be decided for some time, and the law of this Circuit is clear. And, regardless of the Supreme Court's ultimate decision on whether § 411(a) is properly considered jurisdictional, the registration requirement would still be controlling and a claim without a valid registration must in any event be dismissed once the issue is raised.

Complaint, HMH has obtained the six registrations in question from the Copyright Office. (Declaration of Kenneth A. Plevan, dated May 15, 2009 ("Plevan Decl."), Exs. 1 – 6.)[2]

There is no subject matter jurisdiction here because the six registrations listed by MPI are not valid registrations of the works at issue. None of the six identify MPI, David Muench, or Marc Muench as either a copyright claimant or an author. (Compl. ¶ 2 (identifying MPI as the licensing entity for David and Marc Muench).) Section 409 of the Copyright Act mandates that all copyright registration applications include the names of the claimant and the author, as well as the title. 17 U.S.C. § 409(1), (2), (6). Thus, MPI cannot rely on these registrations to establish subject-matter jurisdiction, and this case must be dismissed.

Moreover, the Copyright Office practice of allowing a registration of a collective work to cover self-contained works for which the copyright claimant is the same, without requiring the claimant to list the author and title for each such embodied work, conflicts with the controlling statute requiring such information and warrants no deference.

Materials provided by MPI's counsel in a parallel lawsuit, *Bean v. McDougal Littell, a division of Houghton Mifflin Harcourt*, No. 07 cv 8063 (D. Ariz.) ("*Bean*"), indicate that in the 1990s representatives of a stock photography trade association met with representatives of the Copyright Office to discuss applying registration practices for stock photo databases. (*See infra*

---

[2]     The Court may look beyond the pleadings to decide a Rule 12(b)(1) motion to dismiss. *Gross v. NYP Holdings, Inc.*, No. 06 Civ. 7863 (RMB)(JCF), 2007 WL 1040033, at *1 (S.D.N.Y. Apr. 4, 2007) ("On a motion to dismiss under Rule 12(b)(1), a court may refer to evidence outside of the pleadings, such as affidavits and documentary exhibits."). Copyright registrations can also be considered on a Rule 12(b)(6) motion to dismiss. *Goldman v. Belden*, 754 F.2d 1059, 1065-66 (2d Cir. 1985) (evidence a court may take judicial notice of under Fed. R. Evid. 201 may be considered on a motion to dismiss); *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005) (under Fed. R. Evid. 201 courts may take judicial notice of copyright registrations).

I.B; Exs. 7 – 10.)[3] Specifically, the stock houses proposed registering their entire catalogs (and

subsequent databases) of possibly thousands of unrelated photographs taken by hundreds of

unrelated photographers under a single copyright registration. (*Id.*) It appears that in this case,

Corbis Corporation ("Corbis"), a photography stock house, filed in November, 1997, an initial

registration for its database (Ex. 1), and then filed quarterly updates pursuant to the Copyright

Office regulations for registration of automated databases, 37 C.F.R. § 202.3(b)(5). The objective

apparently was not simply to register the catalog or database as a collective whole, but rather to

make that single registration apply to each of the possibly thousands of individual photographs

contained within the collection so that the authors would not have to register any works

themselves.  (Ex. 7, ¶¶ 3, 7, 8.)

     To accomplish this, the stock houses proposed to obtain temporary copyright transfers

"'solely for the purpose of copyright registration'" from the photographers. (Ex. 7 ¶ 4.) After

completing the single registration, the stock houses would then assign the copyrights back to the

photographers. (*Id.*)[4] The purpose was to allow photographers to avoid the cost and burden of

registering their own works, even under the relatively inexpensive registration procedures

---

[3]     All of the exhibits cited herein are attached to the Plevan Declaration.

