Kenneth A. Plevan
J. Russell Jackson
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, NY 10036 – 6522
Phone: (212) 735-3000
Fax: (212) 735-2000

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MUENCH PHOTOGRAPHY, INC., <br><br> *Plaintiff,* <br><br> - v - <br><br> HOUGHTON MIFFLIN HARCOURT PUBLISHING COMPANY and R.R. DONNELLEY & SONS COMPANY, <br><br> *Defendants.* | ECF CASE <br> ELECTRONICALLY FILED <br><br> 09-CV-2669 (LAP) (JCF) |

<u>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**</u>

## TABLE OF CONTENTS

Table of Authorities .................................................................................................... ii

INTRODUCTION ......................................................................................................1

ARGUMENT..............................................................................................................4

I.    THE DATABASE REGISTRATIONS ALLEGED IN THE COMPLAINT ARE
      INVALID AS TO THE CONTRIBUTIONS OF UNNAMED AUTHORS TO
      THOSE DATABASES ........................................................................................4

      A.    The Registrations Alleged In The Complaint Are Invalid As To Plaintiff
            On Their Face .........................................................................................4

      B.    The Regulation Governing Database Registrations Does Not Extend Such
            Registrations To The Contributions of Unknown Authors And The
            Statutory And Regulatory Provisions That Provide For The Registration of
            A Collective Work And Its Individual Components Under A Single
            Registration Are Not Applicable Here ....................................................5

      C.    Corbis Corporation Did Not Qualify As A Claimant Under 37 C.F.R. §
            202.3(A)(3)(i) For The Individual Photographs Included In Its Databases
            When It Registered The Databases ..........................................................8

            1.    In The Original 1997 Transfers Between The Authors Of The
                  Images And Corbis, The Authors Only Transferred Title In The
                  Underlying Images, Not The Copyrights...................................9

            2.    In Every Case, The Authors Of The Images Limited The Scope Of
                  Corbis' Rights In The Underlying Images Or Copyrights To
                  "Registration Purposes" Only, Thereby Failing To Transfer All
                  Rights In The Copyrights.........................................................10

            3.    The Footnote To 37 C.F.R. § 202.3(a)(3) Cannot Be Read To
                  Undermine The Clear Statutory Requirement That A Claimant
                  Hold All Rights In A Copyright At The Time Of Registration ...............11

II.   PROPERLY DEVELOPED AND IMPLEMENTED RULES FOR THE
      REGISTRATION OF LARGE NUMBERS OF PHOTOGRAPHS ALREADY
      EXIST.............................................................................................................14

III.  THE EXPLICIT REGISTRATION REQUIREMENTS OF 17 U.S.C. § 409
      REFLECT CONGRESS' INTENT TO CREATE A ROBUST REGISTRATION
      SYSTEM..........................................................................................................15

CONCLUSION.........................................................................................................17

**Table of Authorities**

**Cases**                                                                                          **Page(s)**

*A. Brod, Inc. v. SK & I, Co.,* 998 F. Supp. 314 (S.D.N.Y. 1998) ...........................................12, 13

*Bean v. McDougal Littell*, No. 07-8063-PCT-JAT, 2008 WL 2896950
    (D. Ariz. July 28, 2008) ......................................................................................12, 13

*Carcieri v. Salazar,* 129 S. Ct. 1058 (2009) ..............................................................................11

*Chevron U.S.A., Inc. v. Natural Res. Defense Council, Inc.*, 467 U.S. 837 (1984).......................8

*Christensen v. Harris County*, 529 U.S. 576 (2000)....................................................................11

*Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090 (W.D. Wash. 2004)............................6

*Educ. Testing Servs. v. Katzman,* 793 F.2d 533 (3d Cir. 1986)....................................................6

*Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257 (2d Cir. 2005)............2

*Jefferson Airplane v. Berkeley Sys., Inc.*, 886 F. Supp. 713 (N.D. Cal. 1994)..............................6

*Morris v. Business Concepts, Inc.,* 283 F.3d 502 (2d Cir. 2002) ..................................................8

*Parks v. ABC, Inc.*, No. 06-cv-1364 (DAB), 2008 U.S. Dist. LEXIS 5085 (Jan. 24, 2008 S.D.N.Y.
    2008)....................................................................................................................9

*Reed Elsevier, Inc. v. Muchnick*, No. 08-103, 2010 U.S. Lexis 2202 (March 2, 2010)..................1

