David Atlas (DA-0317)
HERNSTADT ATLAS LLP
11 Broadway, Suite 615
New York, New York 10004
Tel: 212-809-2502
Fax: 212-214-0307
david@heatlaw.com

Maurice Harmon (MH-9051)
Harmon & Seidman LLC
The Pennsville School
533 Walnut Drive
Northampton, PA 18067
Tel: 610-262-9288
Fax: 610-262-9557
Maurice@harmonseidman.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
                                                           :
MUENCH PHOTOGRAPHY, INC.,                                  :
         Plaintiff                                         :          09-CV-2669 (LAP)(JCF)
                          v.                               :
                                                           :          ECF CASE
HOUGHTON MIFFLIN HARCOURT                                  :          ELECTRONICALLY FILED
PUBLISHING COMPANY and                                    :
R.R. DONNELLEY & SONS COMPANY,                            :
         Defendants.                                       :
-----------------------------------------------------------X


**PLAINTIFF'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
FOR FAILURE TO STATE A CLAIM**

## <u>TABLE OF CONTENTS</u>

Preliminary Statement…………………………………………………………………..4

Statement of Facts……..……………………………………………………………………..4

Standard of Review………………………………………………………………………..5

Argument…………………………………………………………………………………6

I.    Plaintiff's copyright registrations in the Images-in-suit
      are valid. ……………………………………………………….........6

      A.    Corbis owned legal title to the Images at the time it registered the
            copyrights……………………………………………….......................6

      B.    Corbis' registrations, when it owned the copyrights
            to both the database and the discrete copyrighted
            works comprising it, are adequate to register
            the underlying copyrighted works…………………………………………….9

      C.    Defendants are estopped from asserting the transfers
            were not sufficient to permit Corbis to register the underlying
            works as part of its registrations……………………………………………11

      D.    Although unnecessary and without waiving any of the
            preceding arguments, the affirmations of Marc Muench and
            David Muench's earlier transfers validate the registrations
            and the conveyances upon which they are based, from the beginning.................12

II.   Plaintiff's valid copyright registrations are not rendered invalid
      because they do not list MPI, David Muench, or Marc Muench
      as authors………………………………………………………………...13

      A.    Omissions on copyright registration applications do not
            affect the validity of the copyright registration unless (1) the
            applicant knowingly included inaccurate information *and* (2)
            the omitted information would have caused the Copyright Office
            to deny the application………………………………………...…………13

      B.    Copyright registration extends to the constituent parts of a
            collective registration even where the author or title of the work
            is not included...………..……………………………………………16

C.   The Copyright Office not only approves of but created
the registration system at issue in this case, and under
its procedures, the registrations here extend not only to
the databases but to each constituent image therein……………………………..19

D.   The database registration procedure Corbis utilized
to protect the individual works is in line with Copyright
Office regulations…………………………………………………………….20

E.   Plaintiff did not register the Images under 37 C.F.R. § 202.3(b)(10),
therefore any discussion of that regulation is irrelevant to the
validity of the copyrights-in-suit……………………………………………21

F.   The "robust registration system" for which Defendants argue
is not a reality……………………………………………………………….21

Conclusion………………………………………………………………………….23

## PRELIMINARY STATEMENT

This is an action for copyright infringement under 17 U.S.C. § 101 *et seq*. (the "Copyright Act" or the "Act"), brought by Muench Photography, Inc. ("MPI") against defendant publisher Houghton Mifflin Harcourt Publishing Company ("HMH") and defendant printer R.R. Donnelley & Sons Company ("Donnelley") (collectively "Defendants"). Plaintiff's allegations are set forth in the Complaint filed on March 23, 2009 (Doc. No. 1, "Complaint"). On May 15, 2009, pursuant to Federal Rule of Civil Procedure 12(b)(1), Defendants filed a Motion to Dismiss the Complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) (Doc. Nos. 9-11). Defendants withdrew this motion due to the intervening Supreme Court decision in *Reed Elsevier, Inc. v. Muchnick*[1] that mooted their arguments, and filed a new motion to dismiss under Fed. R. Civ. P. 12(b)(6) on March 19, 2010 (Doc. Nos. 32-34). Plaintiff opposes the Motion to Dismiss on all grounds.

## STATEMENT OF FACTS

Muench Photography, Inc. is a California corporation that licenses photographs on behalf of well-known professional photographers Marc Muench and David Muench. MPI acted through its agent Corbis Corporation ("Corbis"), a Seattle-based privately held photography stock licensing agency, in all licensing activities described in this action. MPI is the owner and exclusive copyright holder of original works of photography created by Marc Muench and David Muench, as detailed on Exhibit A to the Complaint ("the Images"). Each of the Images is the subject of a valid Certificate of Copyright Registration issued by the Register of Copyrights as specified on Exhibit A to the Complaint.[2]

---

[1] 559 U.S. __ , 130 S.Ct. 1237, 2010 WL 693679, *8 (March 2, 2010).
[2] After subpoenaing documents from David Muench's agent Corbis Corporation, Plaintiff learned that 20 of the Images listed in Exhibit A to the Complaint as part of registration number

HMH[3] is a publisher that sells and distributes textbooks throughout the United States and New York, including certain textbooks in which Plaintiff's images are unlawfully reproduced. Beginning in March 2001 and continuing through December 2006, HMH requested, and MPI's agent Corbis sold, limited licenses to copy and print the Images in a number of different publications, with the number of permissible copies expressly delineated for each publication (Complaint ¶ 11). HMH caused more than the licensed number of copies of the publications to be printed and distributed, each containing copies of one or more of the Images (*id*. ¶ 11). Donnelley printed the publications in suit (*id*. ¶ 18).

