# EXHIBIT 9

Case 1:09-cv-02669-LAP   Document 35-10   Filed 03/29/10   Page 1 of 14

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
MUENCH PHOTOGRAPHY, INC.,                                    :
        Plaintiff                                            :     09-CV-2669 (LAP)(JCF)
                v.                                           :
                                                             :     ECF CASE
HOUGHTON MIFFLIN HARCOURT                                    :     ELECTRONICALLY FILED
PUBLISHING COMPANY and                                       :
R.R. DONNELLEY & SONS COMPANY,                               :
        Defendants.                                          :
-------------------------------------------------------------X
```

## DECLARATION OF NANCY E. WOLFF

I, Nancy E. Wolff pursuant to 28 U.S.C. § 1746, swear and affirm the following:

1. I have been a licensed attorney since 1981. I am a partner at Cowan, DeBaets, Abrahams & Sheppard LLP, 41 Madison Ave., 34th Floor, New York, NY 10010, where I practice in the area of intellectual property law and digital media law. I have personal knowledge of the matters set forth in this Declaration and could and would testify truthfully regarding them, if called upon.

2. In June 1995, as counsel to the trade association Picture Agency Council of America. Inc. ("PACA"), I met with PACA members Jane Kinne and Alan Carey, then President of PACA, and members of the United States Copyright Office including Register of Copyright Mary Beth Peters; Chief Examiner Nancy Petruzzelli; Head of the Visual Arts Section Examining Division Nancy Lawrence; and Assistant Chief Julia Huff. PACA is a trade association of approximately 100 photo libraries representing the works of thousands of photographers. The purpose of the meeting was to discuss how the Copyright Office could better serve photographers and agents in protecting and registering photographs, particularly large catalogs, the method of marketing photographs at that time.

3. The Copyright Office agreed that a temporary transfer of copyright ownership from the

1

photographers to their stock agency, would permit the stock agency, as copyright owner and claimant, to register both the catalog as a collection, as well as the individual photographs depicted in the catalog, in one application. Thereafter, the photo agency would transfer copyrights back to the respective photographers.

4. In this regard, the Copyright Office recommended that contracts between photo agencies and their contributing photographers include a grant to the company of "legal title . . . solely for the purpose of copyright registration."

5. These words were not just "approved" by the Copyright Office; the members of the Copyright Office including Registrar Peters actually suggested the language "legal title . . . solely for the purpose of copyright registration" be used to transfer ownership of copyrights to accomplish registration under the Copyright Act. The language "solely for the purpose of copyright registration" was not intended to reserve any part of the transfer from photographers to the photo agency; instead it was to allay any fears that the photographers may have otherwise had that their copyrights would be permanently lost following transfer to their photo agency in the registration process.

6. Shortly after the meeting, I published an article in the PACA newsletter informing the PACA members of the meeting with the Copyright Office and recommending that each member adopt the copyright transfer language recommended by the Copyright Office. A true and accurate copy of the 1995 article is annexed as Exhibit 1 hereto.

7. Indeed, in February 2002, responding to a request I made to Mary Beth Peters, the Register of Copyrights, with respect to these registration procedures, Nanette Petruzzelli confirmed that the catalog registrations made by PACA members following the Copyright Office's instructions were appropriate under its rules and further confirming that the 1995 article

was an accurate summary of the information provided to PACA by the Copyright Office. A true and accurate copy of this confirmation letter is annexed as Exhibit 2 hereto.

8. Thereafter, on or about 1997, certain PACA members began offering catalogs online. I again contacted the Copyright Office, including the participants in the initial meeting, to confirm that PACA members could apply the same language used to register images published in print catalogs to register images in digital databases. The Copyright Office assisted me in providing language to properly complete the application forms and confirmed that the transfer language previously recommended by the Copyright Office, "legal title . . . solely for the purpose of copyright registration", would continue to be applicable. I thereafter published another article in the PACA newsletter informing members how to register images as part of a digital database and advising them to use this approved transfer language. A true and accurate copy of the 1997 article is annexed as Exhibit 3 hereto.

9. Specifically, in 1997, I was retained by Corbis Corporation ("Corbis"), a stock photography licensing company and PACA member, to prepare an application for registration of a large number of photographs which Corbis offers for licensing online to the public. I consulted with Nanette Petruzzelli, the Chief Examiner of the Visual Arts Department, in preparation of the application. Corbis had previously adopted the language recommended by the Copyright Office in its agreements with contributors with respect to the transfer of copyright to Corbis for the purpose of registration.

