USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/4/10

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
MUENCH PHOTOGRAPHY, INC.,          :
                                   :
                Plaintiff,         :    09-CV-2669 (LAP)
                                   :
       -against-                   :    MEMORANDUM AND ORDER
                                   :
HOUGHTON MIFFLIN HARCOURT          :
PUBLISHING COMPANY and R.R.        :
DONNELLEY & SONS COMPANY,          :
                                   :
                Defendants.        :
------------------------------X

LORETTA A. PRESKA, Chief United States District Judge:

Plaintiff Muench Photography, Inc. ("MPI" or "Plaintiff")

brings this action pursuant to 17 U.S.C. § 501 et seq. (the

"Copyright Act") against Defendants Houghton Mifflin Harcourt

Publishing Company ("HMH") and R.R. Donnelly & Sons Company

("Donnelly," and together with HMH, "Defendants") alleging that

Defendants engaged in the unauthorized and impermissible use of

Plaintiff's images.  Defendants now move to dismiss the

Complaint for failure to state a cause of action pursuant to

Fed. R. Civ. P. 12(b)(6) arguing that the photographs at issue

were not properly registered with the Copyright Office.  By

Order dated April 12, 2010 the Court converted Defendants'

motion to dismiss into one for summary judgment pursuant to Fed.

R. Civ. P. 12(d).  For the reasons set forth herein, Defendants'

motion is GRANTED in part and DENIED in part.

I.   BACKGROUND

   A.   Factual Allegations

   MPI engages in the business of licensing photographs on
behalf of photographers Marc and David Muench. (Complaint
("Compl.") ¶ 2.)  HMH[1] is a publisher that sells and distributes
textbooks through its former companies and divisions, including
textbooks containing images licensed by MPI. (Id. ¶¶ 3-5.)
Donnelly is a full-service publisher and was the printer for the
HMH textbooks which contained the images at issue here. (Id.
¶¶ 6, 18.)

   Beginning in March 2001 and continuing through December
2006, MPI, through its agent Corbis Corporation ("Corbis"), a
privately held photography stock licensing agency (id. ¶ 2),
sold HMH limited licenses to copy and to distribute
approximately 180 of MPI's images ("the Images") (id. ¶ 11; Ex.
A).  MPI alleges that HMH exceeded the scope and terms of those
licenses, causing unauthorized reproductions of the Images to be
made and distributed. (Id.)

   MPI alleges that by exceeding the number of licenses
granted to HMH, HMH's unauthorized reproduction and distribution

---

[1] In December 2007, Houghton Mifflin Company acquired several
divisions of another publisher and renamed the merged company
Houghton Mifflin Harcourt Publishing Company.  HMH is the
successor-in-interest of Harcourt School Division, Houghton
Mifflin Company, Houghton Mifflin College Division, Holt
Rinehart & Winston, McDougal Littell, and Harcourt Archive.
(Compl. ¶ 4.)

of the Images constituted copyright infringement. (Id. ¶¶ 16-
17.)  Moreover, MPI claims that Donnelly violated the Copyright
Act by printing the textbooks in suit. (Id. ¶ 23.)

    B.   Copyright Registration

    On September 30, 1997, Photographers Marc Muench and David
Muench, creators and owners of the Images, executed a Copyright
Registration Agreement with Corbis. (See Declaration of Kenneth
A. Plevan ("Plevan Decl."), Exs. 7, 8.)  The agreements "grant[]
to [Corbis] legal title in [Marc and David Muench's] images
selected and digitized by Corbis and included in the Corbis
digital collection [] **solely for the purposes of copyright
registration**." (Id. (emphasis in original).)  After
registration, Corbis agreed that it would "promptly reassign
legal title to [Marc and David Muench] with respect to [their]
registered original film images . . . ." (Id.)  Marc and David
Muench updated the transfer of their copyrights to Corbis on
November 15, 2001 (Plevan Decl., Ex. 10 (David Muench)) and
November 27, 2001 (Plevan Decl., Ex. 9 (Marc Muench)).[2]  The
updated agreements set forth that

---

[2] On December 16, 2009, both Marc and David Muench executed
Copyright Assignment Affirmation Declarations confirming that
they "intended [] and believed [they] made a full, complete and
total transfer of all [their] copyrights to all of [their]
photographs which were accepted by [Corbis] into its collection
for licensing, and which [Corbis], as the owner of all
copyrights thereby transferred, has subsequently registered
. . . ." (Pl. Mem., Exs. 7, 8.)

