Alan Behr
Carolyn O'Leary
ALSTON & BIRD LLP
90 Park Avenue
New York, NY 10016
Tel.: (212) 210-9400
Fax: (212) 210-9444

Victor S. Perlman
AMERICAN SOCIETY OF
MEDIA PHOTOGRAPHERS
150 North Second Street
Philadelphia, PA 19106-1912
Tel.: (215) 451-2767

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| MUENCH PHOTOGRAPHY, INC.,<br><br>*Plaintiff,*<br><br>- v -<br><br>HOUGHTON MIFFLIN HARCOURT PUBLISHING COMPANY and R.R. DONNELLEY & SONS COMPANY,<br><br>*Defendants.* | 09-CV-2669 (LAP) (JCF) |

**AMERICAN SOCIETY OF MEDIA PHOTOGRAPHERS' AMICUS CURIAE BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR RE-ARGUMENT AND RECONSIDERATION OF THE COURT'S ORDER GRANTING DEFENDANTS' MOTION TO DISMISS**

LEGAL02/31956323v8

# TABLE OF CONTENTS

STATEMENT OF INTEREST..................................................................................................1

ARGUMENT AND CITATION TO AUTHORITIES............................................................3

    I.    Standard for Motion for Reconsideration .................................................................3

    II.    ASMP, on Behalf of its Members, Supports Plaintiff's Arguments. .........................4

    III.    The District Court Should Reconsider its Ruling Granting Summary Judgment to the Defendants. ......................................................................................4

        A.  The Court Gives Improper Weight to the Differences in Language Between Circular 62 (Serial Works) and Circular 65 (Automated Databases), While Failing to Defer to the Copyright Office, per Compendium II. ................................................................................................4

        B.  Congress' Intent was to Liberalize the Copyright Act and Not to Permit Minor Defects to Stand in the Way of Registration. ...........................................7

        C.  Public Policy Strongly Favors the More Equitable Interpretation of the Copyright Registration Requirements Long Utilized by the Copyright Office. ..........................................................................................................9

LEGAL02/31956323v8

# TABLE OF AUTHORITES

**Cases**

*Allstate Insurance Co. v. Valley Physical Medicine & Rehabilitation, P.C.*, 555 F.Supp.2d 335, 338 (E.D.N.Y. 2008) .................................................................................... 4

*Coach Inc. v. Peters*, 386 F.Supp.2d 495 (S.D.N.Y. 2005) ............................................... 7

*Devlin v. Transp. Comm'ns Union*, 175 F.3d 121, 131-32 (2d. Cir. 1999) ...................... 3

*Doe v. New York City Dept. of Social Servs.*, 709 F.2d 782, 789 (2d. Cir. 1983) ............ 3

*Horgan v. MacMillan, Inc.* 789 F.2d 157, 161 (2d. Cir. 1986) ........................................ 7

*Interscope Records v. Owusu*, No. 5:05-CV-0102, 2007 WL 2343676, *2 (N.D.N.Y. Aug. 13, 2007) ............................................................................................................................ 10

*Langman Fabrics v. Graff Californiawear*, 160 F.3d 106, 114-15 (2d. Cir. 1998) ......... 6

*Nat'l Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 115 (2d. Cir. 2001) ....................... 4

*R.F.M.A.S., Inc. v. Mimi So*, 619 F.Supp.2d 39, 53-54 (S.D.N.Y. 2009) .......................... 8

*Shoptalk, Ltd. v. Concorde-New Horizons Corp.*, 168 F.3d 586, 592 (2d. Cir. 1999) ...... 6

*Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d. Cir. 1995) .................................. 3, 4

*Whelan Associates, Inc. v. Jaslow Dental Laboratory, Inc.*, 797 F.2d 1224, 1242, fn. 38 (3rd Cir. 1986) .................................................................................................................... 5

**Statutes**

17 U.S.C. § 101 ..................................................................................................................... 2

17 U.S.C. § 411(b) ................................................................................................................ 8

