UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
                              :

MUENCH PHOTOGRAPHY, INC.,     :    09 CV 2669 (LAP)
                              :
                              :    MEMORANDUM & ORDER
           Plaintiff,     :
                              :
    v.                         :

HOUGHTON MIFFLIN HARCOURT     :
PUBLISHING CO. and           :
R.R. DONNELLY & SONS CO.      :
                              :
          Defendants.    :
                              :
------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-21-13
```

LORETTA A. PRESKA, Chief United States District Judge:

    Defendants, Houghton Mifflin Harcourt Publishing Company
("HMH") and R.R. Donnelley & Sons Company ("Donnelly," and
together with HMH, "Defendants") bring this motion seeking
partial summary judgment on certain claims brought by Muench
Photography, Inc. ("Muench" or "Plaintiff") [dkt. no. 96].  For
the reasons set forth below, Defendants' motion is GRANTED in
part and DENIED in part.

I. BACKGROUND

    Plaintiff brought this action on March 23, 2009.  (See
Complaint [dkt. no. 1] ("Original Complaint").)  The Court
presumes the parties' familiarity with the facts of this case,
as previously recounted at length in the Court's opinions in
Muench Photography, Inc. v. HMH ("Muench I"), 712 F. Supp. 2d

84, 94-95 (S.D.N.Y. 2010), Muench Photography, Inc. v. HMH ("Muench II"), No. 09 Civ. 2669, 2010 WL 3958841 (S.D.N.Y. Sept. 27, 2010), and Muench Photography, Inc. v. HMH ("Muench III"), No. 09 Civ. 2669, 2012 WL 1021535 (S.D.N.Y. Mar. 26, 2012). Between Meunch II and Muench III, Plaintiff filed its First Amended Complaint (the "FAC") [dkt. no. 74] on March 25, 2011. After Muench III, fifty-one claims involving thirty-four unique images remain at issue in this action, all of which are registered in a single compilltation of David Muench's images. (Def.'s R. 56.1 Statement [dkt. no. 98] ¶¶ 22-23.)  Defendants now request partial summary judgment on certain claims by Plaintiff related to the image uses set forth on Lines 3, 16, 18, 19, 26, 27, 37, 47, 59, 60, 72, 77, 87, 88, 106, 127, 128, 143, 155, 164, 171, 181, 211, 218, 227, 235, 236, 239, 253, 256, 267, 271, 279, 284, 294, 306, 315, 333, 336, 357, 359, 374, 376, 378, 384, 392, 394, 409, 427, 431, and 434 in Exhibit A to the First Amended Complaint ("Exhibit A"), (see FAC, Ex. A).

   A.   Undisputed Facts Relating to Use of Images

   Copies of products relating to Invoice Number 779828 (corresponding to Line 227 of Exhibit A) were not printed after March 23, 2006.  Plaintiff alleges in the FAC that this invoice contains a print run limit of 63,200.  The actual use under this invoice is more than 63,200. (Def.'s R. 56.1 Statement ¶¶ 26-27.)

For the following set of invoices, which were included in Plaintiff's claims as alleged in both its Original Complaint and the FAC, copies of products relating to the relevant uses were printed after March 23, 2006.  (See id. ¶¶ 29, 31, 33, 35, 37, 41, 43, 45, 47, 49.):

- Plaintiff alleges in the FAC that Invoice Number 152536 (corresponding to Line 16 of Exhibit A) contains a print run limit of 140,000.  The actual use under this invoice is more than 140,000, and copies of products relating to this use were printed after March 23, 2006. (Id. ¶ 28.)

- Plaintiff alleges that Invoice Number 153497 (corresponding to Line 18) contains a print run limit of 250,000.  The actual use under this invoice is more than 250,000.  (Id. ¶ 30.)

- Plaintiff alleges that Invoice Number 153580 (corresponding to Line 19) contains a print run limit of 250,000.  The actual use under this invoice is more than 250,000.  (Id. ¶ 32.)

- Plaintiff alleges that Invoice Number 185635 (corresponding to Line 37) contains a print run limit of 40,000.  The actual use under this invoice is more than 40,000.  (Id. ¶ 34.)