[4]     In *Bean*, the parties litigated whether this temporary transfer of copyright "solely for the
purpose of copyright registration" was sufficient to meet the requirements of copyright
registration. The court in that case determined on the available facts specific to Bean that the
transfer was adequate. *Bean v. McDougal Littell*, No. 07-8063-PCT-JAT, 2008 WL 2896950 (D.
Ariz. July 28, 2008). HMH believes that this issue was wrongly decided and it intends to
challenge any such alleged transfer in this case, if the transfer exhibits similar flaws. However,
MPI has not in its Complaint offered any documentation reflecting a transfer either to Corbis
(other than the reference to transfer by Agreement in the registrations) or from Corbis to MPI,
nor has it alleged the terms of a transfer. Thus, HMH cannot currently evaluate whether the
authors properly transferred the copyright to the copyright claimant Corbis or whether Corbis
properly transferred the copyright rights to MPI. If no such transfers occurred, then MPI lacks
standing for that reason to pursue the claims it asserts herein.

available under the Copyright Office regulations that allow photographers to register collections of unpublished photographs or photographs published within a year. *See* 37 C.F.R. § 202.3(b)(4),(10)).

After meeting with the Copyright Office, the trade association advised its members to list only three photographers (apparently chosen at random) on their registration applications, no matter how many photographers actually authored the photographs included in these massive aggregations of photographs. As support for this procedure, the association apparently relied on the private discussion with the Copyright Office, and later on a 2002 letter from Nanette Petruzzelli, Chief of the Examining Division. (Ex. 9.) In that letter, Ms. Petruzzelli referred to language in an internal office manual written in 1984 and a Circular discussing registration procedures for serial publications (*e.g.*, newspapers) that indicated that the Copyright Office occasionally permits claimants to file registrations that do not list every author of a multi-author work, although the Office prefers the inclusion of all authors names on continuation sheets. (*Id.* at 2.) Ms. Petruzzelli separately stated that where the individual authors are listed, the Office interprets a claim to extend to individual photographic authorship. (*Id.* at 1 – 2.)

Defendants do not dispute that there is no need to list every author of every work included in a compilation for purposes of obtaining registration of the *compilation* itself – that is, for the copyright in the selection, coordination and arrangement of the compilation – but the registration cannot be said to cover individual works contained within the registration unless they are also listed by title and author. Section 409 of the Copyright Act requires the registration to include the title and author of the works so that each registered work can be properly identified on the public record. In the registrations at issue here, neither the authors nor the titles of the works are listed, nor are the works necessarily even included in the deposit copies, as the deposit

regulations require only portions of the database to be deposited. *See* 37 C.F.R. § 202.20(c)(2)(vii), (viii).

The requirements of 17 U.S.C. § 409 are vital to the creation and maintenance of an accurate and searchable record of copyright that interested parties – including commercial interests and litigants – can use to ascertain whether a work has been registered, who created it, and who controls it. It makes a mockery of the registration requirement in § 411 of the Act to allow a registration that fails to identify the work at issue, and thus fails to meet the statutory requirement.

## ARGUMENT

I.  **THIS COURT HAS NO JURISDICTION OVER PLAINTIFF'S CLAIMS BECAUSE THE REGISTRATIONS PLAINTIFF RELIES ON CANNOT UNDER THE CONTROLLING STATUTE, 17 U.S.C. § 409, SERVE AS VALID REGISTRATIONS OF THE COPYRIGHTS AT ISSUE**

   A.  **The Registrations Alleged In The Complaint Are Invalid On Their Face As to Plaintiff**

   The Copyright Act at 17 U.S.C. § 411(a) mandates that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." In this Circuit, the registration requirement of §411(a) is jurisdictional. *Morris v. Bus. Concepts, Inc.*, 259 F.3d 65 (2d Cir. 2001), *opinion modified, reh'g denied*, 283 F.3d 502 (2d Cir. 2002); *Kelly*, 145 F.R.D. at 37 n.6. A copyright plaintiff must satisfy the initial burden of establishing jurisdiction with evidence of proper registration, usually in the form of a registration certificate. *See Fonar Corp. v. Domenick*, 105 F.3d 99, 104 (2d Cir. 1997). The Copyright Act also mandates that every registration application must identify, *inter alia,* the claimant, the author or authors of the work, and the title. 17 U.S.C. § 409(1), (2), (6).