*Roth v. Jennings,* 489 F.3d 499 (2d Cir. 2007)..............................................................................2

*Sylvestre v. Oswald*, No. 91 CIV 5060 (JSM), 1993 WL 179101 (S.D.N.Y. May 18, 1993).....6, 7

*Szabo v. Errisson,* 68 F.3d 940 (5th Cir. 1995) ...........................................................................5

**Statutes**

17 U.S.C. § 103.............................................................................................................3, 5

17 U.S.C. § 106................................................................................................................10

17 U.S.C. § 202..................................................................................................................9

17 U.S.C. § 408.......................................................................................................3, 11, 14

ii

17 U.S.C. § 409...................................................................................... 2, 4, 7, 14, 15

17 U.S.C. § 411............................................................................................1, 4

17 U.S.C. § 501.............................................................................................13

37 C.F.R. § 202.3 ....................................................................................*passim*

## **Other**

5 William F. Patry, *Patry On Copyright* § 17:111 (2007) .........................................13

H.R. Rep. No. 94-1476 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659................................14, 16

Group Registration of Photographs, 66 Fed. Reg. 37142 (July 17, 2001) ...................................15

*The Berne Convention: Hearings on S. 1301 and S. 1971 Before the Subcomm. on Patents, Copyrights & Trademarks of the S. Comm. on the Judiciary*, 100th Cong. 55 (1988).....16

U.S. Copyright Office, *Annual Report of the Register of Copyrights*, 12 (2007) ........................16

Defendants Houghton Mifflin Harcourt Publishing Company ("HMH") and R.R.

Donnelley & Sons Company (collectively, "Defendants"), pursuant to Federal Rule of Civil

Procedure 12(b)(6), respectfully submit this Memorandum of Law in Support of Defendants'

Motion to Dismiss for Failure to State a Claim.

## INTRODUCTION

Plaintiff Muench Photography, Inc. ("MPI") alleges in the Complaint that HMH

infringed 188 licenses to publish approximately 180 unique copyrighted photographs. MPI does

not offer any specifics regarding the number of images and the 180 estimate is based on the

number of unique "Corbis Image #'s" in the chart annexed to the Complaint. (Ex. A to Compl.)

The Copyright Act mandates that a copyright holder may not "institute" an infringement action

unless the copyrights at issue are registered with the Copyright Office. 17 U.S.C. § 411(a)

("[N]o civil action for infringement of the copyright in any United States work shall be instituted

until preregistration or registration of the copyright claim has been made in accordance with this

title."); *Reed Elsevier, Inc. v. Muchnick*, No. 08-103, 2010 U.S. LEXIS 2202, at *7 (March 2,

2010) ("[Section 411(a)] establishes a condition—copyright registration—that plaintiffs

ordinarily must satisfy before filing an infringement claim and invoking the Act's remedial

provisions.").

To satisfy this mandatory pre-filing registration requirement, MPI alleges that all 180

copyrights are covered by one of six copyright registration numbers. (Ex. A to Compl.) Although

MPI neglected to attach the actual registration certificates to its Complaint, HMH has obtained

the six registrations in question from the Copyright Office. (Ex. 1 – 6 to Plevan Decl., filed

concurrently with Defendants' Motion.) The six registrations at issue are not valid registrations

of the images at issue in this case. They fail to comply with the clear requirements of section 409

of the Copyright Act, because none of the registrations identify MPI, David Muench, or Marc

Muench (Compl. ¶ 2 (identifying MPI as the licensing entity for David and Marc Muench)) as either a copyright claimant or an author, nor do the registrations identify the titles of the individual images allegedly registered. 17 U.S.C. § 409(1), (2), (6) (mandating that all copyright registration applications identify the claimant, the author, and the title of the work). MPI cannot establish that it has met the pre-filing registration requirement on the basis of these facially invalid registrations, and this case must be dismissed pursuant to Rule 12(b)(6).[1]

Moreover, neither the Copyright Act nor the Copyright Office regulations provide any valid exception to the requirements of Section 409 that would apply to the registrations at issue here. The registrations in question were applied for by Corbis Coroporation and made under the Copyright Office regulation that permits group registrations of databases and their updates. 37 C.F.R. § 202.3(b)(5). Accordingly, the works registered are the Corbis databases. The database registration regulation provisions contain no reference to the simultaneous registration of individual component parts of a database under the group registration, only to the database as a whole and its updates.