## STANDARD OF REVIEW

Under Rule 12(b)(6), the Court must read the complaint generously, accepting the truth of and drawing all reasonable inferences from well-pleaded factual allegations.[4] A court should dismiss a complaint only "if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"[5] "To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'"[6]

---

VA 863-783 were in fact part of registration number VAu 354-914. The significance of this discovery is discussed *infra* at note 38.

[3] In December 2007, Houghton Mifflin Company acquired several divisions of another education publisher and renamed the merged company Houghton Mifflin Harcourt Publishing Company. Houghton Mifflin Harcourt Publishing Company is the successor in interest to Harcourt School Division, Houghton Mifflin Company, Houghton Mifflin College Division, Holt Rinehart & Winston, McDougal Littell, and Harcourt Archive.

[4] *See York v. Ass'n of Bar of City of New York*, 286 F.3d 122, 125 (2d Cir. 2002); *see also Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1174 (2d Cir. 1993).

[5] *Valmonte v. Bane*, 18 F. 3d 992, 998 (2d Cir. 1994)(*quoting Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Jenkins v. McKeithen*, 395 U.S. 411, 422 (1969) (citation omitted).

[6] *ATSI Communications, Inc. v. Shaar Fund Ltd.*, 493 F.3d 87 (2d Cir. 2007)(*quoting Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)).

## ARGUMENT

Defendants raise a single challenge in their Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure— that Plaintiff has failed to state a claim because of alleged deficiencies in the registration process. While the Supreme Court recently held that registration is not jurisdictional, it remains a "precondition to filing a claim."[7] Because Plaintiff's copyrights were validly registered with the United States Copyright Office ("Copyright Office"), Plaintiff states a claim, and Defendants' motion should be denied.

**I.    Plaintiff's copyright registrations in the Images-in-suit are valid.**

**A.  Corbis owned legal title to the Images at the time it registered the copyrights.**

Marc Muench and David Muench, the creators and owners of the Images, transferred, in writing, their copyrights to Corbis Corporation on September 30, 1997 (*see* Exhibit 7 to Doc. No. 33, Marc Muench/ Corbis Corp. Agreement; Exhibit 8 to Doc. No. 33, David Muench/ Corbis Corp. Agreement). The agreements contained the following language assigning the copyright: "The undersigned hereby grants to Corbis Corporation ("Corbis") legal title in the undersigned's images selected and digitized by Corbis and included in the Corbis digital collection (the 'Images') solely for the purposes of copyright registration . . . ." Marc Muench and David Muench later updated this transfer, in writing, of their copyrights to Corbis Corporation on November 27, 2001 (Marc Muench, Exhibit 9 to Doc. No. 33, p. 10) and November 15, 2001 (David Muench, Exhibit 10 to Doc. No. 33, p. 10). These agreements contained the following language assigning the copyrights: "Solely for the purpose of registering my copyright on my behalf, I hereby assign to Corbis the right, title, and interest to the copyright in my Accepted Images . . . . Any Accepted Images that Corbis has previously registered on my behalf under its

---

[7] *Reed Elsevier*, 2010 WL 693679, *8.

Copyright Registration program shall be governed and interpreted by this Agreement."  Corbis, as the new owner, registered the copyrights to these Images with the Copyright Office on November 6, 1997 (Registration Nos. VA 863-783 and VA 863-785) (Exhibits 1 and 2 hereto); January 14, 1999 (Registration No. VA 1-038-658) (Exhibit 3 hereto); March 16, 2001 (Registration No. VA 1-115-519) (Exhibit 4 hereto), August 28, 2006 (Registration No. VA 1-371-165) (Exhibit 5 hereto) and August 29, 2006 (Registration No. VA 1-378-558) (Exhibit 6 hereto).

The Copyright Act defines the necessary steps for an effective transfer in 17 U.S.C. § 204(a): "A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."  Although perhaps not a model of drafting, the transfers in this case are, at the very least, a note or a memorandum signed by Marc Muench or David Muench, sufficient under § 204(a) to transfer the copyrights in the Images to Corbis.  As this district has noted, the purpose of section 204(a) is to protect the assignor and assignee, not an unrelated third party infringer later seeking to set aside the conveyance between the two, as "it would be anomalous to permit a third party infringer to invoke this provision against the [assignee]."[8]

Even if the disputed writing is ambiguous, in New York, as elsewhere, unclear language can be clarified by extrinsic evidence.[9]  The declarations of Marc Muench, David Muench and Nancy Wolff, Corbis' attorney for the applications resulting in the first three registrations,

---

[8] *Kaplan v. Panaria International, Inc.,* No. 96 CIV. 7973, 1998 WL 603225, *2 (S.D.N.Y. Sept. 11, 1998) (*quoting Eden Toys, Inc. v. Florelle Undergarment Co., Inc.*, 697 F.2d 27, 36 (2d Cir. 1982)).
[9] *Greenfield v. Philles Records*, 780 N.E.2d 166 (N.Y. 2002); *R/S Assoc. v. New York Job Dev. Auth.*, 771 N.E.2d 240 (2002).

demonstrate the obvious intent of all parties to accomplish, with the cooperation of the Copyright Office at its highest levels, registration of a large number of discrete photographs, including the Images at issue here (*see* Exhibits 7-9 hereto). There can be no question that David Muench and Marc Muench intended to transfer all copyright ownership rights necessary to permit Corbis to complete the Registration (*id*.). None of the parties to the conveyance agreements argue otherwise. Defendants cannot, as third parties looking backwards, defeat the registrations by arguing the failure of the 1997 and 2001 conveyances.