10. The intent of the language used by PACA members, including Corbis, in their written agreements with photographers was to execute a full transfer of all copyright ownership in the photographs in order to register the photographs as a collection. Following registration, Corbis would reassign those rights to the photographers.

3

11. As Corbis's attorney, I prepared and signed the copyright registration applications resulting in certificate numbers VA 863-783, VA 863-785, and VA 1-038-658. Some of the images at issue in this litigation are part of these registrations.

12. Corbis filed the copyright registration applications resulting in certificate numbers VA 1-115-519, VA 1-371-165, and VA 1-378-558, following the same registration methods I used in the preceding registrations as their counsel. The remainder of the images at issue in this litigation is part of these registrations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 14, 2009

_____
Nancy E. Wolff

5

# EXHIBIT 1

# new instructions for completing an application to register a stock photo catalog
## and the photographs published therein.

By Nancy Wolff, Esq.

Representing PACA, Alan Carey, Jane Kinne and myself met last June with Marybeth Peters, the current Register of Copyright; Nanette Petruzzelli, the Chief Examiner; Nancy Lawrence, the Head of the Visual Arts Section Examining Division and Julia Huff, the Assistant Chief. Part of the purpose of the meeting was to discuss how the Copyright Office could better serve photographers and agents, in protecting and registering photographs.

For PACA members, a simplified registration of catalogs in a manner that will protect the underlying images is paramount. The results of this meeting and the follow-up conversations and correspondence are recommendations from the Copyright Office on how to register a catalog and complete a Form VA in a manner that will protect both the catalog as a compilation and the photographs.

In order to have one registration form protect both the compilation and the photographs, it is necessary to enter into an agreement with the photographers whose work will be included in the catalog. The agreement must grant the agency legal title in the individual photographs contained in the catalog solely for purposes of copyright registration. We have amended PACA's "Photographer's Exclusive Agency Agreement" to cover this transfer. Having obtained permission to register the catalog and the individual photographs, a Form VA can be completed for the entire catalog. A sample form follows this article. The following are instructions for completing each space.

Space 1 - State the title of the catalog, and under "Nature of the Works", state "Photographs" or "Catalog of Photographs" if the word catalog is in the file.

Space 2a - State the Agency's name. The contribution must be marked as a "work made for hire" in the box. Under the "Nature of the Authorship" none of the boxes are to be checked, but language should be added to state "compilation of photographs". If there is some unique text or introductory material in the language "and text" should be included here as well. This refers to text other than mere caption information.

Space 2b - List the name of three individual photographers whose work is in the catalog on the first line and the number of others. It is not important which three photographers are named. Under the questions, "Was this contribution to the work "Work Made for Hire?" The response is to check "no". Dates of Birth are optional, as well as information as to the author's contribution to the work being anonymous or synonymous. Under "Nature of Authorship", the box - "photograph" - must be checked.

Space 3 - The year in which the entire work is completed should be listed as well as the date of first publication and the nation in which it was published.

Space 4 - under "Copyright Claimant", the claimant should be the name of the Agency. Under "transfer", the words "by contract" should be included to indicate that the photographers, by contract, have transferred title to the individual photographs.

Space 5 - Should be marked "No" if there has been no registration for an earlier work.

Space 6a - Under "Preexisting Material" identify "certain previously published photographs" to cover any photographs which may have been published prior to the publication of the catalog. Additional material would identify "all other photographs and compilation (and text)" if there is introductory material.

The correspondence should indicate a name of someone at the agency who has filled out the application since the copyright examiner will write or call the designated person if there is a question.

The remaining spaces are self-explanatory, a certificate needs to be completed and name and date filled out.

When a work is published, two specimens are generally required as a deposit. Because of the size and nature of a stock photo catalog, I generally request special dispensation and only submit one catalog. Form VA can be obtained by contacting the Copyright Hotline Number 202-707-9100

If you have any questions, please feel free to contact me at Cavallo & Wolff. ∎

**NOTICES**

The articles on the stock industry have been distributed to all members. Let Leo Gradinger, PR Committee Chair, know if you use them in any way.