Solely for the purpose of registering my copyright on my behalf, I hereby assign to Corbis the right, title, and interest to the copyright in my Accepted Images. Upon completion of the copyright registration process and receipt of the copyright certificate covering my registered Accepted Image, Corbis shall promptly re-assign in writing to me all of my right, title, and interest in my Accepted Images that I transferred to Corbis.

(Id.) Corbis registered several automated databases of photographs, including the Images, with the Copyright Office on November 6, 1997 (Registration Nos. VA 863-783 and VA 863-785, Pl. Mem., Exs. 1, 2), January 14, 1999 (Registration No. VA 1-038-658, Pl. Mem., Ex. 3), March 16, 2001 (Registration No. VA 1-115-519, Pl. Mem., Ex. 4), August 28, 2006 (Registration No. VA 1-371-165, Pl. Mem., Ex. 5), and August 29, 2006 (Registration No. VA 1-378-558, Pl. Mem., Ex. 6).[3]  Form VA, the form used by Corbis to register the Images, contains nine spaces

---

[3] Attached to Plaintiff's opposition brief is a Certificate of Registration filed by David Muench on January 18, 1996. (See Pl. Mem., Ex. 11.) The certificate registers a collection of unpublished photographs and lists David Muench as the author. This registration, according to Plaintiff's opposition, registered twenty of the photographs at issue here. (See Pl. Mem., Ex. 10 (Declaration of Emily Shirbroun) ¶ 4(a) (representing that the following images, which were registered by David Muench in January 1996, were included in Corbis' Registration No. VA 863-783: DM001400, DM002869, DM002056, DM001192, DM002575, DM002499, DM001963, DM002267, DM002886, DM001536, DM002975, DM001972, DM001935, DM001914, DM002940, DM002562, DM001027, DM002275, DM001235, DM001107).) Defendants failed to address the registration of these photographs in their reply brief. Accordingly, because the twenty photographs appear to have been properly registered by David Muench, the Court denies Defendants' motion with regard to these images. The remainder of this Memorandum and Order will address the validity of the copyright registration for the remaining Images.

4

that request certain identifying information from the
registering party. Space 2 requests information concerning the
author(s) of the material. In each of the forms, Corbis listed
itself as one author, and in the second space provided, Corbis
listed the names of three individuals and included the phrase
"& others," or "and (number) other photographers." (See
generally Pl. Mem., Exs. 1-6.) In addition, Corbis listed
itself as the Copyright Claimant on each registration form.
None of the certificates lists MPI, Marc Muench, or David Muench
as an author. (Id.)

In an effort to ensure the validity of the copyright
registration procedure utilized by Corbis, Nancy Wolff, counsel
to the Picture Agency Council of America, Inc. ("PACA"), a
photographer trade association, wrote a letter dated January 29,
2002 to Marybeth Peters, Register of Copyrights. Nanette
Petruzzelli, the Copyright Office's Chief of the Examining
Division, replied to Ms. Wolff's inquiry on February 12, 2002.
(See Pl. Mem., Ex. 9 (Declaration of Nancy E. Wolff ("Wolff
Decl.") at Ex. 2 ("Petruzzelli Letter").) Ms. Petruzzelli
confirmed that the Copyright Office considers the copyright
claim

> to extend [] to the photographs themselves because,
> assuming that the claimant [owner of copyright] listed
> at space 4 is the author of the compilation [usually
> the stock photo agency], an acceptable transfer
> statement is also provided in space 4 of the form VA.