17 U.S.C. § 701(b)(5) ........................................................................................................... 6

17 U.S.C. § 702 ..................................................................................................................... 6

**Other Authorities**

37 C.F.R. § 201.2(b)(7) ........................................................................................................ 6

4 Nimmer on Copyrights, § 17.01(B)(1)(a) at 17-7 ............................................................. 8

H.R. 10229, 110th Cong. (2008) ......................................................................................... 8

H.R. 10238, 110th Cong. (2008) ...................................................................................... 2, 8

S. 9591, 110th Cong. (2008) ................................................................................................ 8

Section 615.06 of Compendium II ....................................................................................... 7

U.S. Copyright Office, Circulars, available online at www.copyright.gov/circs ............... 5

American Society of Media Photographers respectfully submits this Amicus Curiae Brief in support of Plaintiff's Motion for Re-Argument and Reconsideration of the Court's Order Granting Defendants' Motion to Dismiss (Dkt. 38).

## STATEMENT OF INTEREST

American Society of Media Photographers ("ASMP"), originally known as the Society of Magazine Photographers and later as the American Society of Magazine Photographers, was founded in 1944 and has grown to become the premier trade association for photographers who photograph primarily for publication. ASMP achieved its status through its concentration on business education for professional photographers, to help them turn their art into a viable way to earn a living. Members of ASMP receive educational materials, seminars on better business practices and related topics such as copyright issues, access to business publications for photographers, and connection to other photographers and to potential buyers. To promote its educational goals, ASMP founded The ASMP Foundation, a non-profit organization that awards grants to provide educational programs to the photographic community at large.

With its thirty-nine regional chapters, ASMP is uniquely positioned to promote the rights of photographers throughout the United States. ASMP stays apprised of new developments and works with representatives from Congress, the legal community, and other associations on matters that affect the business interests of photographers. This case is highly important to ASMP and its members. Due to the Court's ruling in this case, hundreds of thousands of individual photographic works, duly registered by the Copyright Office, among them some of the most important news and feature photography created in recent years, are no longer protected by

those registrations. For that reason, ASMP, on behalf of its members, has a particular interest in assisting the Court in its examination of the issues presented.

ASMP respectfully requests that the Court reconsider the portion of its May 4, 2010 Memorandum and Order (the "Order") (Dkt. 38) granting Defendants' motion to dismiss. The Court held that registrations of automated databases should be treated differently from registrations of serials, even though both are considered "collective works" under 17 U.S.C. § 101 and the Copyright Office has never made such a distinction. ASMP suggests that any differences in the language of the respective circulars issued by the Copyright Office (Circular 62 for serials and Circular 65 for automated databases) could arise from the fact that they were drafted at different times and presumably by different people. Those differences do not, in any event, amount to a difference in treatment under law, because circulars do not have the authority of a statute, regulation or order; they are intended as advisory and educational documents to help non-professionals better understand copyright in the United States. The ASMP urges the Court to give due deference to the Copyright Office's Compendium of Office Practices II ("Compendium II"). The Compendium II states that a copyright registration for an automated database covers the individual works comprising the database, even if every author is not listed by name on the registration.

Such a determination would be in harmony with Congress's intent, as indicated in its legislative history of recent amendments to the Copyright Act, to loosen the once uniquely rigid United States requirements for copyright ownership and enforcement, via registration, and increased penalties for copyright infringement. *See* H.R. 10238, 110th Cong. (2008). The Court's opinion runs contrary to that congressional intent and effectively nullifies the

LEGAL02/31956323v8

registrations of perhaps millions of works (not just photographs) and the practical (as opposed to the theoretical) ability of owners to protect them.

Considering the substantial public policy issues presented by the Court's ruling, American photographers may now find themselves deprived of the critical ability to recover statutory damages and attorneys' fees for past infringement, to say nothing of their need to absorb the expense and administrative burdens placed upon them by the Order.