- Plaintiff alleges that Invoice Number 250599 (corresponding to Line 72) contains a print run limit of 250,000.  The actual use under this invoice is more than 250,000.  (<u>Id.</u> ¶ 36.)

- Plaintiff alleges that Invoice Number 344431 (corresponding to Line 88) contains a print run limit of 40,000.  The actual use under this invoice is more than 40,000.  (<u>Id.</u> ¶ 40.)

- Plaintiff alleges that Invoice Number 579894 (corresponding to Line 155) contains a print run limit of 258,000.  The actual use under this invoice is more than 258,000.  (<u>Id.</u> ¶ 42.)

- Plaintiff alleges that Invoice Number 703258 (corresponding to Line 181) contains a print run limit of 100,000.  The actual use under this invoice is more than 100,000.  (<u>Id.</u> ¶ 44.)

- Plaintiff alleges that Invoice Number 762573 (corresponding to Line 218) contains a print run limit of 80,000.  The actual use under this invoice is more than 80,000.  (<u>Id.</u> ¶ 46.)

- Plaintiff alleges that Invoice Number 834539 (corresponding to Line 256) contains a print run limit of

280,000.  The actual use under this invoice is more than 280,000.  (<u>Id.</u> ¶ 48.)

Additionally, the parties do not dispute that Plaintiff alleges that Invoice Number 271885 (corresponding to Line 77) contains a print run limit of 60,000.  The actual use under this invoice is more than 60,000.  For this invoice, which was not included in Plaintiff's claims until it filed the FAC, copies of products relating to this use were printed after March 25, 2008. (<u>Id.</u> ¶¶ 38-39.)

It is further undisputed that certain products were not printed by HMH.  HMH did not publish the products identified in Lines 239, 253, 284, 378, and 434 of Exhibit A.  (<u>Id.</u> ¶ 81.) Also, HMH did not publish the Science 2007 product identified in Invoice Number 6016773 (corresponding to Line 267).  The invoice for the use in a Science 2008 product appearing on Invoice Number 6020201 (corresponding to Line 271) replaced the invoice for the use alleged on Line 267.  As such, the use alleged on Line 267 corresponding to Invoice Number 6016773 is covered by Invoice Number 6020201.  (<u>Id.</u> ¶ 82.)

Finally, it is undisputed that HMH did not use the images identified on Lines 3 and 127 of Exhibit A in the title specified in those lines, respectively.  (<u>Id.</u> ¶ 83.)

B.   <u>Facts for Which Plaintiff Claims to be without
     Sufficient Information to Admit or Deny</u>

Defendants asserts in their Rule 56.1 Statement that for

certain images the actual use under the associated invoices is

less than the respective print run limits Plaintiff alleges in

its Complaint.  (<u>See</u> <u>id.</u> ¶¶ 50-80.)  These invoices include

Invoice Numbers 164500 (corresponding to Lines 26 and 27 of

Exhibit A), 212701 (corresponding to Line 47), 239761

(corresponding to Lines 59 and 60), 342441 (corresponding to

Line 87), 414528 (corresponding to Line 106), 520157

(corresponding to Line 128), 555084 (corresponding to Line 143),

638735 (corresponding to Line 164), 676867 (corresponding to

Line 171), 752909 (corresponding to Line 211), 788662

(corresponding to Lines 235 and 236), 6020201 (corresponding to

Line 271), 6024543 (corresponding to Line 279), 6037358

(corresponding to Line 294), 6039610 (corresponding to Line

306), 6056277 (corresponding to Line 315), 6090177

(corresponding to Line 333), 6091201 (corresponding to Line

336), 6106387 (corresponding to Line 357), 6109353

(corresponding to Line 359), 7028622 (corresponding to Line

374), 7040320 (corresponding to Line 376), 7047443

(corresponding to Line 384), 7082613 (corresponding to Line 392)

7102116 (corresponding to Line 394), 8034904 (corresponding to

Line 409), 8072975 (corresponding to Line 427), and 9007059

(corresponding to Line 431).  (See id.)  For each of these statements of Defendants, Plaintiff stated in its Response to Defendants' Rule 56.1 Statement [dkt. no. 103-1]:  "Plaintiff is without sufficient information to admit or deny and requests permission to conduct discovery before the Court rules on Defendants' motion on this ground pursuant to Rule 56(d)."  (See Pl.'s R. 56.1 Resp. ¶¶ 50-79.[1])