5

Here, Plaintiff has not attached any certificate of registration to its Complaint. Instead, it provides a chart that alleges that each of the approximately 180 copyrights at issue falls under one of six registration numbers. (*See* Ex. A to Compl.) A review of these six registrations, available to the public via the Copyright Office's website, reveals that none of the registrations identifies MPI, or anyone named Muench, as either a claimant or an author of any works purportedly covered by those registrations. (Exs. 1 – 6.)

Plaintiff cannot meet its burden by only referring to registrations that exhibit no connection to MPI. *See Kenbrooke Fabrics Inc. v. Soho Fashions Inc.*, 13 U.S.P.Q.2d (BNA) 1472, 1476 (S.D.N.Y. 1989); *see also* 5 William F. Patry, *Patry On Copyright* § 17:111 (2007) ("Where the assignee is not listed [on the registration certificate], no prima facie status is accorded to the assignee's purported ownership, which must be proved up independently."). More significantly, registrations secured in the manner these registration were secured – naming only three random authors out of an unknown number of others (only registration VA0001038658 (Ex. 4) provides a number ("456 other photographers")) – fail to comply with the clearly enumerated registration requirements of the Copyright Act. 17 U.S.C. § 409. For that reason alone, the Complaint must be dismissed. MPI, of course, is free to secure valid registrations and then seek to pursue its claims.

**B.    The Registrations Procedures Followed Here Were The Result Of Private Discussions Between The Copyright Office And The Representatives Of Certain Stock Photo Agencies**

The six registrations Plaintiff cites in its Complaint were each issued to Corbis Corporation as the "Copyright Claimant." (Exs. 1 – 6.) For each registration the "Authorship on Application" lists Corbis and three individuals. (*Id.*) As noted, MPI is not identified on any of the registrations. Nor do they contain any other identifying information that could be used to connect

the registrations to MPI, or to any unnamed photographers whose work may have been aggregated into one of these six Corbis compilations. (*Id.*)

The documents MPI's counsel produced in support of the registrations challenged on other grounds in *Bean*, one of which is also at issue here (Ex. 1), establish that the interpretation that provided the apparent basis for this registration procedure exceeded the bounds of the Copyright Office's statutory authority – on the assumption that the Copyright Office in fact advised that there was no need to list all of the authors and yet have the registrations for the catalogs or databases cover each individual photograph.[5] According to the affidavit of Nancy Wolff, the lawyer for a trade association of certain stock houses, in 1995, Ms. Wolff and other representatives of the trade association met with staff members of the United States Copyright Office. (Ex. 7 ¶ 2.) At that meeting, Ms. Wolff and her colleagues outlined a mass registration procedure that would rely on a "temporary transfer of copyright ownership from the photographers to their stock agency (*id.* ¶ 3), "'solely for the purpose of copyright registration.'" (*Id.* ¶ 4.) The trade association posited that this limited, temporary transfer would then enable the stock houses to file a single registration as the copyright claimant for unlimited numbers of unrelated photographs authored by many unrelated photographers.

Once that single registration was secured, the stock house would then assign the copyrights back to the photographers and, as the trade association argued, both the collection (assuming the requisite originality of selection or arrangement to constitute a copyrightable collective work), and each individual photograph would be considered registered. (*See id.* ¶¶ 4, 9.) Ms. Wolff also instructed the trade association's members to "[l]ist the names of three

---

[5]    In addition, as noted, there would still have to have been proper assignment of rights to the claimant.

individual photographers whose work is in the catalog. . . . It is not important which three photographers are named." (Ex. 8 at 4.)

In 2002, Ms. Wolff once again approached the Copyright Office about the registration practices of her clients. (Ex. 7 ¶ 6.) In return, Ms. Wolff received a letter from Ms. Petruzzelli (Ex. 9) which outlined the latter's understanding of the "pattern" that stock house registrations "generally follow" and provided the Copyright Office's interpretation of that practice.