Further, the only statutory provision in the Copyright Act that addresses the extension of a copyright of a compilation to constituent works within the compilation clearly states that the copyright in the compilation extends only to constituent works contributed by the author of the

---

[1]    The Court may properly consider these materials, and other materials directly related to the certificates of registration at issue, in support of this Motion to Dismiss, because Plaintiff explicitly incorporated these certificates of registration into the Complaint. (*See* Compl. ¶ 10; *id.* Ex. A); *see also Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (documents not attached to a complaint may be considered on a Rule 12(b)(6) motion to dismiss if they are incorporated in the complaint by reference or if the complaint necessarily relies on them to support the allegations in the complaint). Moreover, copyright registrations in particular may be considered on a Rule 12(b)(6) motion to dismiss. *Island Software & Computer Serv. Inc. v. Microsoft*, 413 F.3d 257, 261 (2d Cir. 2005) (under Fed. R. of Evid. 201 courts may take judicial notice of copyright registrations).

compilation – a sensible exception to the requirements of section 409 that eliminates any need for an author to submit separate registrations to cover an individual short story within a collection of her stories, and the collection itself. *See* 17 U.S.C. § 103(b). This provision cannot be stretched to include component parts of a database contributed by authors other than the author of the database.

Plaintiff also cannot argue that Corbis was a proper claimant for the individual works at issue here when Corbis registered its databases. The temporary copyright transfers "solely for the purposes of copyright registration" that Plaintiff used in a misguided attempt to grant Corbis the power to register its works were not sufficient to confer claimant status on Corbis for those images.

There simply is no statutory or regulatory provision that allows for the extension of a database registration to constituent parts contributed by authors not named in the registration. Indeed, there is no need for such a jerry-rigged work-around of the section 409 requirements, because the Copyright Act explicitly provides for the group registration of a photographer's works. *See* 17 U.S.C. § 408; 37 C.F.R. § 202.3(b)(10). Absent a clearly applicable statutory exception to section 409 that would allow for the extension of these registrations to the contributions of unnamed authors, the registration requirements Congress set forth in section 409 must control. This case must be dismissed. Plaintiff, of course, is free to secure valid registrations for its works if it wishes to pursue litigation.[2]

---

[2]    As the Court knows, Defendants originally sought dismissal pursuant to Rule 12(b)(1) in accordance with the law of this Circuit at the time. (*See* Doc. No. 11.) In the course of briefing that jurisdictional motion, the parties and the Copyright Office placed a number of documents in the record, including declarations (*see, e.g.*, Ex. 14 to Doc. No. 18 (Decl. of E. Shirbroun in Support of Pl.'s Resp.); Doc. No. 27 (Decl. of N. Petruzzelli in Support of Copyright Office Statement of Interest)). No party to this litigation has disputed the authenticity or veracity of any such submissions, and no party has expressed a need for any further discovery into the issues this

*(cont'd)*

**ARGUMENT**

I.    **THE DATABASE REGISTRATIONS ALLEGED IN THE COMPLAINT ARE INVALID AS TO THE CONTRIBUTIONS OF UNNAMED AUTHORS TO THOSE DATABASES**

   A.    **The Registrations Alleged In The Complaint Are Invalid As To Plaintiff On Their Face**

The Copyright Act, in 17 U.S.C. § 411(a), mandates that "no civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title." The Copyright Act also mandates that every registration application must identify the claimant, the author or authors of the work, and the title. 17 U.S.C. § 409(1), (2), and (6).

Here, Plaintiff has not attached a certificate of registration to the Complaint. Instead, Plaintiff provides a chart that alleges that each of the approximately 180 copyrights at issue falls under one of six registration numbers. (*See* Ex. A to Compl.) A review of these six registrations, available to the public via the Copyright Office's website, reveals that none of the registrations identifies MPI, or anyone named Muench, as either a claimant or an author of any works purportedly covered by those registrations. (Ex. 1 – 6 to Plevan Decl.) The registrations name only three authors out of an unknown number of others (only registration VA0001038658 (Ex. 4) provides a number ("456 other photographers")). As applied to the works at issue in this case, these registrations do not meet the clearly enumerated registration requirements of the Copyright Act. 17 U.S.C. § 409. For that reason alone, Plaintiff cannot rely on these alleged registrations to bring its claims and the Complaint must be dismissed.