The history of the registrations at issue is instructive. In 1995, Ms. Wolff met with the Register of Copyrights and others to determine the proper approach to accomplish the goal of registration of a large number of discrete photographs, and together, they accomplished this goal (*see* Exhibits 1, 2 to Wolff Declaration). The Copyright Office actually suggested the language "transfer legal title . . . solely for the purpose of copyright registration" to convey copyrights from photographers to agencies in order to establish in the copyright claimant sufficient ownership to register both the database and the underlying images in it (*id*. at ¶ 5). Later, the Copyright Office essentially approved this approach when it confirmed in writing that identical procedures to those employed in this case, and used in tens of thousands of other registrations[10] following the Picture Agency Council of America ("PACA") guidelines, were proper (*see* Nanette Petruzzeli letter, *id*. at Exhibit 2). Therefore, any arguments Defendants may make to the contrary conflict with the Copyright Office's interpretation of both the statute and its own regulations. The Copyright Office confirmed its approval in writing as evidenced above and, more importantly, by issuing the Copyright Certificates in suit (Exhibits 1-6).

---

[10] Invalidation of these registrations would have far reaching consequences since tens of thousands of photographs, if not more, have been registered by PACA members in this manner, based upon the Copyright Office's approval of the identical process used in the registrations at issue in this case.

**B.    Corbis' registrations, when it owned the copyrights to both the database and the discrete copyrighted works comprising it, are adequate to register the underlying copyrighted works.**

Registration of a collective work is sufficient to convey copyright protection on each component part, provided that ownership of both rests in the same person at the time of registration.[11]    Additionally, the copyright registrant must qualify as a "claimant" under the relevant regulation, 37 C.F.R. § 202.3(a)(3) and n. 1, which defines who may properly register a copyright:

> (3) For the purposes of this section, a copyright claimant is either:
> (i) The author of the work;
> (ii) **A person or organization that has obtained ownership of all rights under the copyright initially belonging to the author** [n1].
>
> [n1]This category includes a **person or organization that has obtained**, from the author or from an entity that has obtained ownership of all rights under the copyright initially belonging to the author, **the contractual right to claim legal title to the copyright in an application for copyright registration**.

(emphasis added).  The phrase "solely for purposes of copyright registration" in Marc Muench and David Muench's transfers to Corbis parallels the "application for copyright registration" language in the regulation's footnote.  The Muench-to-Corbis transfers appear to be exactly the scenario envisioned by the drafters of this regulation's explanatory footnote.  Thus, Corbis is a proper copyright claimant, as defined by the regulations.

In *Bean v. McDougal Littell et al.*, Defendants brought a similar motion to dismiss on

---

[11] *See Carell v. The Shubert Org.*, 104 F.Supp.2d 236, 248 (S.D.N.Y.2000) (group registration does not prevent a copyright owner from bringing a claim for infringement as to individual designs within the group); *Woods v. Universal City Studios, Inc.*, 920 F.Supp. 62, 64 (S.D.N.Y.1996) (registration of copyright for collective work satisfies requirements of 17 U.S.C. § 411(a) to bring copyright infringement action based on constituent parts where owner of copyright for collective work also owns constituent parts); *Bean v. McDougal Littell et al.,* 669 F.Supp.2d 1031, 1034 (D.Ariz. 2008) (evaluating the same database registration procedure as was used in this case); *Szabo v. Errisson,* 68 F.3d 940, 943 (5th Cir.1995); *Blue Fish Clothing, Inc. v. Kat Prints,* 1991 WL 71113 at *3 (E.D.Pa. April 29, 1991).

virtually identical facts.  The District of Arizona held that an assignment document executed by Bean and Corbis containing the <u>exact language</u> as Marc Muench and David Muench's September 30, 1997 assignments was sufficient to transfer legal title of copyrights to Corbis, thereafter permitting Corbis to properly register those rights.[12]  The court rejected the defendants' argument that the plaintiff transferred ownership of the image, not the copyright, because the transfer stated, "The undersigned hereby grants to Corbis Corporation ("Corbis") legal title in the undersigned's images . . ."   The court reasoned that in the context of the entire agreement, specifically the language "solely for the purposes of copyright registration", "it is obvious that the parties intended to transfer legal title to the copyrights in the image along with legal title to the image itself."[13]

Defendants' citation to *Morris v. Business Concepts, Inc.*[14] is not helpful because its facts are quite different from those here.  In *Morris*, the author *at all times* retained ownership to her copyrighted articles.  Thus, when her licensee registered magazines containing the plaintiff's works, the court correctly held that its registration did not extend to the underlying articles.[15] The Second Circuit later stated upon a petition for rehearing, "[a]ccordingly, we hold that unless the copyright owner of a collective work also owns all the rights in a constituent part, a collective work registration will not extend to a constituent part."[16]  Put another way: When the copyright owner of a collective work *does* own all the rights in a constituent part, a collective work registration will extend to that constituent part.  Here, since Corbis owned the copyrights of the in-suit works at the time of registration, it was the proper party to register them.

---

[12] *Bean*, 669 F.Supp.2d at 1034-1037.
[13] *Id*. at 1037.
[14] 259 F.3d 65 (2d Cir. 2001).
[15] *Id*. at 69 (emphasis added).
[16] 283 F.3d 502, 506 (2d Cir. 2002).  *See also* 5 Patry on Copyright § 17:91 at 240 (2007).