Leo can be contacted at Zephyr Pictures, 339 North Highway 101, Solana Beach, CA 92071. Phone: 619.755.1200 and FAX: 619.755.3723

Get your paperwork into the Legal Committee ASAP. Send it to Lonnie in the PACA Office at PO Box 308, Northfield, MN 55057.

# EXHIBIT 2

COPYRIGHT
OFFICE

NP/fd-d

February 12, 2002



Ms. Nancy Wolff, Esquire
Wolff & Godin, LLP
118 West 79th Street
New York, New York 10024

Dear Ms. Wolff:

    I am responding on behalf of the Register of Copyrights, Marybeth Peters, to your January 29, 2002 letter to her. Your letter asks about registrations already on record for a large number of stock photo catalogs submitted by various members of the Picture Agency Council of America [PACA]. These registrations were submitted following the instructions which PACA provided to its members concerning copyright in general and registrations requirements for photo catalogs in particular. PACA members are interested in securing for their published stock photo catalogs single copyright registrations each of which extends to the compilation of the photos, any new textual authorship appearing in the particular catalog, and the individual photographs authored by independent photographers.

LIBRARY
OF
CONGRESS

    The registrations on record for the stock photo catalogs submitted by PACA members generally follow this pattern of information:

Washington
D.C.
20559-6000

    1. The for-hire author of the "compilation of photographs" or "compilation of photographs plus new text" [depending on the contents of the particular catalog] is listed in space 2a of the application form VA [Form VA appropriate for works of the visual arts.].

    2. Space 2b of the form VA lists three individual photographers followed by the phrase "and x [number] others" and the authorship for such individual authors is listed as "photographs."

    3. The claimant, or owner of copyright, is usually listed at space 4 of the form VA as the for-hire author of the compilation authorship.

    4. A transfer statement, such as "by contract" is also listed at space 4, transfer line.

    The above information is acceptable when the accompanying deposit copies are catalogs consisting of photographs and, in some instances, additional textual authorship. The examiner interprets such information to indicate that the claim, or authorship, to which the registration extends consists of the compilation [selection, coordination or arrangement] of photographs and, perhaps, new copyrightable text authorship. Where individuals are listed at space 2a as additional authors, the Office considers the claim to extend also to the photographs themselves because, assuming that the claimant [owner of

copyright] listed at space 4 is the author of the compilation [usually the stock photo agency], an acceptable transfer statement is also provided in space 4 of the form VA. Thus, the Office interprets the claim to extend to the individual photographic authorship for which the names indicated as space 2b of the form VA are the responsible authors.

In addition to regulatory provisions [37 C.F.R. 201 - 260] concerning the administration of Title 17, the general guide for the examination of claims to copyright is the Office's **Compendium of Copyright Office Practices, Compendium II [1984]**. **Compendium II, sec. 615.07(b)(3)** states that the registration application submitted for a work created by a large number of authors is considered acceptable "if it names at least three of those authors followed by a statement such as 'and (number) others.' " I point out that **Compendium II, 615.07(b)(3)** does further state that the Office prefers the names of all authors by use of continuation sheets. However, the Office has consistently interpreted this preference as just that– a preference but not a requirement and the Examining Division has applied this section of the **Compendium** in its consistent acceptance of fewer than all authors' names in the registration of all categories of works.

I also point out an analogous registration practice in the area of serial works. **Circular 62, Serials,** instructs the registration applicant that "When a serial issue includes independently authored contributions in which all rights have been transferred in writing to the claimant of the entire serial issue, it is not necessary to include the names of the contributors at space 2. Whether those contributors are listed or not, the copyright claim in the serial issue as a whole would extend to those contributions." **Circular 62, at 4 (2000).** This instruction to applicants is an example of the **Compendium's** general principle regarding works having large numbers of contributing authors.

Finally, as you requested in your January 29 letter, I have read the copy of the article on completing an application for registration of a stock photo catalog [PACA News, 1995] which you wrote following a meeting with the Register, other Examining Division managers and myself. The article is an accurate summary of the information which the Copyright Office provided to you in that meeting and also accurately summarizes the registration procedures which the Office has long had in place concerning the registration of collective works such as stock photo catalogs which contain compilation authorship, perhaps new textual or other authorship for which the compilation author is responsible and multiple, separately identifiable, independent works of authorship of individual photographs in which the copyright has been transferred to the party listed as claimant.