> Thus, the Office interprets the claim to extend to the
> individual photographic authorship for which the names
> indicated as space 2b of the form VA are the
> responsible authors.

(Id. at 1-2.)   In the letter, though, Ms. Petruzzelli stated

that the Copyright Office preferred, but did not require, the

registration application to contain the names of all of the

photographers on continuation sheets. (Id. at 2.)   She

analogized the registration process to that of serial works

(e.g., magazines, periodicals, etc.) which do not require the

listing of the names of individual contributors where "all

rights have been transferred in writing to the claimant of the

entire serial issue." (Id.)

## C.   Procedural Background and the Impact of Reed Elsevier, Inc. v. Muchnick

Section 411 of the Copyright Act provides that "no civil

action for infringement of the copyright in any United States

work shall be instituted until preregistration or registration

of the copyright claim has been made in accordance with this

title." 17 U.S.C. § 411(a).   At the time Plaintiff filed the

Complaint, the controlling law in the Second Circuit provided

that the registration of a copyright was a jurisdictional

requirement and a pre-requisite to filing a copyright

infringement action. See In re Literary Works in Elec. Databases

Copyright Litig., 509 F.3d 116, 121-22 (2d Cir. 2007), rev'd,

Reed Elsevier, Inc. v. Muchnick, -- U.S. --, 130 S. Ct. 1237

6

(2010). Therefore, Defendants' original motion to dismiss was filed pursuant to Fed. R. Civ. P. 12(b)(1). However, before the Court decided Defendants' motion, the United States Supreme Court reversed the Court of Appeals in Reed Elsevier, Inc. v. Muchnick. The Supreme Court held that "[§] 411(a)'s registration requirement is a precondition to filing a claim that does not restrict a federal court's subject-matter jurisdiction." 130 S. Ct. at 1241. Because § 411's imposition of a precondition to filing a claim was "not clearly labeled jurisdictional," the Court found that it merely "impose[d] a type of precondition to suit that supports nonjurisdictional treatment under [the Court's] precedents." Id. at 1247; see also Arbaugh v. Y & H Corp., 546 U.S. 500, 503 (2006) (examining the text of 42 U.S.C. § 2000e(b) and determining that Title VII's numerosity requirement lacked a clear jurisdictional label and therefore only delineated "a substantive ingredient of a Title VII claim for relief.").

In light of the Supreme Court's decision, Defendants withdrew their original motion and re-filed pursuant to Fed. R. Civ. P. 12(b)(6) [dkt. no. 29]. However, in order to prove whether Corbis' registration of the automated databases covered Plaintiff's images, the parties attached documents and other materials to their briefs that were not referenced in the Complaint. Accordingly, by Order dated April 12, 2010 [dkt. no.

37], the Court notified the parties that it was converting

Defendants' motion to dismiss into one for summary judgment so

that it could properly consider all of the parties' exhibits.

II.  DISCUSSION

     A.  Summary Judgment Standard

     Defendants are entitled to summary judgment only "if the

pleadings, depositions, answers to interrogatories, and the

admissions on file, together with the affidavits, if any, show

that there is no genuine issue as to any material fact and that

[Defendants are] entitled to judgment as a matter of law."

Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed.

R. Civ. P. 56(c)).  A fact is material if it "might affect the

outcome of the suit under the governing law." Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is

genuine if "the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." Id.; see also Overton

v. New York State Div. of Military and Naval Affairs, 373 F.3d

83, 89 (2d Cir. 2004).

     In assessing whether summary judgment is proper, the Court

construes the evidence in the light most favorable to the non-

moving party. Lucente v. IBM Corp., 310 F.3d 243, 253 (2d Cir.

2002).  Here, Defendants bear the initial burden of providing

the basis for the motion and of identifying the evidentiary

materials, if any, supporting their position. See Grady v.