On behalf of its members and in the spirit of seeking to help preserve a viable and economically sustainable free professional press in the United States, ASMP respectfully submits that this Court should grant Plaintiff's motion for re-argument and reconsideration and ultimately deny Defendants' Motion to Dismiss in its entirety.

## ARGUMENT AND CITATION TO AUTHORITIES

### I. Standard for Motion for Reconsideration

District Courts have discretion whether to grant or deny a motion for reconsideration. *See Devlin v. Transp. Comm'ns Union*, 175 F.3d 121, 131-32 (2d. Cir. 1999). Courts grant a motion for reconsideration when the "moving party can point to controlling decisions or [factual] data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d. Cir. 1995) (affirming district court's reconsideration of prior ruling). Matters that might alter a court's conclusion include "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or *prevent manifest injustice*." *Doe v. New York City Dept. of Social Servs.*, 709 F.2d 782, 789 (2d. Cir. 1983) (emphasis added) (internal citation omitted); *Allstate Insurance Co. v. Valley Physical Medicine & Rehabilitation, P.C.*, 555

F.Supp.2d 335, 338 (E.D.N.Y. 2008) (reconsideration is appropriate if the court misinterpreted or misapplied case law).

Although the moving party may not present "new facts, issues, or arguments not previously presented to the Court," it may introduce relevant authority not previously before the court, such as relevant case law and legislative history. *Nat'l Union Fire Ins. Co. v. Stroh Cos.*, 265 F.3d 97, 115 (2d. Cir. 2001) (quotation omitted); *see also Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d. Cir. 1995)

## II.   ASMP, on Behalf of its Members, Supports Plaintiff's Arguments.

ASMP adopts Plaintiff's position that a copyright registration for an automated database covers the individual works comprising the database even if each author of constituent works is not listed on the registration. Accordingly, even though Muench Photography, Inc. ("MPI") David Muench, and Marc Muench were not listed as authors on the applicable copyright registrations, the registrations are valid and so provide statutory protection to the individual works of MPI. Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss for Failure to State a Claim ("Plaintiff's Memo."), Dk. 35, pp. 13-19.

## III.   The District Court Should Reconsider its Ruling Granting Summary Judgment to the Defendants.

### A. The Court Gives Improper Weight to the Differences in Language Between Circular 62 (Serial Works) and Circular 65 (Automated Databases), While Failing to Defer to the Copyright Office, per Compendium II.

In its Order, this Court places undue emphasis on the fact that Circular 65, which addresses the registration of automated databases, does not contain language that a registration of a collective work covers the independently contributed works if all the rights in the work have been transferred to the claimant. The Court appears to find it critical that Circular 62, which covers serial works, does contain that language. The circulars indeed contain different language,

as would be expected from documents intended to discuss different issues. Serialization is something familiar to the publishing community and has been a part of publishing in the United States life since colonial newspapers were turned out on hand-crank presses; automated databases are strictly products of the Information Age, and the thinking about them and treatment of them is in a state of flux. It is not fair to penalize the Copyright Office and those who would innocently rely on what it says because it has not found reason to harmonize the text of two circulars written to help the public with different challenges facing different kinds of collective works.

The Court correctly notes that the Copyright Office's interpretation of the Copyright Act is entitled to deference, but it appears to examine the informational circulars as if they are statues to be interpreted by the judiciary. *See* Order, Dk. 38, p. 19, fn. 8. The Copyright Office Circulars are short, informational pages intended to guide non-professionals in the understanding of copyright law; they have been drafted at different times and for different reasons, presumably by different people, and are not written with the kind of precision and respect for cross-referencing seen in statutes and regulations. Accordingly, the fact that certain language is in one circular and not another does not necessarily mean that a different position was being taken. *See, e.g., Whelan Associates, Inc. v. Jaslow Dental Laboratory, Inc.*, 797 F.2d 1224, 1242, fn. 38 (3rd Cir. 1986) ("Copyright Office circulars are not technical documents, but are 'intended to present simple explanations of the law,' for lay persons"). The circulars are merely informational and instructional, and the Copyright Office has never held them out to be otherwise. *See* U.S. Copyright Office, Circulars, available online at www.copyright.gov/circs (providing that "circulars and factsheets below provide basic information about registration, fees, compulsory licenses, and other aspects of the copyright process").