In support of this statement, Plaintiff has submitted the following set of facts as part of its Response to Defendants' Rule 56.1 Statement.  On April 13, 2012, the Court issued a Scheduling Order setting forth the briefing schedule on Defendants' motion for summary judgment on statute of limitations grounds.  (See [dkt. no. 90]; Pl.'s R. 56.1 Resp. ¶ 86.)  Then, on May 3, 2012, HMH submitted a letter to the Court asking for an extension of the briefing schedule for its motion for summary judgment "which would address the three-year statute of limitations and identify which of the remaining 51 uses should be dismissed from this action."  (See [dkt. no. 95];

---

[1] Upon comparing both parties Rule 56.1 Statements and the organization therein, it is apparent to the Court that Plaintiff intended to make such a statement as to each of Defendants' statements contained in Paragraphs 50 through 80 but inadvertently stopped at 79.  This is so because Plaintiff continues responding under the "D.  Product Not Printed" heading with the number 80, which apparently should correspond to 81 in Defendants' Rule 56.1 Statement.  (Compare Pl.'s Rule 56.1 Resp. ¶¶ 50-82 with Defs.' Rule 56.1 Statement ¶¶ 50-83.)

Pl.'s R. 56.1 Resp. ¶ 87.)  Based on these filings and HMH's statements in conferences, Plaintiff states that it did not believe it needed to conduct discovery in order to respond to the instant motion because the only issues presented would be (1) the legal issue of which standard applied to determine when the statute of limitations began to run and (2) the fact issue of when HMH's infringements occurred and that had it known that Defendants intended to move to dismiss claims on the ground that HMH did not exceed certain license limits, Plaintiff would have pursued discovery on that issue.  (Pl.'s R. 56.1 Resp. ¶¶ 84-85, 88.)

Plaintiff first sent HMH document requests seeking licensing files and communications in May 2010, as well as an interrogatory asking for the total number of copies it printed of textbooks containing Muench's photographs.  (Id. ¶ 89.) Thereafter, on September 28, 2012, the same day Defendants filed the instant motion, HMH for the first time produced the print quantity documents on which it relies in arguing it did not exceed the print quantity limits in certain of Muench's licenses.  (Id. ¶ 90.)  HMH for the first time also produced other licensing documents regarding the licenses in suit on this same date.  (Id. ¶ 91.)

HMH has produced multiple editions of certain books bearing a single title, but HMH has not supplied print run quantities

for all such books.  Rather, for at least one series of books
(the "Pair It Books"), HMH only supplied print run quantities
for textbooks with a copyright year of 2003 and a Teacher's
Edition with a copyright year of 2006 but has not supplied print
quantities for other known and relevant editions.  (See id. ¶¶
94-95.)

Additionally, the print quantity documents contain
unexplained codes and do not appear to include all of HMH's uses
of Muench's photographs.  For example, some of the print
quantities only include products produced by vendors located in
Asia, where Muench's licenses limited distribution to North
America.  (Id.  ¶ 100.)

Plaintiff has not taken depositions of HMH employees who
compiled the print quantity documents since their disclosure on
September 28, 2012.  (Id. ¶ 101.)  Furthermore, HMH has not
produced correspondence with Corbis.  (Id. ¶ 103.)

II.  STANDARD OF REVIEW

In considering a motion for summary judgment, the Court
resolves all ambiguities and draws all reasonable inferences
against the moving party.  Lindsay v. Ass'n of Prof'l Flight
Attendants, 581 F.3d 47, 50 (2d Cir. 2009).  "Summary judgment
is appropriate only 'if the movant shows that there is no
genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law.'"  Kwan v. Schlein, 634

F.3d 224, 228 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a));
see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986);
Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).
"An issue of fact is genuine if the evidence is such that a
reasonable jury could return a verdict for the nonmoving party.
A fact is material if it might affect the outcome of the suit
under the governing law." Lindsay, 581 F.3d at 50.  "The
inquiry performed is the threshold inquiry of determining
whether there is the need for a trial — whether, in other words,
there are any genuine factual issues that properly can be
resolved only by a finder of fact because they may reasonably be
resolved in favor of either party." Liberty Lobby, 477 U.S. at
250.