> The examiner interprets such information to indicate that the claim, or authorship, to which the registration extends consists of the compilation (selection, coordination or arrangement) of photographs and, perhaps, new copyrightable text authorship. Where individuals are listed at space 2a as additional authors, the Office considers the claim to extend also to the photographs themselves because, assuming that the claimant (owner of copyright) listed at space 4 is the author of the compilation (usually the stock photo agency), an acceptable transfer statement is also provided in space 4 of the form VA. *Thus, the Office interprets the claim to extend to the individual photographic authorship for which the names indicated as space 2b of the form VA are the responsible authors.*

(*Id.* (emphasis added).) Thus, Ms. Petruzzelli indicated that the Copyright Office interpreted the claims to extend to "individual photographic authorship" *only* for those photographers identified by name in the application. (*Id.*)

Later in the same letter, however, Ms. Petruzzelli appeared to contradict the limited view expressed above – that the registration extends to individual works only for those photographers named in the application – when she referred to two Copyright Office guidelines that contemplated naming only three authors when a large number of authors contribute to a single work. (Ex. 9 at 2.) The first source Ms. Petruzzelli cited is the *Compendium of Copyright Office Practices, Compendium II* (1984). The Copyright Office identifies this now twenty-five year old document as a "manual, intended primarily for Copyright Office staff." (*See* http://www.copyright.gov/compendium/ (the complete *Compendium II*, including this section, is not available on the Copyright Office web site – only two updates to unrelated sections are

8

available).) According to Ms. Petruzzelli, this internal manual stated that the Copyright Office preferred that a registration list all contributing authors, but that listing three authors and a reference to unnamed "others" was considered acceptable in some instances. (Ex. 9 at 2.) The second source Ms. Petruzzelli cited was *Circular 62, Serials (see* Ex. 11), a 2000 Circular that discussed registration procedures for serial works. (Ex. 9 at 2.)

While seemingly contradictory, these copyright staff statements can be reconciled as follows: not all authors are required to be listed for purposes of obtaining registration of the *database as a compilation,* but in order for the effect of the registration to extend to the individual photographs embodied in the database, the authors must be listed in space 2a of the application.

Indeed, Ms. Petruzzelli did not alter her earlier statement in her letter that the Copyright Office interpreted the registrations as extending only to named authors, nor did Ms. Petruzzelli state that the procedures developed for serial works were necessarily applicable to the stock photo agency catalogs or databases. *Circular 62* states that "[t]he classification 'serial' includes periodicals, newspapers, magazines, bulletins, newsletters, annuals, journals, proceedings of societies, and other similar works." (Ex. 11 at 1.)

Moreover, neither the internal manual nor *Circular 62's* discussion of transferred rights appears to contemplate a temporary transfer solely for registration purposes. (*Id.* at 3: "When a serial issue includes independently authored contributions in which all rights have been transferred in writing to the claimant of the entire serial issue, it is not necessary to include the names of the contributors.") Thus, it is not entirely clear what the Copyright Office's position was, or is today, in regards to these registrations. But, it is clear that MPI believes it can rely on these registrations to provide a basis for bringing an action for infringement of individual

9

photographs authored by MPI or David or Marc Muench, that were never identified by author or title in any copyright registration.

### C.    The Privately Discussed Registration Process Plaintiff Relies On Deserves No Deference And Directly Contradicts The Clear Terms Of The Controlling Statute

The informal Copyright Office interpretation at issue here – if it could even be considered an interpretation since there is no record of a clear statement unequivocally accepting MPI's apparent view of the registrations – is not due the level of deference accorded official agency actions taken within the parameters of the agency's Congressional mandate. *See United States v. Mead Corp.*, 533 U.S. 218, 227-8 (2001); *see also Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837 (1984). The interpretation here was the result of an informal, non-public discussion between a select group of industry insiders and representatives of the Copyright Office. (Exs. 7, 9.) Accordingly, it is only due deference "proportionate to its 'power to persuade.'" *Mead Corp.*, 533 U.S. at 235 (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)); *see also Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 157 (1991) ("some weight" is due to informal interpretations though not "the same deference as norms that derive from the exercise of . . . delegated lawmaking powers").