_____
*(cont'd from previous page)*
Motion raises. Accordingly, should the Court decide to convert this Motion to a Rule 56 motion, then Defendants respectfully submit that no further discovery is needed and the motion may continue to proceed on the current record.

**B.** **The Regulation Governing Database Registrations Does Not Extend Such Registrations To The Contributions of Unknown Authors And The Statutory And Regulatory Provisions That Provide For The Registration of A Collective Work And Its Individual Components Under A Single Registration Are Not Applicable Here**

The formal rule promulgated under the Copyright Act for the registration of databases does not allow for the manner of anonymous registration employed here. Thus, 37 C.F.R. § 202.3(b)(5)(i) provides that: "the Register of Copyrights has determined that, on the basis of a single application, deposit, and filing fee, a single registration may be made for automated databases and their updates or other derivative versions that are original works of authorship." Under the Copyright Office regulations for group registration of databases, the "group" to be registered is the original database and any subsequent updates or derivations. Section 202.3(b)(5) does not bestow registered status on any individual contributions to the database from unnamed authors.

Moreover, the section of the Copyright Act that addresses the extension of a copyright in a compilation to individual contributions to the compilation is explicitly limited to contributions from the author of the compilation itself. 17 U.S.C. § 103 ("The copyright in a compilation or derivative work extends *only* to the material contributed by the author of such work, as distinguished from the preexisting material employed in the work, and does not imply any exclusive right in the preexisting material.") (emphasis added). Section 103's exclusive focus on works contributed by the same author is entirely consistent with the requirements of section 409, as there would be no need to name the author *again* in relation to that author's contribution to the whole. Nothing in section 103 provides a basis for creating an exception to section 409 for the contributions of unnamed authors to an automated database.

Cases applying section 103 consistently support this interpretation. For example, in *Szabo v. Errisson*, the court extended a musician's registration of his song collection to his individual

songs contained within that collection. 68 F.3d 940 (5th Cir. 1995). The court explicitly noted

the provision in section 103 that provides that the "'copyright in a compilation or derivative

work *extends* only *to the material contributed by the author of such work*.'" *Id.* at 943 (emphasis

in original). Similarly, in *Sylvestre v. Oswald*, this Court rejected the position that registration

extends to anything in a deposit copy, and instead, quoting the regulations for registering a

collection, found that the registration of a collective work would only cover the constituent

elements if "'all of the elements are by the same author, or, if they are by different authors, at

least one of the authors has contributed copyrightable authorship to each element.'" No. 91 CIV

5060 (JSM), 1993 WL 179101, at *2 (S.D.N.Y. May 18, 1993) (quoting then 37 C.F.R. §

202.3(b)(3)(i)(B), now 37 C.F.R. § 202.3(b)(4)(i)(B)). *See also Educ. Testing Servs. v. Katzman*,

793 F.2d 533, 539 (3d Cir. 1986) (citing section 103 and finding individual questions authored

by the registrant of a test compilation were covered under the compilation's registration). *Cf*

*Jefferson Airplane v. Berkeley Sys., Inc.*, 886 F. Supp. 713 (N.D. Cal. 1994) (holding that

registration of an album did not extend to the artwork on the album cover).

The only case of which Defendants are aware that offers a potentially contrary position is

one from the Western District of Washington that appears to contradict this Court's position on

deposit copies as stated in *Sylvestre v. Oswald*. *See Corbis Corp. v. Amazon.com, Inc.*, 351 F.

Supp. 2d 1090 (W.D. Wash. 2004). In *Corbis*, the court denied a motion for summary judgment

and determined that a question of fact remained as to whether a Corbis database registration

covered the image of an unnamed photographer. *Id.* at 1115. The court did not conduct an

analysis of section 103, section 409, or the relevant regulations. Instead, it largely based its

conclusion on the fact that neither party had produced a deposit copy, and that the presence or

absence of the photo on the deposit copy would settle the issue. *Id.* To the extent the court

6

thought the deposit copy was relevant to the question of registration, it was in error. As this Court found in *Sylvestre*, the purpose of deposit copies is limited to examination purposes and providing the Library of Congress with copies of new works; it has nothing to do with what the registration covers. 1993 WL 179101, at *2.