### C.     Defendants are estopped from asserting the transfers were not sufficient to permit Corbis to register the underlying works as part of its registrations.

Issue preclusion estops Defendants from claiming Marc Muench and David Muench's assignments were not sufficient, because precisely the <u>same</u> agreement Marc Muench and David Muench executed on September 30, 1997 was found to permit Corbis to properly register those rights by another court.   Issue preclusion arises if "(1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits." [17]   In *Bean*, the District of Arizona, in parallel litigation involving both Defendants, after a full and fair round of briefing and oral argument, denied Defendants' virtually identical motion to dismiss[18] and rejected their argument that this agreement did not transfer all rights and Corbis was not a proper "claimant" under 37 C.F.R. § 202.3(a)(3).[19]   Since "[t]he Second Circuit takes a broad view of the issue-preclusion effects of interlocutory rulings,"[20] and Defendants have already had their day in court on this issue, they should not be permitted to relitigate this same matter hoping for a different outcome here.

---

[17] *See NLRB v. Thalbo Corp.,* 171 F.3d 102, 109 (2d Cir. 1999).

[18] *See Lummus Co. v. Commonwealth Oil Refining Co*., 297 F.2d 80, 89 (2d Cir.1961), *cert. denied*, 368 U.S. 986, 82 S.Ct. 601, 7 L.Ed.2d 524 (1962) ("'[f]inality' in the context [of issue preclusion] may mean little more than that the litigation of a particular issue has reached such a stage that a court sees no really good reason for permitting it to be litigated again."); Restatement (Second) of Judgments (1982), § 13, cmt. g.

[19] *Bean,* 669 F.Supp.2d at 1034-1037.

[20] Charles A. Wright, Arthur R. Miller & Edward H. Cooper, 18A Federal Practice & Procedure § 4434, n.34 (2d ed.).

    **D.**    **Although unnecessary and without waiving any of the preceding arguments, the affirmations of Marc Muench and David Muench's earlier transfers validate the registrations and the conveyances upon which they are based, from the beginning.**

On December 16, 2009 Marc Muench and David Muench executed unequivocal affirmations of their 1997 and 2001 conveyances to Corbis, transferring unqualifiedly, all copyrights to the Images registered under Certificate Nos. VA 863-783, VA 863-785, VA 1-038-658, VA 1-115-519, VA 1-371-165, and VA 1-378-558  (see Copyright Transfer Affirmations, attached as Exhibits 7 and 8 hereto).  These post-complaint affirmations are as effective as if they were executed prior to filing and end any argument that Corbis was not transferred sufficient rights to register the copyrights.[21]  The Second Circuit has stated where "the copyright holder appears to have little dispute with its licensee on this matter, it would be anomalous to permit a third party infringer to invoke [17 U.S.C. § 204] against the licensee."[22]  Defendants, here, are those third party infringers hoping for a technical glitch to deny Plaintiff enforcement of its copyrights.

---

[21] *Khan v. Leo Feist, Inc.*, 165 F.2d 188, 191-92 (2d Cir. 1947); *see also Dan-Dee Imports, Inc. v. Well-Made Toy Mfg. Corp.*, 524 F.Supp. 615, 618 (E.D.N.Y. 1981) (citing *Khan* as "supporting the proposition" that the "requirements of 17 U.S.C. § 204(a) can be satisfied by an oral assignment later ratified or confirmed by 'a note or memorandum of the transfer,' " and noting that "Professor Nimmer has interpreted the addition of 'a note or memorandum of the transfer' in new 17 U.S.C. § 204(a), as a codification of the holding in *Khan*, Nimmer on Copyrights, § 10.03(A) at 10-34 (1981) (quoting § 204(a).");  *Valente-Kritzer Video v. Pickney*, 881 F.2d 772 (9th Cir. 1989); *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.,* 29 F.3d 1529, 1533 (11th Cir. 1994) (internal quotation marks and citation omitted); *Great Southern Homes, Inc. v. Johnson & Thompson Realtors,* 797 F.Supp. 609, 612 (M.D. Tenn. 1992) ("The Defendants argue that the fact that the writing was signed after the complaint was filed in this case is somehow relevant; the Court fails to understand the significance of this fact . . . . Even assuming that a writing is required in a suit against a third-party infringer, *Great Southern* and *Gleason's* writing should be treated as curing any defect . . . .").
[22] *Eden Toys, Inc. v. Florelee Undergarment Co.,* 697 F.2d 27, 36 (2d Cir. 1982).

II.    **Plaintiff's valid copyright registrations are not rendered invalid because they do not list MPI, David Muench, or Marc Muench as authors.**

Defendants argue the copyright registrations issued by the Copyright Office are not valid because "none of the registrations identify MPI, David Muench, or Marc Muench . . . as either a copyright claimant or an author . . . ."[23]  This argument fails, however, because the Copyright Act and well-established caselaw holds that factual insufficiencies, mistakes, and omissions in copyright registration applications do not render the resulting registrations invalid unless the omission or misstatement is knowing and the Copyright Office would have denied the registration if the correct information had been included on the application.[24]  Further, a number of courts have upheld similar collective registrations that did not include the author of a particular work.[25]  Finally, the Copyright Office itself has weighed in on this issue, stating that in accordance with its practices and procedures since at least 1980, the database registrations at issue in this case extend protection to individual works regardless of whether each individual author is listed on the registration form (*see* Doc. No. 26 and exhibits).