Sincerely,

*Nanette Petruzzelli*

Nanette Petruzzelli
Chief, Examining Division

cc: Marybeth Peters
    Register of Copyrights

# EXHIBIT 3

Update on Catalog Registration

Background:
In general, a freelance photographer obtains copyright protection in a photograph at the moment the photograph is created. However, the United States Copyright Act rewards registration of works and limits the damages any creator can receive in the event of an infringement, if the work was not registered before an infringement occurs or within three months of publication.

Unless a photographer has obtained a prior registration of a photograph, the court will only award actual damages in the event of an infringement. No statutory damages, or increased damages for willful infringement can be awarded. Statutory damages are the amount of damages a court can award in its discretion against an infringer, without the owner of a work having to prove that he or she was damaged. Statutory damages can be awarded up to $30,000 per infringement and increased up to $150,000, in the event of willful infringement. In addition, unless the work was registered prior to infringement, no award of attorneys' fees can be made. The reality is that in most situations in which a photograph has been infringed, the amount of damages that can be proven, will not justify the cost of an expensive federal copyright litigation.

The registration of photographs is burdensome and expensive. At present, the fee for each copyright registration is $30. While unpublished photographs can be filed in "collections" of work, published photographs must be individually registered (or if published in the same work, those images may be registered together.) The deposit requirement is also burdensome, a copy of each work filed must accompany the registration application. The Copyright Office is aware that the Copyright Act places a burden on photographers, who create large bodies of work annually, that is not shared by many other creators, such as a writer who might only have a few works to register each year.

It is also obvious that published works are the ones that are scanned, copied and now downloaded. While it would be ideal if every photographer submitted to stock agencies, only registered photographs, most photographers, daunted by the task and expense of copyright registration, do not register their photographs.

PACA members were particularly concerned with protecting the images published in their catalogs. The ability to register a stock photography catalog in such a way that the photographs, as well as the catalog, are all protected under one copyright application has always been a challenge. There are essentially two types of copyrights involved in the publication of a catalog. The agency owns the copyright to the publication as a whole, known as a collective work or compilation, and includes the selection and arrangement of the photographs and any parts of the catalog owned by the agency. In addition, each contributing photographer or illustrator owns the copyright to his or her individual photograph or illustration contained in the catalog.

Copyright Office regulations only permit one claimant per application. Under these regulations, each contributor and the agency would have to file a deposit of two copies of the catalog and a separate application per image (or group of images by one claimant) for $30 per application, amounting to hundreds of applications and fees per catalog.

PACA's meeting with the Copyright Office:

The burden and expense of this procedure resulted in a meeting five years ago among PACA (the then President and the Legal Committee) and the Register of Copyrights, the Chief Examiner and the Head of the Visual Arts Department at the Copyright Office. At this meeting and through follow-up conversations, a recommended simplified registration of catalogs was established. The only way to file ONE application, is for the individual contributors to grant the agency legal title in the photographs for copyright registration purposes. This protects the collection of images (selection and arrangement) and any previously unpublished images published in the catalog. Previously published images must still be registered separately. The copyright can be reassigned to the photographer after registration.

A sample application was published in the PACA newsletter at the time. A copy can be faxed to any member upon request.

Digital Database Registrations:

Over the past five years, with the increased use of the Internet to promote and sell images, the same difficulty arose in registering large collections of photographs by various photographers published within an agency's digital databases. Again, the Copyright Office worked with me in carrying forward the same recommendations made for print catalogs with digital databases. The Copyright Office has a database registration that permits the submission of a database of works on a CD-ROM and then allows the registration of quarterly updates every three months. Thumbnails of 50 images must accompany the application.

The unpublished underlying images can be protected as well as the database as a collection, if the same grant of rights from the contributors is obtained by the stock library that was obtained with the print catalogs. The Contributor Agreement, or another writing, must provide that the photographer is granting legal title to the photographs for registration purposes solely. The stock library agrees to reassign the copyright after registration. It is not the intent that the stock library would own the photographer's copyright, other than for the limited purpose of economically and efficiently registering the work for the photographers' benefit, and then reassigning the copyright back.

A sample database registration and quarterly update application can be faxed to any member upon request.

Nancy E. Wolff, Esq.
Wolff & Godin LLP