8

Affiliated Cent., Inc., 130 F.3d 553, 559 (2d Cir. 1997).
Plaintiff must then "come forward with specific facts showing
that there is a genuine issue for trial." Matsushita Elec.
Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)
(quoting Fed. R. Civ. P. 56(e)).  Mere speculation and
conjecture will not suffice. See Niagara Mohawk Power Corp. v.
Jones Chem. Inc., 315 F.3d 171, 175 (2d Cir. 2002).

    B.   Copyright Registration Procedures

      Pursuant to the Copyright Act, an application for copyright
registration shall include information about the copyright
claimant, the particular work, and the author of the work.
Specifically, the application must include "the name and
nationality or domicile of the author or authors . . . ." 17
U.S.C. § 409(2).  When, as here, the work at issue is a
compilation, the copyright "extends only to the material
contributed by the author of such work . . . ." 17 U.S.C.
§ 103(b).  In addition, Congress specifically provided that the
"Register of Copyrights is authorized to specify by regulation
the administrative classes into which works are to be placed for
purposes of deposit and registration." 17 U.S.C. § 408(c)(1).

      Section 202.3 of Title 37 of the Code of Federal
Regulations "prescribes conditions for the registration of
copyright . . . ." 37 C.F.R. § 202.3(a)(1).  Here, MPI focuses
on § 202.3(a)(3) which classifies a copyright claimant as either

the "author of the work" or "a person or organization that has obtained ownership of all rights under the copyright initially belonging to the author." Id. §§ 202.3(a)(3)(i), (ii).[4] Although § 202.3(b)(4) sets forth the requirements to register a single application for multiple works, MPI contends that it did not file the registrations at issue here pursuant to 37 C.F.R. § 202.3(b)(4). (See Pl. Mem. at 20.) Similarly, while § 202.3(b)(10) lists the requirements to register a group of photographs, Plaintiff concedes that it did not utilize this precedent in registering the Images. (Id. at 21.) MPI argues that the text of § 103 of the Copyright Act, coupled with the case law interpreting the Copyright Act and the Copyright Office's own interpretation of the statute, provide that the registration of a collective work covers the individual works even if the individual authors' names are omitted from the registration form. MPI's reading of the statute is misguided.

    i.    Deference to the Copyright Office

    As a preliminary matter, it is necessary to determine what weight, if any, should be given to the Copyright Office's interpretation of the Copyright Act. Here, the parties

---

[4] Footnote 1 of § 202.3(a)(3)(ii) states that a copyright claimant "includes a person or organization that has obtained, from the author or from an entity that has obtained ownership of all rights under the copyright initially belonging to the author, the contractual right to claim legal title to the copyright in an application for copyright registration." 37 C.F.R. § 202.3(a)(ii) n.1.

10

(including the Copyright Office itself)[5] have referenced not only

the Copyright Act in making their arguments but also the Code of

Federal Regulations, certain Copyright Circulars distributed by

the Copyright Office, the Compendium of Office Practices II

("Compendium II"), and the Petruzzelli Letter.

In determining the question of deference, the Court is

guided by the two-step analysis set forth in Chevron U.S.A.,

Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984).

See G&T Terminal Packaging Co. v. U.S. Dep't of Agric., 468 F.3d

86, 95 (2d Cir. 2006) ("It is firmly established that we review

under the Chevron standard an agency's binding and generally

applicable interpretation of a statute that it is charged with

administering when that interpretation is adopted in the course

of a formal adjudicatory proceeding." (citing United States v.

Mead Corp., 533 U.S. 218, 230 n.12 (2001))); see also Freeman v.

Burlington Broadcasters, Inc., 204 F.3d 311, 322 (2d Cir. 2000)

("An agency's interpretation of an ambiguous statute it is

charged with administering is entitled to Chevron deference not

only when the agency interprets through rule-making, but also

when it interprets through adjudication."). Before reaching the

---

[5] In connection with the Defendants' original motion to dismiss,
the Court invited the Copyright Office to submit a letter brief
detailing its position on whether the registration of an
automated database covers any independently authored
contributions in which all rights have been transferred to the
claimant by the contributors. [See dkt. no. 22 (Order requesting
submission); dkt. no. 26 (Government's brief).]