This Court, however, applies to Circulars 62 and 65 a statutory style of interpretation in the manner of *expressio unius est exclusio alterius* to conclude that authors of individual works in an automated database who are not named on the registration do not receive protection from the registration. Order, p. 19. As informational pieces of literature produced by the Copyright Office, the expression of a policy in one circular, and not in another, is a matter of no import. As discussed below, employing that type of strict construction to the language of a circular countermands Congress's intent that copyright registrations not become a matter of form over substance, as well as decades of Copyright Office procedures.

Acting within its authority, the Copyright Office drafted its Compendium II, an administrative staff manual that provides the Copyright Office with general guidance for registration and recording of documents. 37 C.F.R. § 201.2(b)(7). The Court should reconsider and give Compendium II the deference it deserves. *See* Order, pp. 14-15. Congress expressly provides the Copyright Office with broad authority to perform appropriate administrative functions and to establish regulations. 17 U.S.C. §§ 701(b)(5), 702. As listed more fully in the Copyright Office's Statement of Interest of the United States, the Second Circuit, as well as several other courts, accord deference to Compendium II. *See, e.g.,* Statement of Interest of the United States ("Statement of Interest") (Dkt. 26), pp. 4-5; *see Shoptalk, Ltd. v. Concorde-New Horizons Corp.*, 168 F.3d 586, 592 (2d. Cir. 1999) (stating that "[t]he plain meaning of the statute and the implicit meaning of the Copyright Office's Compendium require a holding that fabric manufactured for the purpose of being made into clothing is a 'useful article' within the meaning of section 401(b)(2)"); *Langman Fabrics v. Graff Californiawear*, 160 F.3d 106, 114-15 (2d. Cir. 1998) (noting that plaintiff failed to persuasively argue to the court why defendant's reliance on case law was incorrect and his citations to the Compendium II were irrelevant);

*Horgan v. MacMillan, Inc.* 789 F.2d 157, 161 (2d. Cir. 1986) (referring to Compendium II for a definition of "choreographic work"); *Coach Inc. v. Peters*, 386 F.Supp.2d 495 (S.D.N.Y. 2005) (upholding Board of Appeals' ruling, which was based on relevant case law, regulations, and Compendium).

Section 615.06 of Compendium II treats equally all collective works, whether found on a serial work or an automated database. Section 615.06 provides that, "[t]he names of the individual authors of separate contributions being registered as part of the claim need not be given on the application. The registration may cover (a) collective work authorship, (b) any contribution created by the employee or other party commissioned by the author of a work made for hire, and (c) any other contributions that the claimant of the collective work obtained by transfer." Accordingly, the Copyright Office's practice is, and has been for more than twenty years, very clear: If the claimant has obtained the rights to an underlying work by transfer, the constituent works receive copyright protection even if the individual authors are not named. *See* Statement of Interest, p. 6 (noting that the Copyright Office adopted section 615.06 of the Compendium in 1988). Nothing in the Copyright Act states that a failure to list each author whose work comprises the collective work invalidates the registration of the constituent works, and for more than the last two decades, ASMP members have been relying on that clearly stated and statutorily supported direction in order to obtain registration and statutory protection for their copyrights.

### B. Congress' Intent was to Liberalize the Copyright Act and Not to Permit Minor Defects to Stand in the Way of Registration.

The United States is "the envy of the world for the quality and the quantity of our innovative and creative goods and services. If we want to continue to lead the world in producing intellectual property, we need to protect Americans' rights in that property." S. 9591,

LEGAL02/31956323v8

- 8 -

110th Cong. (2008). To ensure that the United States system remains "one of the best in the world," Congress amended various provisions of the Copyright Act in 2008. H.R 10238, 110th Cong. (2008); *see also* 4 Nimmer on Copyrights, § 17.01(B)(1)(a) at 17-7 (noting that statutory damages are not required under the Berne Convention, and therefore, not necessarily available in all countries).