     Rule 56 mandates summary judgment "against a party who
fails to make a showing sufficient to establish the existence of
an element essential to that party's case, and on which that
party will bear the burden of proof at trial." Celotex, 477
U.S. at 322.  "[T]here is no issue for trial unless there is
sufficient evidence favoring the nonmoving party for a jury to
return a verdict for that party.  If the evidence is merely
colorable or is not significantly probative, summary judgment
may be granted." Liberty Lobby, 477 U.S. at 249-50 (internal
citations omitted).  In the face of insufficient evidence,
"there can be 'no genuine issue as to any material fact,' since

a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex, 477 U.S. at 322-23.

III. ANALYSIS

At the outset, the Court notes that Plaintiff does not oppose Defendant's motion with respect to six claims where HMH did not own the products published or where the image was not used in a particular product. (See Pl.'s Response to Defs.' Second Mot. for Partial Summ. J. [dkt. no. 103] ("Pl.'s Opp'n"), at 6. Although Plaintiff offers to voluntarily dismiss these claims, such an action is improper at this stage of the proceedings. See Fed. R. Civ. Proc. 41. Therefore, the Court grants summary judgments in favor of Defendants on the claims set forth in Lines 239, 253, 267, 284, 378, and 434 of Exhibit A.

The Court now considers the remaining issues as to why Defendants assert summary judgment is appropriate at this stage.

A.   Statute of Limitations

The parties agree that the principal question of law at issue with respect to whether certain of Plaintiff's claims are time-barred is when a copyright infringement claim accrues under the three-year statute of limitations in the Copyright Act, 17 U.S.C. § 507(b).

11

The Copyright Act states that "[n]o civil action shall be maintained under this title unless it is commenced within three years after the claim accrued." Id. At issue is whether Congress intended courts to apply the injury rule or the discovery rule when determining when an infringement claim accrues. Defendants urge that Congress intended the former, and Plaintiff urges the latter.

Prior to the Supreme Court's decision in TRW v. Andrews, 534 U.S. 19 (2001), courts in this Circuit applied the discovery rule in copyright infringement cases. Indeed, the Court of Appeals seemed to have instructed as much through its holdings in Stone v. Williams, 970 F.2d 1043, 1048 (2d Cir. 1992), and Merchant v. Levy, 92 F.3d 51, 56 (2d Cir. 1996). TRW, however, has prompted courts in this Circuit to reexamine whether Stone and Merchant continue to govern the issue of when a copyright infringement claim accrues. For example, in Auscape International v. National Geographic Society, Judge Kaplan found that the Court of Appeals had never explicitly addressed whether the discovery rule or injury rule governs infringement claims and that, in the wake of TRW, an examination of the statutory structure and legislative history of Copyright Act was necessary to determine which rule should apply. 409 F. Supp. 2d 235, 241-47 (S.D.N.Y. 2004). Upon such an examination, Judge Kaplan concluded that Congress had intended for the injury rule to

govern the limitations period with respect to infringement claims.  Id. at 247.

Since Auscape, the prevailing trend among the courts in this Circuit has been to reject application of the discovery rule in favor of the injury rule.  See, e.g., Urbont v. Sony Music Entm't Corp., 863 F. Supp. 2d 279, 282 (S.D.N.Y. 2012); Bill Diodato Photography LLC v. Avon Prods., Inc., No. 12 Civ. 847 (RWS), 2012 WL 3240428, at *3 (S.D.N.Y. Aug. 7, 2012); Harris v. Simon & Schuster, Inc. 646 F. Supp. 2d 622, 630 (S.D.N.Y. 2009); Broadvision Inc. v. Gen. Elec. Co., No. 08 Civ. 1478 (WHP), 2009 WL 1392059, at *6 (S.D.N.Y. May 5, 2009).  But see Psihoyos v. John Wiley & Sons, Inc., No. 11 Civ. 1416 (JSR), 2011 WL 4916299, at *5 (S.D.N.Y. Oct. 14, 2011); Newsome v. Brown, No. 01 Civ. 2807 (TPG), 2005 WL 627639, at *5 (S.D.N.Y. Mar. 16, 2005).  Plaintiff, however, asserts that this trend is the product of a too expansive interpretation of TRW and that district courts remain obligated to follow the rule set forth in Merchant and Stone.