Here, there are only the statements and procedures outlined by Ms. Wolff to the members of the trade association, and a short letter from Ms. Pertuzzelli that never directly addresses whether the works of unnamed individual photographers can be registered in this manner. Accordingly, there is no record here that could persuade the Court that the interpretation reflects a reasoned and appropriate exercise of the Copyright Office's mandate. Moreover, even if a clear statement of the Copyright Office's position did exist, and even if it supported Plaintiff's apparent view, it would still be due no deference because granting registration of unnamed works of unnamed photographers directly conflicts with the clear terms of the statute. "The [Copyright

Office's] interpretation cannot trump the plain language of the governing statute." *See Boyds Collection, Ltd. v. Bearington Collection, Inc.*, 360 F. Supp. 2d 655, 662(M.D. Pa. 2005) (finding Copyright Office's interpretation of "useful articles" *vis a vis* clothing on dolls conflicted with the plain meaning of the statutory definition of "useful articles"); *see also Christensen v. Harris County*, 529 U.S. 576, 588 (2000) (no deference owed to agency actions that conflict with the governing statute).

The statute in 17 U.S.C. § 409(a)(2) requires the name and nationality or domicile of the "author *or authors*" of the work that is being registered. Similarly, 17 U.S.C. § 409(a)(6) requires the title of the work being registered. Nothing in the comments or the legislative history indicates that these requirements can be side-stepped or waived by the Copyright Office. To the contrary, the legislative history indicates that the registration requirements were chosen, *inter alia,* in order to provide an accurate public record: "the various clauses of section 409, which specify the information to be included in an application for copyright registration, are intended to give the Register of Copyrights authority to elicit all of the information needed to examine the application *and to make a meaningful record of registration.*" H.R. Rep. No. 94-1476, at 155-56 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5771-72 (emphasis added). Absent these vital pieces of information, there is no record at all of the registration. A party (*e.g.*, a business planning to use a work, or a defendant charged with infringing a work) cannot search the Copyright Office's records and determine who actually controls a work, or indeed, whether an individual has ever registered a copyright. The procedure employed here serves no purpose other than to promote mass registration of works in a single application, depriving the Copyright Office of the very modest but important fees it charges for group registrations, and undermining one of the very purposes of copyright registration.

11

**D.      The Registration Procedure Relied On By Plaintiff
          Conflicts with Copyright Office Regulations**

Moreover, nothing in the regulations promulgated under the Copyright Act allows for the

manner of anonymous registration employed here. The regulations at 37 C.F.R. § 202.3(b)(4)

("Registration as a single work") permits registration of a single work to extend to self-contained

works included in a single unit of publication only where the copyright claimant is the same.

This provision does not provide for registration where the names of individual contributors and

their works are not included in the registration application, nor does it provide for listing only

three random contributors. *Id.* Indeed, 37 C.F.R. § 202.3(b)(3) ("Continuation Sheets")

contemplates the listing of additional relevant information including "titles of independent works

in which copyright is being claimed and which appear … within a collection of works," as well

as authors, as indicated by Ms. Petruzzelli in her letter (Ex. 9 at 2) (referring to the internal office

manual preference that all authors be listed on continuation sheets). Nor does the regulation itself

under which Corbis appears to have registered, 37 C.F.R. § 202.3(b)(5) ("Group registration of

related works: Automated databases"), provide for the registration of the database to apply to

individual works contained within the database.

       The lack of any rule allowing for a single mass registration of works by numerous

authors under three random names is also demonstrated by the fact that Ms. Petruzzelli in her

February 12, 2002 letter could not cite a single regulation authorizing this procedure. Instead, she

pointed to a Circular (*see* Ex. 11) that covers serial publications – which do not resemble in the

least the compilations of convenience at issue here – and a provision in the *Compendium II*, a

twenty-five year old internal manual. (Ex. 9 at 2.) Such internal agency guidelines and manuals

have no legal force. *Schweiker v. Hansen*, 450 U.S. 785, 789 (1981) (SSA manual did not carry

legal force); *see also Kugel v. United States*, 947 F.2d 1504, 1507 (D.C. Cir. 1991) ("[I]ntra-office manuals, unlike official regulations, have no legal force.").