Copyright Office regulation 37 C.F.R. § 202.3(b)(4), which permits registration of a single collective work to extend to self-contained works included within the collective work, is also inapplicable here. *Id*. This provision does not provide for registration where the authors of the individual contributions are not the same person or entity as the copyright claimant and yet neither the names of those authors nor the titles of their works are included in the registration applications; and it certainly does not provide for listing only three random contributors. *Id*. Indeed, the Copyright Office regulation 37 C.F.R. § 202.3(b)(3) ("Continuation Sheets") contemplates the listing of additional relevant information including authors and titles of included works, and it expressly states that "a separate continuation sheet, CON 2, *must* be used to list content titles, *i.e.*, titles of independent works in which copyright is being claimed and which appear . . . within a collection of works." (emphasis added).

The only statutory provision directly on point here is 17 U.S.C. § 409, which explicitly requires a registration to include the name of the author of the work that is being registered. No other provision of the Copyright Act, regulation enacted pursuant to the Copyright Act, or Copyright Office publication, can be stretched to eliminate or amend this requirement as applied to unnamed contributions to an automated database. "First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the

unambiguously expressed intent of Congress." *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984).

**C.    Corbis Corporation Did Not Qualify As A Claimant Under 37 C.F.R. § 202.3(A)(3)(i) For The Individual Photographs Included In Its Databases When It Registered The Databases**

Under 37 C.F.R. § 202 (a)(3)(ii), a copyright claimant is "a person . . . that has obtained ownership of *all rights* under the copyright initially belonging to the author." 37 C.F.R. § 202 (a)(3)(ii) (emphasis added.) In *Morris v. Business Concepts, Inc.*, the Second Circuit determined that "all rights" means precisely that – a claimant must own every aspect of a copyright in order to register that work effectively. 283 F.3d 502, 506 (2d Cir. 2002). In other words, if any modicum of rights traditionally adherent to a copyright remain with the author (or a previous transferee), then effective registration is not possible for the recipient of that partial transfer. *See id.*

Thus, in *Morris*, the court determined that a publisher's registration of its magazine was not also effective for the contributions of a freelance author whose articles had been included in the magazine, because the publisher only owned "some of the rights" to those pieces. *Id.* at 505-06. Because the publisher did not own "all rights" to the articles at the time of registration, the articles did not fall within the collective works registration as constituent parts, and the collective work provisions of the Copyright Act could not be used to extend the registration of the magazine to the articles. *Id.* Here, as in *Morris*, Plaintiff cannot argue that Corbis qualified as a claimant that could register all of the individual works in its database under a single registration, because Plaintiff did not transfer "all rights" in the images prior to registration.

1.    **In The Original 1997 Transfers Between The Authors Of The Images And Corbis, The Authors Only Transferred Title In The Underlying Images, Not The Copyrights**

Corbis filed four of the six registrations at issue pursuant to the transfer agreements executed on September 30, 1997, between Corbis and David Muench, and Corbis and Mark Muench, respectively. (*See* Exs. 7, 8 to Plevan Decl.) Each of those 1997 transfer agreements defines the transfer as follows: "The undersigned hereby grants to Corbis Corporation ("Corbis") legal title in the undersigned's images selected and digitized by Corbis and included in the Corbis collection (the "Images") **solely for the purposes of copyright registration.**" (*Id.* at Exs. 7, 8 (emphasis in original).) These transfers did not transfer all rights in the copyright, as the regulations require, but rather only legal title in the images themselves.

Under the Copyright Act, ownership of copyright and ownership of an underlying work, are very different things: "Ownership of a copyright, or of any of the exclusive rights under a copyright, is distinct from ownership of any material object in which the work is embodied. Transfer of ownership of any material object, including the copy or phonorecord in which the work is first fixed, does not of itself convey any rights in the copyrighted work embodied in the object; nor, in the absence of an agreement, does transfer of ownership of a copyright or of any exclusive rights under a copyright convey property rights in any material object." 17 U.S.C. § 202. *See also Parks v. ABC, Inc.*, No. 06-cv-1364 (DAB), 2008 U.S. Dist. LEXIS 5085 (Jan. 24, 2008 S.D.N.Y. 2008).

Thus, Plaintiff's transfer of "legal title in the undersigned's *images*" (emphasis added) failed to transfer any, much less all rights under copyright in those images. On that basis alone, the four Corbis registrations made while this agreement was in place are not effective as to Plaintiff's copyrights.