A.    **Omissions on copyright registration applications do not affect the validity of the copyright registration unless (1) the applicant knowingly included inaccurate information *and* (2) the omitted information would have caused the Copyright Office to deny the application.**

The well-settled rule is that a copyright application need not be perfect in order for the resulting registration to be valid.  This district has recently noted the widely accepted rule that where a copyright registration application contains an error, or even a willful misstatement of facts, a court "may invalidate [a copyright] [r]egistration **only if the Copyright Office's**

---

[23] Doc. No. 34 at 1-2.
[24] *R.F.M.A.S., Inc. v. Mimi So,* 619 F.Supp.2d 39, 52-53 (S.D.N.Y. 2009).
[25] *See* discussion in Section II.B, *infra*.

13

**knowledge of the truth would have caused it to reject [the] application**.[26]  This principle was

recently codified in an October 2008 amendment to section 411 of the Copyright Act, which

states that,

> A certificate of registration satisfies the requirements of [section 411] and section
> 412, regardless of whether the certificate contains any inaccurate information,
> unless--
>     (A) the inaccurate information was included on the application for copyright
> registration with knowledge that it was inaccurate; and
>     (B) the inaccuracy of the information, if known, would have caused the
> Register of Copyrights to refuse registration.[27]

Importantly, this amendment requires that *both* conditions be fulfilled in order to invalidate a

registration.  The new statute says "and", not "or".  Here, there is no evidence at all that Corbis

knowingly included inaccurate information on its application, the facts show just the opposite.

Corbis consulted the Copyright Office and precisely followed the advice it was given.  Corbis

also mirrored the language of the Office's regulations.[28]   By itself, this statute defeats

Defendants' efforts to nullify Plaintiff's registrations.

     Even without the new amendment, the case law does not support Defendants' position.

" 'The innocent error rule applies if the error is a **technical misdescription . . . [that] could

readily be corrected,' like erring in designating the proper 'copyright claimant.'**"[29]  "An

omission alone . . . is insufficient to invalidate a copyright. 'Only the knowing failure to advise

the Copyright Office of **facts which might have occasioned a rejection of the application**

constitutes reason for holding the registration invalid,' a principle known as the 'innocent error

---

[26] *R.F.M.A.S., Inc. v. Mimi So,* 619 F. Supp. 2d 39, 53-54 (S.D.N.Y. 2009) (emphasis added) (*citing Eckes v. Card Prices Update*, 736 F.2d 859, 861-62 (2d Cir.1984)).
[27] 17 U.S.C. § 411(b).
[28] 37 C.F.R. § 202.3(a)(3), n. 1.
[29] *eScholar, LLC v. Otis Educ. Sys., Inc.,* No. 04 Civ. 4051(SCR), 2005 WL 2977569 *12 (S.D.N.Y. Nov. 3, 2005) (emphasis added)(*quoting Wales Industrial Inc. v. Hasbro Bradley, Inc.*, 612 F.Supp. 510, 515 (S.D.N.Y. 1985))

rule.'"[30]  This district has also stated, "[t]he Second Circuit, in particular, takes an **expansive view of the defense**, requiring that the person asserting the copyright to have knowingly failed to tell the Copyright Office about facts that might have required the office to reject the application."[31]

Importantly, the Second Circuit has deferred to the Copyright Office's decisions on whether the registration requirements have been met.[32]  In *Fonar*, the defendant argued the plaintiff's copyright registration was invalid because the plaintiff had not included enough of the computer code that comprised the copyrighted software in its deposit copy, a registration requirement under 17 U.S.C. § 408 and 37 C.F.R. § 202.20.  The Second Circuit held,

> Whether Fonar had to submit source code for each of the many subprograms (and possibly sub-subprograms) is a question we are content to leave to the judgment, expertise, and practices of the Copyright Office. . . . . The Copyright Office may well conclude, given this architecture of computer programs, that the various modules and subprograms of the maintenance software may all be registered as a single work. The alternative--requiring Fonar to submit 50 pages of code (and an additional filing fee) for each of the programs that compose the maintenance software--would impose burdens on Fonar and on the resources of the Copyright Office that the Copyright Office may deem unnecessary or excessive.[33]

Defendants have not shown any evidence that the names of the photographers and titles of works Corbis omitted in the application would have caused the Copyright Office to deny the

---

[30] *Bus. Mgmt. Int'l, Inc. v. Labyrinth Bus. Solutions, LLC*, No. 05 Civ. 6738(MHD), 2009 WL 790048, *8 (S.D.N.Y. March 24, 2009) (plaintiff's failure to identify work as derivative on application did not invalidate registration since defendants presented no evidence the omission was intentional or that the work was not copyrightable because it was derivative) (*quoting Eckes v. Card Prices Update*, 736 F.2d 859, 861-62 (2d Cir.1984) (internal quotations omitted)); *see also Malibu Textiles, Inc. v. Carol Anderson, Inc.*, No. 05 Civ. 6738(MHD), 2008 WL 2676356, at *6 (S.D.N.Y. July 8, 2008) (where there was "no indication that [plaintiff's] mis-designation of the Designs as 'works for hire' in its copyright registrations constituted a knowing misrepresentation made to mislead the Copyright Office 'to approve an application it otherwise believed might be rejected'", copyright was not invalidated); *eScholar*, 2005 WL 2977569 *12.

[31] *eScholar,* 2005 WL 2977569 at *13 (emphasis added).

[32] *Fonar Corp. v. Domenick*, 105 F.3d 99 (2nd Cir. 1997).