11

Chevron test, however, a court must first determine whether "Congress has 'explicitly left a gap for an agency to fill [creating] an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation,' and any ensuing regulation is binding in the courts unless procedurally defective, arbitrary or capricious in substance, or manifestly contrary to the statute." Mead, 533 U.S. at 227 (quoting Chevron, 467 U.S. at 843-44). If Congress has left a gap for an agency to fill, a court must ask "whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." Chevron, 467 U.S. at 842-43. If, however, "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." Id. at 843. A court "need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." Id. at 843 n.11. Rather, a court will defer to the agency's interpretation as long as that interpretation is "'reasonable.'" Cohen v. JP

12

Morgan Chase & Co., 498 F.3d 111, 116 (2d Cir. 2007) (quoting Chevron, 467 U.S. at 844).

Congress explicitly authorized the Register of Copyrights to create regulations detailing certain registration procedures. See 17 U.S.C. § 408(c). Those regulations, codified at 37 C.F.R. § 202.3, are entitled to Chevron deference. Where an agency's interpretation is not entitled to Chevron deference, however, "an agency's interpretation may merit some deference whatever its form, given the 'specialized experience and broader investigations and information' available to the agency." Mead, 533 U.S. at 234 (quoting Skidmore v. Swift & Co., 323 U.S. 134, 139 (1944)). The Copyright Office's Circulars and Compendium II should be afforded this lesser deference, or Skidmore deference, so long as the Copyright Office's interpretations do not conflict with the express statutory language of the Copyright Act. See, e.g., Morris v. Bus. Concepts, Inc., 283 F.3d 502, 505-06 (2d Cir. 2002) (finding the Copyright Office's interpretation as set forth in the Circular for Copyright Registration on Form SE "persuasive" as to whether a copyright claimant's registration of a collective work covers the constituent works).

Here, as the Court of Appeals did in Morris, the Court will defer to the Copyright Office's interpretation of the Copyright Act (and the regulations) as set forth in the Circular for

Copyright Registration for Automated Databases ("Circular 65").
Compare 37 C.F.R. § 202.3(b)(5)(ii) ("An application for group
registration of automated databases . . . shall consist of: (A)
A Form TX . . . (B) The appropriate filing fee . . . (C) The
deposit . . . .") with Circular 65 at 4-5 ("To make a single
group registration for an automated database . . . send the
following items [to the Copyright Office]: a nonrefundable
filing fee . . . a deposit representative of the
updates/revisions being registered [and] a Form TX completed
according to the instructions below."). However, the Court will
not defer to the Copyright Office's interpretations of the
Copyright Act as set forth in Petruzzelli Letter--even though
the Petruzzelli Letter relies on provisions of Compendium II--
because the interpretations conflict with a plain reading of 17
U.S.C. § 409. See State of N.Y. v. Shalala, No. 93 Civ. 1330,
1996 WL 87240, at *9 (S.D.N.Y. Feb. 29, 1996) ("Generally, even
where an agency's interpretation is inconsistent with its past
policy, the current interpretation is entitled to the 'usual
deference' as long as it is reasonable and not contrary to the
plain language of the statute." (citing Himes v. Shalala, 999
F.2d 684, 690-91 (2d Cir. 1993))) (emphasis added); compare 17
U.S.C. § 409 ("The application for copyright registration . . .
shall include . . . (2) in the case of a work other than an
anonymous or pseudonymous work, the name and nationality or

14

domicile of the author or authors . . . .") with Petruzzelli
Letter at 2 ("I point out that Compendium II, 615.07(b)(3) does
further state that the Office prefers the names of all authors
by use of continuation sheets. However, the Office has
consistently interpreted this preference as just that--a
preference but not a requirement . . . .").