The main goal of Congress in its recent amendments to the Copyright Act was to benefit copyright holders by strengthening civil enforcement of copyright infringement. H.R 10238, 110th Cong. (2008); H.R. 10229, 100th Cong. (2008) (stating that the bill made "changes to civil and criminal IP laws that will afford rights holders more protection and the enhancements in penalties for IP violators who endanger public health and safety."). One expression of that intent was to adopt § 411(b), which "makes it clear that a certificate of registration will satisfy registration requirements regardless of whether there is any inaccurate information on the registration application, unless the inaccurate information was included with knowledge that it was inaccurate" and the omitted information would cause the Copyright Office to deny the application. H.R. 10229, 110th Cong. (2008); *see* 17 U.S.C. § 411(b); *R.F.M.A.S., Inc. v. Mimi So,* 619 F.Supp.2d 39, 53-54 (S.D.N.Y. 2009) ( "Even if [the copyright registrant] had willfully misstated a fact in the Application…the Court may invalidate the Registration only if the Copyright Office's knowledge of the truth would have caused it to reject [the copyright registrant's] application."). The legislative history surrounding the adoption of § 411(b) demonstrates Congress's ongoing intent to liberalize the once-formulaic registration requirements. Accordingly, and to the relief of copyright holders everywhere, minor defects in copyright registration will not prevent registrants from obtaining statutory damages.

### C. Public Policy Strongly Favors the More Equitable Interpretation of the Copyright Registration Requirements Long Utilized by the Copyright Office.

Copyright law in the United States has always been something of a novelty: with its requirements for registration, in its statutory embrace of the work-made-for-hire doctrine and its virtual rejection of moral rights, the Copyright Act of the United States remains something of a "one off" among the copyright laws of developed nations. Perhaps because the United States has gone, in about one hundred years, from being one of the leading nations for copyright infringement to the leading nation for the creation of copyright-protectable content, Congress has steadily loosened the formalities of registration and notice that, under the Copyright Act of 1909, could cause the loss of copyright. At the same time, Congress has given copyright owners good weapons in their fight to preserve their hard-earned rights.

Everything that the Copyright Office has provided in Compendium II is in harmony with that national policy. However, this Court has effectively held the opposite, potentially invalidating millions of copyright registrations in individual works. That will allow many savvy defendants a "get out of jail free" card, because whatever wrongs they have committed will not be subject to the justice of statutory damages. Courtesy of the Internet and other electronic facilities, those wrongs have never been more egregious or damaging. By ruling against the spirit of the Copyright Act, evolving legislative intent, and recent amendments, this Court is subjecting every copyright registration to a level of scrutiny never intended by Congress, a level of scrutiny that, given the length of time that many of the works at issue have been registered (so the owners had thought), the sheer volume of works, as well as the great multitude of owners, cannot be corrected except by an expenditure of time and money never envisioned by Congress

or the Copyright Office—an expenditure beyond the resources of most of those whose life's work will be affected by the Order.