Plaintiff supports this contention in part by drawing the Court's attention to Parks v. ABC, Inc., 341 Fed. Appx. 737, 738-39 (2d Cir. 2009) (summary order).  Plaintiff characterizes Parks as a case involving both copyright ownership and infringement claims where the Court of Appeals applied the discovery rule to both types of claims.  (See Pl.'s Opp'n, at

13

9.) But Plaintiff's characterization of <u>Parks</u> as straightforward in this regard is generous at best.

While the <u>Parks</u> court stated that "[a] cause of action accrues when the plaintiff knows or has reason to know of the injury upon which the claim is premised," <u>id.</u> at 738 (citing <u>Merchant</u> and <u>Stone</u>), this Court interprets such a statement as limited to the context of the ownership claims the <u>Parks</u> court was discussing in the paragraph in which that sentence appears. A review of the prior proceedings in <u>Parks</u> reflects the fact that while <u>Parks</u> was clearly an ownership dispute, the court construed the plaintiff's claims as possibly also asserting infringement claims in light of her <u>pro se</u> status. <u>See Parks</u>, No. 06 Civ. 1364 (DAB)(GWG), 2007 WL 4800666, at *8-9 (S.D.N.Y. Feb. 16, 2007) (Report & Recommendation), <u>adopted as modified by</u> No. 06 Civ. 1364 (DAB), 2008 WL 205205, at *1 (S.D.N.Y. Jan. 24, 2008). Indeed, the paragraph following the court's discussion of the plaintiff's ownership claims, the Court of Appeals states:

> <u>To the extent that Parks's complaint can be characterized as asserting that appellees infringed on her copyrights</u>, we also agree with the district court that her claims are time barred. Every act of infringement is a "distinct harm" that gives rise to an independent claim for relief. [The defendant] could not have been responsible for any infringement that occurred <u>within three years of the filing of this lawsuit</u>, because it sold its interest in the disputed songs in 1979.

14

<u>Id.</u> at 739 (emphasis added) (citations omitted).  As such, not
only is it clear that the principal issue in <u>Parks</u> involved
allegations surrounding ownership of certain copyrights, but had
the Court of Appeals intended to use <u>Parks</u> to reaffirm that the
discovery rule governs the limitations period over infringement
claims, the court surely would have chosen less ambiguous
language than "<u>any infringement within</u> three years of the <u>filing</u>
of this lawsuit."  At minimum, such language leaves the question
open as to which rule governs in this Circuit after <u>TRW</u>.  Taken
literally, though, such language appears to indicate that courts
should apply the injury rule in the context of infringement
claims.

　　　　Having reviewed parties' arguments and the relevant case
law, this Court finds persuasive Judge Kaplan's thorough
examination and reasoning in <u>Auscape</u>, as well as the analysis of
the other courts applying the injury rule, and joins what is now
the majority approach in this jurisdiction in adopting the
injury rule for the purposes of evaluating whether copyright
infringement claims are time barred.[2]  It follows that upon

---

[2] As Justice Scalia points out in his concurring opinion in <u>TRW</u>,
"[o]ther than [the Supreme Court's] historical exception for
suits based on fraud, [the Supreme Court has] deviated from the
traditional rule and imputed an injury-discovery rule to
Congress on only one occasion."  <u>TRW</u>, 534 U.S. at 37 (Scalia, J.