In sum, nothing in the Copyright Office regulations support the interpretation of copyright registration procedures that MPI will presumably rely on.

###    E.    Properly Developed And Implemented Rules For The Registration Of Large Numbers Of Photographs Already Exist

With the passage of the 1976 Act, Congress explicitly granted the Copyright Office authority to establish procedures for the group registration of copyrights by the same author. *See* 17 U.S.C. § 408.

> The provision empowering the Register to allow a number of related works to be registered together as a group represents a needed and important liberalization of the law now in effect. At present the requirement for separate registrations where related works or parts of a work are published separately has created administrative problems and has resulted in unnecessary burdens and expenses on authors and other copyright owners. In a number of cases the technical necessity for separate applications and fees has caused copyright owners to forego copyright altogether. Examples of cases where these undesirable and unnecessary results could be avoided by allowing a single registration include . . . *a group of photographs by one photographe*r . . . .

H.R. Rep. No. 94-1476, at 154, 1976 U.S.C.C.A.N. 5659, 5770 (emphasis added).

The Copyright Office acted on this mandate and, after a proper notice and comment period, it issued formal rules to govern the registration of multiple works by the same author under a single registration. *See* 43 Fed. Reg. 965, 966-67 (January 5, 1978) (later codified as 37 C.F.R. § 202.3). In 2001, the Copyright Office, following an additional notice and comment period, announced a further liberalization of the group registration procedures, and in particular the deposit requirements, specifically for collections of published or unpublished photographs *by a single photographer. See generally* Group Registration of Photographs, 66 Fed. Reg. 37142, 37142-50 (July 17, 2001) (later codified at 37 C.F.R. § 202.20(c)(2)(xx)). Specifically, the Copyright Office concluded pursuant to this lengthy notice and comment proceeding that (1)

group registrations of photographs should be limited to photographs taken by the same individual author (id. at 37148) and noted that such is supported by subsections 408(c)(2) and (3) of the Copyright Act and the legislative history; and (2) that the deposit required to accompany the registration application should include a copy of each photograph and date of publication and that the photocopies must "clearly depic[t] the photograph" (id. at 37146-47).

The industry practice at issue here is therefore not only an unauthorized evasion of the statutory registration requirements listed in 17 U.S.C. § 409, but it is also an evasion of the clear rules promulgated by the Copyright Office specifically for *photographers* pursuant to the properly developed process that Congress explicitly authorized. The industry practice at issue here is therefore not only an unauthorized evasion of the statutory registration requirements listed in 17 U.S.C. § 409, but it is also an evasion of the properly developed process that Congress explicitly authorized, and the Copyright Office explicitly promulgated *for photographers*. That process preserves the statutory requirement that a registration include the names of the claimant, the authors, and the titles of the works in question, while addressing the registration fee issue. Rather than rely on a convoluted, impermissible work-around centered on hollow transfers of copyright "solely for the purpose of copyright registration," photographers can simply register their works under their own names, and at minimal cost to them (the Copyright Office currently charges $45 for a single group registration of up to 750 photographs (Ex. 12)). That is what should have occurred here. If MPI does indeed own copyrights in works that it believes HMH has infringed, then it is still free to properly register those images (at minimal expense) and pursue its claims. Until it does so, however, MPI's claims must be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1). In the alternative, Defendants request that the Court stay this lawsuit until MPI secures proper registrations for the copyrights it alleges HMH has infringed, and files an amended complaint that alleges facially valid registrations.

Dated: May 15, 2009                          Respectfully submitted,

                                             s/ Kenneth A. Plevan
                                             Kenneth A. Plevan
                                             kenneth.plevan@skadden.com
                                             SKADDEN, ARPS, SLATE,
                                              MEAGHER & FLOM LLP
                                             Four Times Square
                                             New York, NY 10036 – 6522
                                             Phone: (212) 735-3410
                                             Fax: (212) 777-3410

                                             Attorney for Defendants

15