2.    **In Every Case, The Authors Of The Images Limited The Scope Of Corbis' Rights In The Underlying Images Or Copyrights To "Registration Purposes" Only, Thereby Failing To Transfer All Rights In The Copyrights**

Corbis apparently identified the fatal flaw in its earlier transfer agreements that only transferred title in the underlying images, because it subsequently modified its agreements to read: "Solely for purposes of registering my copyright on my behalf, I hereby assign to Corbis the right, title, and interest to the copyright in my Accepted Images." (*See* Exs. 9, 10 to Plevan Decl.) Although this change at least attempts to transfer the rights in the copyright, as opposed to the image, it still limits Corbis' rights to the narrow confines of copyright registration purposes only.

Thus, the transfers did not convey the full rights in the copyrights that would be required to qualify Corbis as a proper claimant. For example, Corbis could not sell the copyrights or any of the exclusive rights to another party (perhaps the most basic right of a true copyright owner), pledge the copyrights as security, or grant any licenses in any of the exclusive rights under copyright to another party. If Corbis had attempted to sell or license these copyrights, or *any* rights therein, to a third party, which would be the right of any proper claimant, then Plaintiff likely would have considered Corbis in breach of their agreement.

Although the later 2001 transfers pay lip-service to the need to transfer all rights in the copyrights, the transfers simultaneously undermine those rights by confining what Corbis could do with the copyrights to only one activity – registration – an activity which does not even fall under any of the exclusive rights under copyright. *See* 17 U.S.C. § 106. A transfer of rights that sets conditions that eviscerate those rights of all substance, is not a transfer of all rights. It is a transfer in name only and it is not sufficient to confer claimant status on the transferee.

10

3.    **The Footnote To 37 C.F.R. § 202.3(a)(3) Cannot Be Read To Undermine The Clear Statutory Requirement That A Claimant Hold All Rights In A Copyright At The Time Of Registration**

Section 202.3(a)(3) of the Copyright Office regulations includes the following footnote:

> This category [Claimants] includes a person or organization that has obtained, from the author or from an entity that has obtained ownership of all rights under the copyright initially belonging to the author, the contractual right to claim legal title to the copyright in an application for copyright registration.

37 C.F.R. § 202.3(a)(3)(n1). This footnote cannot elevate Corbis to claimant status under the circumstances here.

First, since only legal title in the underlying images was transferred to Corbis, this regulation, which exclusively concerns transfers of rights under copyright, does not apply. Second, footnote 1 cannot be read as an erosion of the "all rights" requirement in the regulation itself. The language "legal title to the copyright" that is found in the footnote must be read as coextensive with "all rights under the copyright" to avoid a direct contradiction with the unambiguous requirements for qualifying to register as a claimant.

More significantly, the footnote must also be read in this manner in order to avoid a direct contradiction with the controlling statute. Section 408 of the Copyright Act unambiguously limits registration to "the owner of copyright or of any exclusive right in the work." 17 U.S.C. § 408. An agency regulation cannot be interpreted in a manner that places it in conflict with the controlling statute. *See, e.g.*, *Christensen v. Harris County*, 529 U.S. 576, 588 (2000) (no deference owed to agency actions that conflict with the governing statute); *see also Carcieri v. Salazar*, 129 S. Ct. 1058, 1063–64 (2009) (Where a statute is unambiguous, there is no room for interpretation; it must be applied according to its terms.). The transfers here, by strictly limiting Corbis solely to the act of registration (not an exclusive right under the

11

Copyright Act), meticulously avoided transferring anything that would conflict with any of the rights under copyright held by the authors of the images.

Thus, Corbis' registrations cannot be credited without placing them in direct conflict with sction 408. This conflict, which arises from any interpretation of footnote 1 that posits a sub-set of possible registrants that own less than "all rights" under copyright, is why the court's decision in *Bean v. McDougal Littell* on this issue is wrong.

In *Bean v. McDougal Littell*, the court erroneously concluded, relying in part on the common law of trusts, that a limited transfer for purposes of registration only was sufficient to confer "legal title" to all rights to the transferee, while the transferor retained "the equitable benefit of 'all rights.'" No. 07-8063-PCT-JAT, 2008 WL 2896950, at *4 (D. Ariz. July 28, 2008). The court then concluded that footnote 1 operated to extend claimant status to the transferee under such a scenario. *Id.* However, the court's opinion is silent as to how "legal title" to *all rights* (as is required under the Copyright Act) can be properly equated to the sole, limited right only to register a copyright. Nothing in the Copyright Act allows for such an equivalency, and the only case the *Bean* court cited to in this portion of its opinion (*A. Brod, Inc. v. SK & I, Co.*) appears to contradict any conclusion to the contrary.