[33] *Id*. at 105.

application had they been included.  Instead, the Copyright Office brief makes clear Corbis was following the Copyright Office recommendations exactly.[34]  Neither have Defendants claimed they were prejudiced by the Copyright Office's actions.[35]  Absent intentional fraud on the Copyright Office in an attempt to gain a registration where none should be granted, courts in the Second Circuit have not invalidated otherwise proper registrations.

**B.    Copyright registration extends to the constituent parts of a collective registration even where the author or title of the work is not included.**

Defendants argue the registrations in this case cannot cover the photographs-in-suit because the registration applications did not include every author and title of the photographs. Defendants correctly cite the section of the Copyright Act listing the contents of an application for copyright registration, 17 U.S.C. § 409, which includes the name of the author and the title of the work.  Defendants do not cite a single case, however, finding that omission of each item listed in section 409 is fatal to an otherwise valid copyright registration.  Courts simply have not held that strict compliance with section 409 is a prerequisite to bringing a copyright claim.

When evaluating challenges like Defendants' motion to dismiss, courts have routinely held that the registration of a collective work will provide protection to the underlying works, **even if the author or title of the work is not included on the registration application**. Recently, in *Corbis Corp. v. Amazon.com, Inc*., the court reviewed a virtually identical Corbis database registration.[36]  In *Amazon.com*, like here, neither the photographer's name nor the title of the image-in-suit was included in the copyright registration application.  Rather than finding the

---

[34] *See* Doc. No. 26 and exhibits thereto.
[35] *See Data Gen. Corp. v. Grumman Systems Support Corp*., 36 F.3d 1147, 1162, n. 24 (1st Cir. 1994)(noting that, before a registration is declared invalid based on a registration error, courts generally require that either defendant was prejudiced by the error or that it was intentional).
[36] Corbis follows the Copyright Office's regulations for registration of databases, found at 37 C.F.R. § 202.3(b)(5).

registration was invalid because these items were excluded, the court found there was simply a question of fact as to whether the registration actually covered the photograph and that a review of the deposit materials submitted with the application would answer this fact question.  Because neither party had obtained the deposit, the court held the defendant had not met its burden of proof on its motion for summary judgment on infringement.[37]  Similarly, here, Defendants produce no evidence that the photographs-in-suit are not included in the deposit materials submitted with the copyright registration application.  And to the contrary, Plaintiff has submitted herewith as <u>Exhibit 10</u> a Declaration from Corbis paralegal Emily Shirbroun stating each of the Images was in fact included with the deposit materials submitted with each copyright registration application.[38]

The Fifth Circuit has also held that the omission of the title of an individual work on the application for a collective work does not invalidate the copyright for that individual work.[39]  In *Szabo v. Errisson*, a songwriter registered a collection of songs, but did not specifically list the title of the song-in-suit on the application.  The song at issue, however, was included on the tape of songs the registrant deposited with the Copyright Office.  While the district court held, as

---

[37] *Id.*

[38] Ms. Shirbroun identified 20 images that Plaintiff's records showed were registered under Copyright Registration Number VA 863-783, but which Corbis's records reflect were included in Copyright Registration Number VAu 354-914 (*see* Ms. Shirbroun's Declaration, <u>Exhibit 10</u> hereto, ¶ 4(a));  copy of VAu 354-914  registration certificate attached as <u>Exhibit 11</u> hereto).  David Muench, not Corbis, was the claimant for that copyright registration application, and the only author listed, and this registration certificate predates the assignment to Corbis, so David Muench was both the author and the claimant.  Plaintiff presumes Defendants will no longer challenge the validity of the registrations of these 20 images and intends to amend his Complaint to reflect this registration number.  Ms. Shirbroun identified two other images Plaintiff's records showed were registered under a certain copyright registration number, but were in fact included in a different registration number, but since both of these images was included in the deposit copy submitted with the application, it does not affect the evaluation of Defendants' motion to dismiss.

[39] *Szabo v. Errisson*, 68 F.3d 940 at 942-43 (5th Cir. 1995).  The copyrights in this case were registered under the regulation for a collection, now found at 37 C.F.R. § 202.3(b)(4)(i)(B).

Defendants argue here, that the individual song was not covered by the collective registration, the Fifth Circuit reversed, holding, "copyright of a collection of unpublished works protects the individual works that are copyrightable, regardless of whether they are individually listed on the copyright certificate . . . . It is irrelevant to its copyright status that 'Man v. Man' was not specifically listed on the copyright registration for 'Scott Szabo's Songs of 1991.' "[40]

The court in *Szabo* relied in part on an opinion from this district, *Sylvestre v. Oswald*,[41] in which the court found the registration of a collection that did not include the song-in-suit's title nonetheless provided a valid registration of that song, since the song was included in the deposit copy. *Sylvestre* stated, "Given the **lenient nature of registration requirements** . . . , it is apparent that plaintiffs have established a valid registration for the song Heaven-D."[42] *Szabo* also relied in part on a Third Circuit opinion upholding the registration of individual questions in an educational test under copyright regulations that allowed the deposit of a portion of the test, but did not require each individual question to be included.[43] The Third Circuit based its ruling in part on 17 U.S.C. § 103(b), which expressly extends copyright protection to "the material contributed by the author of [a collective] work."[44] The court held, "the statutory premise that the copyright in a compilation extends to the constituent material contributed by the author is express . . .", therefore the fact that the individual test questions were neither listed on the copyright registration nor on permanent deposit with the Copyright Office did not affect their copyright status.[45]

It is clear that courts have not strictly construed 17 U.S.C § 409 requirements in evaluating