    C.   Analysis

    The Court is faced with the novel question of whether the
registration of an automated database--here, a compilation of
photographs by different photographers--by a third-party
copyright claimant that has been assigned the rights to the
individual works for the purposes of copyright registration
registers the individual works thereby permitting the individual
photographers to sue for copyright infringement.

    Defendants maintain that the registration process followed
by MPI and Corbis does not comply with the statutory
requirements of § 409(2) of the Copyright Act, which mandate
that every application for registration shall include the names
of the author(s) of the work(s). MPI counters by arguing that
the registration process it followed here comported not only
with the Code of Federal Regulations (see 37 C.F.R.
§ 202.3(a)(3)) but also with the procedure set forth in the
Petruzzelli Letter. (See Petruzzelli Letter at 2
("[R]egistration application submitted for a work created by a

large number of authors is considered acceptable if it names at least three of those authors followed by a statement such as 'and (number) others'.") (internal quotation marks omitted).)

In making its case that the database registrations cover the individual images, MPI relies primarily on case law and asks the Court to look beyond the plain language of the Copyright Act.  To begin, MPI relies principally on the Arizona district court's holding in Bean v. McDougal Littell et al., No. 07-8063, 2008 WL 2896950 (D. Ariz. July 28, 2008).  In Bean, the court was faced with a lawsuit almost identical to the instant action. The Bean plaintiffs were photographers who, like MPI, had transferred legal title in their photographs to Corbis to file copyright registrations (the same copyright registrations at issue here).  In Bean, however, the defendants failed to argue that the copyright registrations did not comply with § 409; instead, the defendants' argument tracked the Second Circuit Court of Appeals' ruling in Morris v. Bus. Concepts Inc., 283 F.3d 502 (2d Cir. 2002), an analogous case concerning whether the copyright registration of a magazine reached the contributions of the individual authors.  Therefore, in order for the Court to distinguish Bean, it becomes necessary to explain why it was erroneous for the Bean court to rely on the Morris court's decision.

In Morris, the Court of Appeals addressed the issue of whether the copyright registration of a magazine (deemed a collective work by the Copyright Office) covered the individual articles, thereby permitting the author of an article to bring a copyright infringement action.  In analyzing the issue, the court looked to Copyright Office's Circular for Copyright Registration for Single Serial Issues ("Circular 62") for guidance. Morris, 283 F.3d at 505-06.  Circular 62 states that "[t]he claimant registering a serial may claim copyright not only in the collective-work authorship for which the claimant is responsible but also in any independently authored contributions in which all rights have been transferred to the claimant by the contributors." See Circular 62.  The court in Morris held that "unless the copyright owner of a collective work also owns all the rights in a constituent part, a collective work registration will not extend to a constituent part." Morris, 283 F.3d at 506. The court found that the plaintiff's transfer of her rights in the article was inadequate because it did not transfer all of her rights to the copyright claimant.  Thus, the court affirmed the district court's dismissal for lack of subject matter jurisdiction. Id.[6]

---

[6] Although the Court of Appeals' decision was reversed by the Supreme Court in Reed Elsevier, its reasoning as to whether a copyright registration of a collective work also registers the individual contributions is still sound.  (cont'd on next page)

17

Relying on Morris, the defendants in Bean sought to dismiss the action on the basis that the transfer of the plaintiff photographers' rights in the photographs to Corbis was deficient because it transferred only legal title instead of all of their rights. See Bean, 2008 WL 2896950, at *1.  Citing to both Morris and the Code of Federal Regulations, the Bean court disagreed with the defendants and found that the photographers made a valid transfer of their rights in the photographs and were thereby entitled to bring a claim for copyright infringement. Id. at *4; see 37 C.F.R. § 202.3(a)(ii) n.1 (defining a copyright claimant as a "person or organization that has obtained, from the author or from an entity that has obtained ownership of all rights under the copyright initially belonging to the author, the contractual right to claim legal title to the copyright in an application for copyright registration"). However, in arriving at its decision, the Bean court never explained why the registration of an automated database should be governed by the same rules that apply to the registration of serials.  For this reason, the Court declines to follow the Bean court's reasoning and finds that automated databases and serials are separate forms of copyrightable works and are thus subject to separate copyright regulations.