      Media photographers earn their living by making photographs that matter, and because of the pace of the news, they make many such photographs. Due to digital photography and electronic transmittal facilities, it is possible that an important news photograph will be published in the same hour that it was made. Continued downward economic pressures, however, make earning a living as a professional media photographer more difficult than ever. *See, e.g.,* Stephanie Clifford, NYTimes.com, March 29, 2010, "For Photographers, the Image of a Shrinking Path."[1] With rare exceptions of images that become iconic in the mind of the public (such as the photographs of the flag raising on Iwo Jima or the destruction of the airship Hindenburg), the actual damages that a media photographer can receive from the infringement of an individual photograph will not warrant the cost of initiating suit. For media photographers, therefore, statutory damages and eligibility for an award of attorneys' fees for past infringement are critical. Statutory damages in copyright infringement cases serve compensatory and punitive purposes. *Interscope Records v. Owusu*, No. 5:05-CV-0102, 2007 WL 2343676, *2 (N.D.N.Y. Aug. 13, 2007). Deterring "infringing conduct is an important element of statutory damages under the Act [and] is demonstrated by the fact that since adoption in 1976 of the present Copyright Act Congress has twice increased the statutory damages range." *Id.* By denying Plaintiff as well as enormous numbers of other registrants the right to obtain statutory damages for infringement of their individual works, copyright owners can only stand by and watch as infringers do their worst, without practical recourse to the judicial system. Just as important, the

---

[1] Article available online at: http://www.nytimes.com/2010/03/30/business/media/30photogs.html?sq=professional%20photographers&st=cse&scp=1&pagewanted=all.

ability to seek an award of attorneys' fees is often the practical *sine qua non* for a photographer to be able to obtain legal representation to halt infringement. Given the constitutionally supported importance of the media to the American way of life, depriving media photographers of those rights as to a huge catalogue of their work—rights they had every reason to believe that they had—cannot be what Congress ever intended.

The Court states that individual photographers may register their constituent works immediately and receive statutory damages in the future. Order, p. 22. As already noted, registering all those photographs would be prohibitively expensive except in rare cases and is simply unrealistic.

Because media photographers typically take many images and rarely know which, if any, will achieve great and lasting value, they must apply to register their works in bulk. Database registrations such as the one at issue are key to allowing photographers the ability to protect their livelihoods. Stock houses do not register automated databases to protect the selection and arrangement of the information on them: what matters is the individual image, not its place in what is in reality a digital sales catalogue. If the registration of an automated database cannot cover the underlying works, the registration is effectively useless.

The issues raised by the Court's Order are not limited to photography. The Court's ruling will negatively impact not only photographers but also authors of other small works published in volumes and serials, from political cartoonists to poets. Congress never intended for courts to interpret the Copyright Act in a manner that places such a burden on so many rights holders.

Based on the foregoing, ASMP respectfully submits that this Court should grant Plaintiff's motion for reconsideration.

Respectfully Submitted,

ALSTON & BIRD, LLP

*/s/ Alan Behr*

Alan Behr
New York Bar No. 1665363
Alston & Bird, LLP
90 Park Avenue
New York, NY 10016-1387
Telephone: 212-210-9400
alan.behr@alston.com
*Attorney for American*
*Society of Media Photographers*

Victor S. Perlman
New York Bar No. 2665594
American Society
of Media Photographers
150 North Second Street
Philadelphia, PA  19106-1912
Telephone: 215-451-2767
perlman@asmp.org
*General Counsel and Managing*
*Director of American Society of*
*Media Photographers*

## CERTIFICATE OF SERVICE

I hereby certify that I am a member in good standing of the bar of this Court and that on June 18, 2010, I filed the foregoing *Amicus Curiae Brief of American Society of Media Photographers* with the Clerk of the Court, and have served a copy upon the following counsel of record, via U.S. First Class Mail:

Maurice James Harmon
Harmon & Seidman LLC
The Pennsville School, 533 Walnut Dr.
Northampton , PA 18067
(610)-262-9288
Fax: (610)-262-9288
Email: maurice@mauriceharmon.

Kenneth Alan Plevan
Skadden, Arps, Slate, Meagher & Flom LLP (NYC)
Four Times Square, 42nd floor
New York, NY 10036
(212)-735-3000
Fax: 917-777-3410
Email: kplevan@skadden.com

James Russell Jackson
Skadden, Arps, Slate, Meagher & Flom LLP (NYC)
Four Times Square
New York, NY 10036
(212)-735-7839
Fax: (212)-735-2000
Email: russell.jackson@skadden.

By: /s/ Alan Behr
Alan Behr
*Attorney for American Society of Media Photographers*