concurring) (citation omitted).  Even assuming the plaintiff
here was presented with a situation in which the alleged
(cont'd)

application of the injury rule, summary judgment is appropriate in favor of Defendants on statute of limitations grounds for one claim set forth on Line 227 of Exhibit A because no printing of this image occurred after March 23, 2006, and for ten claims set forth on Lines 16, 18, 19, 37, 72, 88, 155, 181 218, and 256 with respect to any printings that occurred prior to March 23, 2006.  Additionally, with respect to Line 77 of Exhibit A, the Court holds that, although this claim was not alleged in the FAC, it arises out of the same conduct set out in the Original Complaint and properly relates back pursuant to Federal Rule of Civil Procedure 15(c)(1)(B) because Defendants received adequate notice of this matter "within the statute of limitations by the general fact situation alleged in the Original Complaint," see Slayton v. Am. Exp. Co., 460 F.3d 215, 228 (2d Cir. 2006)[3]; thus,

_____

(cont'd from prev. page)
infringement was latent, it does not follow that copyright infringement claims "cry out" for application of a discovery rule.  At their heart, copyright infringement claims involve open publication, and the Court holds that just because one purported victim of such infringement may have "ha[d] no knowledge of his right to sue, or of the facts out of which his right arises, [such] does not postpone the period of limitation," and is insufficient to merit an across-the-board discovery rule for infringement claims under the Copyright Act. See id.

[3] Given the pleadings in the Original Complaint set forth in ¶¶ 15 through 17 along with the consistency of Plaintiff's legal theories between each respective claim, the Court is not convinced that the claim set forth in Line 77 of Exhibit A asserts a new, distinct set of operative facts simply because each individual license for use of an image may represent a (cont'd)

summary judgment is appropriate on statute of limitations grounds for the claim set forth on Line 77 only with respect to any printings that occurred prior to March 23, 2006.

    B.   <u>Defendants' Motion for Summary Judgment on Additional Grounds</u>

    Consistent with Defendants' representations to this Court and to Plaintiff, the Court issued a Scheduling Order and subsequent amendments thereto "for Defendants' motion for summary judgment <u>on statute of limitations grounds</u>." (Scheduling Order [dkt. no. 90]; <u>see also</u> [dkt. nos. 91, 95].) It is the Court's recollection with respect to a teleconference the Court held with the parties on or about April 11, 2012, prior to issuing the April 13, 2012, Scheduling Order, Plaintiff made its position clear that it believed additional discovery would be necessary before briefing any motion for summary judgment in which the scope exceeded the statute of limitations issue.  The Court then instructed the parties that no additional discovery was required before Defendants' motion for summary judgment on the statute of limitations issue.  As far as the Court can tell, Defendants' only allusion to the fact that its moving papers may exceed this scope is a statement it made in

_____

(cont'd from prev. page)
separate business transaction and consist of separate documents, (Defs.' Reply in Support of their Mot. for Partial Summ. J. [dkt. no. 104], at 1 n.1).

its undocketed August 31, 2012, letter to the Court regarding
the appropriateness of filing certain information under seal
that "the purpose of Defendants' Summary Judgment Motion is to
identify those claims that are time-barred or otherwise not
viable on their face."  Considering (1) the Court's instructions
to the parties regarding the appropriateness of conducting
further discovery in light of the limited scope of the instant
motion, (2) Plaintiff's long-stated interest in pursuing
discovery prior to any motion purporting to seek summary
judgment on additional grounds, (3) Plaintiff's representations
that it did not pursue further discovery as a result of the
Court's instruction and Defendant's representations regarding
the scope of the instant motion, and (4) Plaintiff's
representation that it at least needs to depose HMH employees
responsible for producing the print quantity documents in order
to evaluate the degree to which potential factual
inconsistencies to which it directs the Court in its brief may
result in discovering the existence of a genuine issue of
material fact as to whether HMH exceeded the licensed print runs
for these uses, the Court denies as premature Defendants' effort
essentially to blindside Plaintiff with a motion for summary
judgment on additional grounds.  The parties shall appear for a
conference as set forth below to discuss the appropriate scope
of any additional discovery that may be needed.

18

IV.   CONCLUSION

Defendants' motion for partial summary judgment is GRANTED in part and DENIED in part.   The Court grants summary judgment in favor of Defendants on the claims set forth in Lines 239, 253, 267, 284, 378, and 434 of Exhibit A.   The Court further grants summary judgment in favor of Defendants on statute of limitations grounds with respect to the printing of any images at issue in this suit that occurred prior to March 23, 2006. Finally, the Court denies as premature the remainder of Defendants' motion for summary judgment.

The parties shall confer and inform the Court by letter no later than September 9, 2013, as to how they wish to proceed.

SO ORDERED:

Dated:     New York, New York
           August 21, 2013

_____
LORETTA A. PRESKA
Chief United States District Judge