In *A. Brod, Inc.*, the holder of an exclusive right to distribute a copyrighted toy aquarium granted by the original copyright holder, sought a declaration that the original copyright holder (the grantor of the distribution right) was the rightful copyright owner, as opposed to any subsequent copyright assignees. 998 F. Supp. 314 (S.D.N.Y. 1998) (The original copyright owner had assigned the rights to a prior U.S. distributor in order to permit the distributor to bring an infringement action in the U.S., and the prior distributor never reassigned it, but assigned it to a third party.). The court examined this issue under the principles of trust law (an approach the

*Bean* court follows). In the course of its analysis, the court noted that under the 1909 Copyright Act "a copyright may constitute a proper trust res, with the trustee holding legal title to the copyright and the settlor retaining equitable title." *Id.* at 325. The *Bean* court apparently relied on this potential divisibility between legal and equitable title when reaching its decision. *Bean*, 2008 WL 2896950, at *4.

However, in *A. Brod, Inc.* the court went on to state that "[t]he 1976 Copyright Act did not change this, but rather codified the notion that both the equitable, or 'beneficial,' owner of a copyright and the legal owner have standing to sue for infringement." *A. Brod, Inc.*, 998 F. Supp. at 325. In support of this assessment, the court cited to authorities discussing 17 U.S.C. § 501(b) ("The legal or beneficial owner of an exclusive right under copyright" has standing to sue for infringement). *Id.* This point – that both the legal and beneficial owners of copyright have standing to sue – is crucial here, because there can be little doubt that the transfers in question *did not* provide Corbis with standing to sue. The transfers from Marc and David Muench very specifically *only* gave Corbis the limited right to register, not to bring suit – further demonstrating that the transfer agreement portended to provide only a contractual right (and a meaningless one at that) – not a copyright right. The transfers thus did not make Corbis a legal or beneficial owner of an exclusive right under copyright.

Indeed, one of the leading experts on copyright law recently analyzed the *Bean* decision precisely on the question of whether these transfers provided Corbis with standing to sue. In a recent update of his treatise, William Patry quotes at length from the *Bean* decision and writes of the application of footnote 1 to this fact pattern:

> Whatever the purpose of the regulation's footnote, or the court's interpretation of it, it is pellucid that Corbis or anyone else similarly situated does not have standing to bring an infringement claim despite issuance of a certificate of registration: a contractual right to claim legal title to the copyright in an

13

> application for copyright registration does not constitute ownership of an
> exclusive right within the meaning of Section 501(b). It is, at best, a contractual
> right and not an ownership right in the copyright.

6 *Patry on Copyright* § 21:9.50 (updated Sept. 2009). These transfer agreements did not confer

standing on Corbis, because under § 501(b) Corbis never owned an exclusive right under

copyright – it never possessed the right to exercise any copyrights rights, including the right to

bring a claim. Accordingly, any attempt to construct these transfer agreements as creating a kind

of trust with Corbis as the legal owner of the copyright and the authors of the images as the

beneficial owners fails. The *Bean* court's analysis misses the mark.

The relevant transfer agreements from David and Marc Muench to Corbis effectively

conveyed to Corbis only the right to register the copyrights. The transfers did not convey to

Corbis all rights under copyright or under any of the exclusive rights. Therefore, Corbis was not

a proper claimant of the works of David and Marc Muench under 37 C.F.R. § 202.3(a)(3) when

it submitted its applications for registration of the databases in which the works are allegedly

included. Any attempt to stretch footnote 1 into creating a sub-class of possible registrants, who

do not meet the clear requirements of section 408, must be rejected.

## II.  PROPERLY DEVELOPED AND IMPLEMENTED RULES FOR THE REGISTRATION OF LARGE NUMBERS OF PHOTOGRAPHS ALREADY EXIST

With the passage of the 1976 Act, Congress explicitly granted the Copyright Office

authority to establish procedures for the group registration of photographs by the same

photographer. *See* 17 U.S.C. § 408.