---

[40] *Id.* at 942-943.
[41] *Sylvestre v. Oswald*, No. 91 CIV. 5060 (JSM), 1993 WL 179101, *2 (S.D.N.Y. May 18, 1993).
[42] *Id.* (emphasis added) (*citing* 4 Nimmer on Copyright § 17.20).
[43] *Educ. Testing Servs.*, 793 F.2d at 538-39.
[44] *Id.*
[45] *Id.* at 539.

the validity of copyright registrations.  Instead, they have found that an otherwise-valid copyright registration for a database, compilation, or collection extends copyright protection to the component works, sufficient for a plaintiff to meet the requirement of 17 U.S.C. § 411(a).  As Professor Nimmer has stated, rejecting the type of strict reading of the Copyright Act Defendants propose,

> Now that the Berne [Convention for the Protection of Literary and Artistic Works] era has dawned, **it is to be hoped that courts will construe the myriad formalities of U.S. copyright law lenientl**y. An approach whereby copyrights are preserved and rights to enforce remain, notwithstanding an antecedent failure to comply with the "punctilio of an honor the most sensitive" to copyright formalities, would help harmonize U.S. copyright laws with those of the rest of the Berne Union. Therefore, particularly in resolving issues of first impression as to the formalities required under the 1976 and 1909 Acts, the **courts should refrain from overtechnical constructions**.[46]

Since courts have not applied the hypertechnical reading of the Copyright Act that Defendants ask the Court to adopt, Plaintiff urges this Court, in its landmark ruling, to follow the newly enacted section 411(b) as well as the established policy of interpreting the Copyright Act without the constructions for which Defendants argue.[47]

### C. The Copyright Office not only approves of but also created the registration system at issue in this case, and under its procedures, the registrations here extend not only to the databases but to each constituent image therein.

After the briefing on Defendants' original motion closed, the Court requested and the United States of America filed a brief on behalf of the Register of Copyrights (Doc. No. 26 and exhibits thereto).  The Copyright Office brief opens by noting,

> The established practice of the Copyright Office since at least 1980 has been to permit the registration of collective works to cover the underlying contributions

---

[46] 2 Nimmer on Copyright § 7.01, at 7-9 (1990) (Footnotes omitted) (emphasis added).
[47] *See Sylvestre*, 1993 WL 179101; 2 Nimmer on Copyright § 7.01, at 7-9 (1990); *see also Matthew Bender & Co. v. West Publ'g. Co.*, 240 F.3d 116, 122 (2d Cir. 2001) (citation omitted) ("The Copyright Act's principal purpose 'is to encourage the origination of creative works by attaching enforceable rights to them.'").

where the rights in those contributions belong to the claimant even though the individual contributors are not named in the registration form. A review of copyrights registered with the Copyright Office shows that well over 2.5 million serial works – and thus all the underlying contributions whose rights were transferred to the claimant – have been registered in accordance with this practice. As discussed below, automated databases that consist of independently copyrightable contributions qualify as collective works and thus, like all other collective works, may be registered pursuant to registration rules applicable to collective works.

(Doc. No. 26 at 2). The brief further elaborates at length why the Court should dismiss Defendants' registration arguments. Importantly, the Copyright Office explicitly noted that it approved the registration practice for the automated database registrations at issue in this case. Inclusion of the name of the author of each constituent work in a database on the registration form is not required for the registration to extend to each of those constituent works (*id*. at 7-9).

### D. The database registration procedure Corbis utilized to protect the individual works is in line with Copyright Office regulations.

Defendants argue Copyright Office regulations do not provide protection of individual works that are part of a database registration.[48] This argument also fails. Corbis did not register the photographs under 37 C.F.R. § 202.3(b)(4) as a single work, therefore Defendants' discussion of that section is inapposite. Defendants do not argue Corbis failed to follow the proper procedure for registering its databases under 37 C.F.R. § 202.3(b)(5), but merely state this regulation does not "bestow registered status on any individual contributions to the database from unnamed authors."[49] As outlined above, the Copyright Office's practices and procedures do not require inclusion of the name of the author of each constituent work in a database on the registration form for the registration to extend to each of those constituent works (Doc. No. 26 at 7-9). Further**,** a number of courts, including those in the Second Circuit, have held that

---

[48] Doc. No. 34 at 5-7.
[49] Doc. No. 34 at 5.

registration of a collective work is sufficient to meet the requirements of § 411 for the individual

works contained therein where (as here) the owners are the same.[50]

E.    **Plaintiff did not register the Images under 37 C.F.R. § 202.3(b)(10), therefore any discussion of that regulation is irrelevant to the validity of the copyrights-in-suit.**

Defendants' final argument is that Plaintiff did not follow the Copyright Office's

regulation for the registration of multiple published photographs by the same author.  There is no

dispute that Corbis, MPI, David Muench, and Marc Muench did not utilize the procedures set out

in 37 C.F.R. § 202.3(b)(10), therefore that provision has no relevancy to whether the copyrights-

in-suit are valid.  The Court need not examine this section in its analysis of Plaintiff's claims.

F.    **The "robust registration system" for which Defendants argue is not a reality.**

Defendants' argument that registration of a copyright with the Copyright Office serves to

create a public record of registrations that allows potential users or litigants to search for the

creator and owner of a work[51] is flawed.  First, because copyright protection is automatic,[52] many

owners do not register their work until litigation is imminent.  As the First Circuit noted, the

Copyright Act does not create a notice system:  "[an] objective of [the deposit requirement]

might be to give would-be infringers notice of the extent of their civil liability. Yet, this can

hardly have been an important legislative goal because a copyright owner is free to register any

time before filing suit, even after the act of infringement."[53]  Second, the Register of Copyrights

is authorized to destroy the deposit copy of registered works even though the deposit is often the

---

[50] *Morris v. Bus. Concepts, Inc.*, 259 F.3d 65, 68 (2d Cir. 2001).