(cont'd from previous page)   The only difference now is that registration is no longer a jurisdictional prerequisite.

Although both serials and automated databases are considered collective works,[7] each is governed by separate registration requirements. Serials are governed by 37 C.F.R. § 202.3(b)(6) as well as Circular 62.[8] Automated databases, on the other hand, are governed by 37 C.F.R. § 202.3(b)(5) and Circular 65. Neither Circular 65 nor § 202.3(b)(5) contains language similar to that found in Circular 62, i.e., that the copyright registration filed by the claimant extends to the independently contributed works if all of the rights in the work have been transferred to the claimant. Moreover, any argument that the registration of the automated databases, considered compilations, covers the individual works of the compilation pursuant to § 103 is belied by the text of § 103 which states that "copyright in a compilation or derivative work extends only to the material contributed by the author." 17 U.S.C. § 103(b) (emphasis added). The cases MPI cites to support its reading of

---

[7] While automated databases are not defined in the Copyright Act, Circular 65 considers databases a form of compilation. "The term 'compilation' includes collective works." 17 U.S.C. § 101.
[8] As the Court of Appeals noted in Morris, "'the Copyright Office has no authority to give opinions or define legal terms, and [] its interpretation on an issue never before decided should not be given controlling weight.'" Morris, 283 F.3d at 505 (quoting Bartok v. Boosey & Jawkes, Inc., 523 F.2d 941, 946-47 (2d Cir. 1975)). Nevertheless, the court found the Copyright Office's interpretation of the Copyright Act set forth in Circular 62 as applied to the registration procedures of serials to be "persuasive." Id. And, as discussed above, Circular 62 provides that the registration of a serial by a claimant who owns all of the rights in the constituent parts will extend to the constituent parts. Id. at 506.

19

the statute only underscore the fact that the registration of a
collective work reaches the individual works only when the
author of the collective work authored each of the individual
works. E.g., Szabo v. Errisson, 68 F.3d 940 (5th Cir. 1995)
(musician's registration of his collection covered each of his
individual songs which comprised the collection); Educ. Testing
Servs. v. Katzman, 793 F.2d 533, 539 (3d Cir. 1986) ("[T]he fact
that the registration was for compilations does not preclude
protection for the material therein contributed by the
author."); Carell v. Shubert Org., Inc., 104 F. Supp. 2d
236 (S.D.N.Y. 2000) (group registration of makeup designs
covered individual works, but copyright owner was designer of
individual designs within the group); Woods v. Universal City
Studios, Inc., 920 F. Supp. 62, 64 (S.D.N.Y. 1996) (author who
filed registration for collective work was the same author of
the individual works that were the subject of the infringement).
Accordingly, the Court rejects MPI's interpretation of the
Copyright Act.

A plain reading of § 409 of the Copyright Act mandates that
the copyright registrations at issue here contain the names of
all the authors of the work. See 17 U.S.C. § 409(2).   MPI
believes that such a "hypertechnical reading of the Copyright
Act" conflicts with the lenient approach that courts should take
with respect to copyright registrations, especially in the post-

Berne Convention era. (Pl. Mem. at 19.) MPI, though, is not asking the Court to interpret the statute broadly; rather, it is asking the Court flatly to ignore the requirement that the authors' names be listed on the copyright registration form. MPI's request goes a bridge too far.