> The provision empowering the Register to allow a number of related works to be
> registered together as a group represents a needed and important liberalization of
> the law now in effect. At present the requirement for separate registrations where
> related works or parts of a work are published separately has created
> administrative problems and has resulted in unnecessary burdens and expenses on
> authors and other copyright owners. In a number of cases the technical necessity
> for separate applications and fees has caused copyright owners to forego

> copyright altogether. Examples of cases where these undesirable and unnecessary results could be avoided by allowing a single registration include . . . *a group of photographs by one photographer.*

H.R. Rep. 94-1476, 1976 U.S.C.C.A.N. 5659, 5770 (emphasis added). The Copyright Office acted on this mandate and after a proper notice and comment period it issued formal rules to govern the group registration of photographs. 37 C.F.R. § 202.3(b)(10); *see also* Group Registration of Photographs, 66 Fed. Reg. 37142-50 (July 17, 2001).

The industry practice at issue here is therefore not only an evasion of the statutory registration requirements listed in 17 U.S.C. § 409, but it also ignores the properly developed, statutorily consistent registration process that Congress explicitly authorized, and the Copyright Office explicitly promulgated, *for group registration of photographs* by the same photographer. That process preserves the statutory requirement that a registration include the names of the claimant and the authors of the copyright in question. Rather than rely on a convoluted, impermissible work-around centered on hollow transfers of copyright "for registration purposes only," photographers should simply register their works under their own names. The photographers' interests would still be protected, and at minimal cost to them (the Copyright Office currently charges $65 for a single group registration of up to 750 photographs. *Circular 4, Copyright Office Fees* (available at http://www.copyright.gov/circs/circ04.pdf). That is what should occur here. If MPI does indeed own copyrights in works that it believes HMH infringed, then it is free to register those images and pursue its legal claims. In their current form, however, MPI's claims must be dismissed.

## III. THE EXPLICIT REGISTRATION REQUIREMENTS OF 17 U.S.C. § 409 REFLECT CONGRESS' INTENT TO CREATE A ROBUST REGISTRATION SYSTEM

The legislative history of the 1976 Copyright Act clearly establishes that the creation of a public record of copyrights, which would require the actual names of the registrants and titles of

works, was one of Congress's express goals. *See* H.R. Rep. 94-1476, 1976 U.S.C.C.A.N. 5659, 5771-72 ("[T]he various clauses of section 409, which specify the information to be included in an application for copyright registration, are intended to give the Register of Copyrights authority to elicit all of the information needed to examine the application and to make a meaningful record of registration.").

This goal of the registration system was reiterated during a debate on the possible repeal of sections 411 and 412 in the 1980s, when Congressman Kastenmeier stated the case for the registration incentive system:

> The objective of maintaining the flow of materials to the collections of the National Library through registration, the evidentiary use to the judicial system, the usefulness of the examining process, *and the public interest of a comprehensive and open registry relating to the existence, ownership and exercise of copyrights* all argue for continuation of this registration incentive.

*The Berne Convention: Hearings on S. 1301 and S. 1971 Before the Subcomm. on Patents, Copyrights & Trademarks of the S. Comm. on the Judiciary*, 100th Cong. 55 (1988) (statement of Congressman Robert W. Kastenmeier) (emphasis added).

The Copyright Office recognizes and embraces Congress's intent that the Office create and maintain an accurate record:

> The copyright law requires the Register of Copyrights to create, maintain, and index records of all deposits, registrations, recordations, and other copyright-related matters and to make these records available to the public. Records of copyright registrations provide important information about ownership of copyrighted works, helping users to make lawful use of such works. . . .

U.S. Copyright Office, *Annual Report of the Register of Copyrights*, 12 (2007), available online at http://www.copyright.gov/reports/annual/2007/ar2007.pdf. The Copyright Office maintains searchable records, including an online database at http://cocatalog.loc.gov/ for post-1977 registerations, searchable by title and/or name (of author or registrant). The purported registration of Plaintiff's images via the Corbis registrations, obviously, cannot be found via such

a search. Plaintiff should not be permitted to thwart the clearly stated intent of Congress and rely on registrations that do not identify Plaintiff.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). In the alternative, Defendants request that the Court order MPI to secure proper registrations for the copyrights it alleges HMH infringed and file an amended complaint that alleges facially valid registrations.

Dated: March 19, 2010                    Respectfully submitted,

                                          s/  Kenneth A. Plevan
                                         Kenneth A. Plevan
                                         kenneth.plevan@skadden.com
                                         J. Russell Jackson
                                         russell.jackson@skadden.com
                                         SKADDEN, ARPS, SLATE,
                                           MEAGHER & FLOM LLP
                                         Four Times Square
                                         New York, NY 10036 – 6522
                                         Phone: (212) 735-3000
                                         Fax: (212) 735-2000

                                         *Attorneys for Defendants*