[51] *See* Doc. No. 34 at 15-17.

[52] 17 U.S.C. 102.

[53] *Data Gen.* 36 F.3d at 1162, n. 26;  *see also Nat'l Conference of Bar Examiners v. Multistate Legal Studies, Inc.,* 692 F.2d 478, 485 (7th Cir. 1982) (noting "deposit regulations do not amount to disclosure requirements; nor as a practical matter can they function as such since a claimant may register any time prior to bringing suit on an infringement claim.")

only means of identifying what work of visual art a copyright registration (which contains only the most basic identifying information) actually covers.[54]   A system designed to create a public record would not authorize destruction of the identifying portion of the registration record.[55] Although Defendants argue the legislative history supports their view that the list of application items in 17 U.S.C. § 409 were intended to create a "public record," the portion of history Defendants cite refers only to the creation of a record for the Register of Copyrights;  nowhere in the history of the 1976 Act is a **searchable, public record** mentioned.[56]

Finally, despite the Copyright Office's recent statement that it intends to create an open, public record,[57] the Copyright Office's records in actuality serve as a poor catalog for anyone searching for a work of visual art who does not also know the name of the author, claimant, title, or copyright registration number of the work, because those are the only methods of searching the catalog.[58]   The Copyright Office does not provide any method to search for the registration

---

[54] 17 U.S.C. § 704(d) ("Deposits not selected by the Library [of Congress] under subsection (b), or identifying portions or reproductions of them, shall be retained under the control of the Copyright Office, including retention in Government storage facilities, for the longest period considered practicable and desirable by the Register of Copyrights and the Librarian of Congress. After that period it is within the joint discretion of the Register and the Librarian to order their destruction or other disposition . . .").

[55] *Washingtonian Publ'g Co. v. Pearson*, 306 U.S. 30, 38-39 (1939) ("Deposited copies may be distributed or destroyed under the direction of the librarian and this is incompatible with the notion that copies are now required in order that the subject matter of protected works may always be available for information and to prevent unconscious infringement.") (discussing a prior version of the Copyright Act which also required a deposit of a copy of a work being registered).

[56] *See* Doc. No. 34 at 15-16 (quoting H.R. Rep. No. 94-1476 at 155-56 (1976) ("the various clauses of section 409, which specify the information to be included in an application for copyright registration, are intended to give the **Register of Copyrights** authority to elicit all of the information needed to examine the application and to make a meaningful record of registration.")(emphasis added).

[57] Doc. No. 34 at 16 (*quoting* U.S. Copyright Office, Annual Report of the Register of Copyrights, 12 (2007), available online at http://www.copyright.gov/reports/annual/2007/ar2007.pdf).

[58] *See* www.copyright.gov/records; a screenshot of the search page is attached hereto as <u>Exhibit</u>

status or owner of an image if the only piece of information available is the image itself.  Indeed, the vast number of works registered before January 1, 1978 is not even included in the online catalog; a researcher must physically search the card catalog in Washington, D.C. at the Library of Congress for these works.[59]  The Copyright Office's deposit files are no more easily searchable,[60] and the Copyright Office does not even retain all deposits.[61]

The automatic protection granted by the Copyright Act combined with the practical limits of searching the Copyright Office's records combine to produce a very poor "public record" of copyrighted works.  Therefore, Defendants' argument that an "accurate public record" requires perfect registration applications is unpersuasive.

## CONCLUSION

Plaintiff's Complaint sufficiently states a claim for copyright infringement.  Plaintiff has submitted evidence that the images-in-suit were properly registered in collective works that bestow protection on each component part, and that Corbis was a proper claimant for registration.  The Copyright Act, caselaw, and the Copyright Office itself support a holding that omission of photographers' names on the registration application does not invalidate otherwise valid registrations.  For all the foregoing reasons, Plaintiff respectfully requests the Court find the registrations of the Images-in-suit valid and deny Defendants' Motion to Dismiss.

---

12.

[59] *See* United States Copyright Office Circular 23, "The Copyright Card Catalog and the Online Files of the Copyright Office," attached hereto as Exhibit 13.

[60] *See* United States Copyright Office Circular 6, "Access to and Copies of Copyright Records and Deposit," attached hereto as Exhibit 14, p. 3;  see also 17 U.S.C. § 705.

[61] *Id.*; 17 U.S.C. § 704(d).

Dated: March 29, 2010

       Respectfully submitted,

       /s Maurice Harmon
       Maurice Harmon (MH-9051)
       Harmon & Seidman LLC
       The Pennsville School
       533 Walnut Drive
       Northampton, PA 18067
       Tel: 610-262-9288
       Fax: 610-262-9557
       Maurice@harmonseidman.com
       *Admitted pro hac vice*

       David Atlas (DA-0317)
       HERNSTADT ATLAS LLP
       11 Broadway, Suite 615
       New York, New York 10004
       Tel: 212-809-2502
       Fax: 212-214-0307
       david@heatlaw.com

PROOF OF SERVICE (CM/ECF)

I hereby certify that on March 29, 2010, I caused the foregoing PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COMPLAINT to be electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent by operation of the court's electronic filing system to all parties indicated on the electronic filing receipt.  Parties may access this filing through the court's electronic filing system:

Kenneth Alan Plevan, kplevan@skadden.com
James Russell Jackson, russell.jackson@skadden.com

       /s Maurice Harmon