A "Court's interpretive function requires it to identify and give effect to the best reading of the words in the provision at issue. Even if the proper interpretation of a statute upholds a 'very bad policy,' it 'is not within [a court's] province to second-guess' the 'wisdom of Congress' action' by picking and choosing [the court's] preferred interpretation from among a range of potentially plausible, but likely inaccurate, interpretations of a statute." Harbison v. Bell, -- U.S. --, 129 S. Ct. 1481, 1493-94 (2009) (quoting Eldred v. Ashcroft, 537 U.S. 186, 222 (2003)); see also TVA v. Hill, 437 U.S. 153, 194 (1978) ("Our individual appraisal of the wisdom or unwisdom of a particular course consciously selected by the Congress is to be put aside in the process of interpreting a statute."). The Court's "task is to apply the text, not to improve upon it." Pavelic & LeFlore v. Marvel Entm't Group, Div. of Cadence Indus. Corp., 493 U.S. 120, 126 (1989). And where, as here, the Court finds the terms of the statute to be "unambiguous, judicial inquiry is complete." Rubin v. United States, 449 U.S. 424, 430 (1981). Accordingly,

because the Copyright Act is clear on its face, i.e., a
copyright registration must contain certain pieces of
information including the author's name, the registrations at
issue here cover only the database as a whole (the compilation)
but do not cover Plaintiff's individual contributions.  Thus,
MPI has failed to comply with the precondition to suit, thereby
failing to state a cause of action with respect to all of the
Images except those identified by MPI in its opposition brief
that were registered by David Muench in January 1996. (See supra
note 3.)

     The Court is not persuaded by MPI's "doomsday scenario":
that by granting Defendants' motion, millions of copyright
registrations will be voided.  Nothing could be further from the
truth.  Because Corbis is the author of the compilation the
registration of the compilation remains valid.  The individual
works, however, are not registered.  As was the case with the
plaintiff in Morris, nothing in this decision prevents MPI from
registering the photographs immediately.  If MPI does so, it
"will be able to collect statutory damages against future
infringers." Morris v. Bus. Concepts, Inc., 259 F.3d 65, 73 (2d
Cir. 2001).

     In addition, because the registration is valid as to the
compilation, MPI's argument that the "innocent error rule"
should apply to save the registration as to the individual

photographs is also rejected.  The "innocent error rule"

operates to save a copyright registration that suffers from some

technical defect such as a misspelling or accidental omission of

information.  See eScholar, LLC v. Otis Educ. Sys., Inc., No. 04

Civ. 4051, 2005 WL 2977569, at *12 (S.D.N.Y. Nov. 3, 2005).

However, in the analogous case of Morris, the Court of Appeals

rejected such a defense finding that

> [E]ven if we assume arguendo that Condé Nast's
> registrations were intended for Morris's articles, the
> errors contained in the registrations would be much
> more than the minor "technical misdescriptions" . . .
> these errors would render the registrations completely
> inaccurate.  The registrations contained none of the
> information required by § 409 for proper registration
> of the articles, such as Morris's name, the title of
> her articles, or the proper copyright claimant.
> Accordingly, Condé Nast's registrations cannot be
> viewed as valid copyright registrations under
> § 408(a).

Morris, 259 F.3d at 72.  The same reasoning applies here, and

thus, MPI's innocent-error-rule defense is rejected.

The Court's ruling, although a seemingly harsh result for

MPI, is guided by the clear language of the Copyright Act.  The

Court does not fault MPI for its failed efforts to comply with

the registration process.  Indeed, from the record presented to

the Court, it appears MPI's actions were completely appropriate-

-it sought the approval of the Copyright Office to ensure

compliance with the statute.  Unfortunately, MPI received poor

advice and is now deprived, at least at this juncture, of the

ability to seek statutory damages with respect to the Images not registered by MPI.  The fault in this case lies solely with the Copyright Office and its relaxed interpretation of the statute.

### CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment [dkt. no. 32] is GRANTED in part and DENIED in part. Defendants' motion is granted with respect to all of the Images except those Images registered by David Muench in January 1996.

The parties shall confer and inform the Court by letter no later than May 12, 2010 how they propose to proceed.


SO ORDERED:

DATED:    New York, New York
          May 4, 2010

_____
LORETTA A. PRESKA, Chief U.S.D.J.