USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/12/15

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
MUENCH PHOTOGRAPHY, INC.,               :       09 Civ. 2669 (LAP)
                                        :
              Plaintiff,                :       OPINION & ORDER
                                        :
         v.                             :
                                        :
HOUGHTON MIFFLIN HARCOURT               :
PUBLISHING CO. and                      :
R.R. DONNELLY & SONS CO.,               :
                                        :
              Defendants.               :
------------------------------x

LORETTA A. PRESKA, Chief United States District Judge:

On February 10, 2014 Plaintiff Muench Photograph Inc. ("MPI") filed a Notice of Errata purporting to correct certain "misstated facts" in its various prior submissions. (Plaintiff's Notice of Errata, dated Feb. 10, 2014 [dkt. no. 116] ("Pl.'s Errata" or the "Errata").)  Following correspondence between the parties, this Court stayed pending requests in related cases (Order, dated Mar. 10, 2014 [dkt. no. 120]) and permitted Defendants Houghton Mifflin Harcourt Publishing Company ("HMH") and R.R. Donnelly & Sons Company (collectively, "Defendants") to move to strike Plaintiff's Errata. (Order, dated Aug. 18, 2014 [dkt. no. 131]. Subsequently, Defendants moved this Court for such relief. (See Mot. to Strike Pl.'s Notice of Errata, dated Oct. 3, 2014 ("Defs.' Motion to Strike") [dkt. no. 136].)  For the reasons below, the Court GRANTS Defendants' Motion to Strike.

1

I.  BACKGROUND

The Court assumes the parties' familiarity with the factual background of the case and focuses on the specific issues raised by Plaintiff's Errata.

This litigation arises out of Plaintiff's allegation, under 17 U.S.C. § 501 et seq. (the "Copyright Act"), that Defendants engaged in the unauthorized and impermissible use of Plaintiff's images. Although summarized by this Court's prior orders, the players and their roles bear recounting: MPI engages in the business of licensing photographs on behalf of David and Marc Muench (Complaint, dated Mar. 23, 2009 [dkt. no. 1] ("Complaint"), at ¶ 2); HMH is a publisher that sells and distributes textbooks, including textbooks containing images licensed by MPI (id. ¶¶ 3-5); and Corbis Corporation ("Corbis"), is a privately held photography stock licensing agency that sold HMH limited licenses to copy and distribute approximately 180 of MPI's images (the "Images") (id. ¶¶ 2, 11). MPI's basic allegation is that HMH exceeded the scope and terms of those licenses, causing unauthorized reproductions of the Images to be made and distributed. (See generally, Memorandum and Order, dated May 4, 2010 [dkt. no. 38], at 2-6.)

Throughout this litigation, which began in 2009, Plaintiff has represented that Marc and David Muench were the

2

authors of the works at issue and personally transferred their copyrights in those works to Corbis for registration purposes. (See Pl.'s Notice of Errata.)  Indeed, Plaintiff made that representation in multiple filings submitted to this Court.[1]  In perhaps the starkest example of this representation, both David and Marc Muench filed—twice each—a signed Copyright Assignment Affirmation Declaration.  The Copyright Assignment Declarations read, in pertinent part:

> The undersigned ... photographer, pursuant to 28 U.S.C. §1746, in order to assure the clarity of the intent, purpose and effect of my previous copyright transfer agreement evidenced by my signed writings dated September 30, 1997 and November 15, 2001 ... declare, acknowledge, affirm and agree that I intended and believed I made, a full, complete and total transfer of all my copyrights to all my photographs which were accepted by [Corbis] into is collection for licensing, as the owner of all copyrights thereby transferred, has subsequently registered, including those attached to the Complaint ... and all others for which the Copyright Office issued registration certificates ....

---

[1] Pl. gives notice to errata with respect to the following filings: Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss Complaint, dated Sept. 1, 2009 [dkt. no. 18]; Letter re: Opp'n to Defs.' Mot. to Dismiss, dated Dec. 18, 2009 [dkt. no. 25]; Copyright Assignment Aff. Decl. filed by David Muench [dkt. nos. 25 Ex. 3, 35 Ex. 9] ("D. Muench Copyright Assignment Decl.") and Marc Muench [dkt. nos. 25 Ex. 2, 35 Ex. 8] ("M. Muench Copyright Assignment Decl.") (together, the "Muench Copyright Assignment Decls."); Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss for Failure to State a Claim, dated Mar, 29, 2010 [dkt. no. 35]; and Pl.'s Mem. of Law in Opp'n to Defs.' Third Mot. to Dismiss for Failure to State a Claim, dated Jan. 4, 2012 [dkt. no. 83].

(Muench Copyright Assignment Decls.)  There had been no question, prior to the filing of Plaintiff's Errata, that David and Marc Muench personally owned the copyrights of the Images and transferred them to Corbis for registration purposes.  The Court relied on this representation in resolving Defendants' motions to dismiss for lack of subject matter jurisdiction (see Order, dated Mar. 5, 2010 [dkt. no. 29]) and failure to state a claim (see Memorandum and Order, dated May 4, 2010 [dkt. no. 38]; Memorandum and Order, dated Mar. 26, 2012 [dkt. no. 86]), among other rulings.  Put plainly: Plaintiff has consistently and repeatedly represented as to the above-described facts regarding copyright ownership, transfer, and registration.

However, Plaintiff MPI now claims the correct facts are as follows:

> Plaintiff is the author, owner and exclusive copyright holder of the photographic images attached to the First Amended Complaint because they were created by David Muench and Marc Muench as employees of Plaintiff's predecessor David Muench Photography, Inc. [("DMPI")], working within the scope of their employment [see attached Declarations].  On June 1, 2001, [MPI] transferred to Marc Muench ownership of the copyrights in certain images that are listed in Exhibit A to the First Amended Complaint, and Marc Muench granted MPI an exclusive license in those images ....  Marc Muench then transferred all copyrights and legal titled to the Images in MPI's collection to MPI on November 20, 2008 ....

4

(Pl.'s Notice of Errata at 2.)  MPI supports its Errata with the attached sworn declarations of both David (see Pl.'s Notice of Errata Ex. A, Decl. of David Muench, dated Jan. 30, 2014 ("D. Muench Decl.")) and Marc Muench (see id. Ex. B, Decl. of Marc Muench, dated Jan. 30, 2014) ("M. Muench Decl.")) (together, the "Declarations").  The Declarations corroborate the facts as stated in the paragraph above.  Specifically, the Declarations advance the theory that, because David and Marc Muench were employees of MPI (and DMPI before that), the images they created are MPI's property under the "work for hire" doctrine.  17 U.S.C. § 101 (1994) (defining "work made for hire" as "a work prepared by an employee within the scope of his or her employment"); see also Cmty. for Creative Non-Violence v. Reid, 490 U.S. 730, 751-52 (1989) (elaborating on the work for hire doctrine).

In an attempt to reconcile Plaintiff's Errata with the existing facts of the case, this Court granted Defendants' request to make additional, targeted discovery.  (Order, dated Apr. 16, 2014 [dkt. no. 123].)  In particular, that discovery included depositions of David Muench, Marc Muench, and MPI (given by Marc Muench).  (See Decl. of Steven Napolitano in Support of Defs.' Mot. to Strike Pl.'s Notice of Errata, dated Oct. 3, 2014 [dkt. no. 138] ("Napolitano Decl."), Exs. 1 ("D. Muench Dep."), 2 ("M. Muench Dep."), and 3 ("MPI Dep.").)

II.  LEGAL STANDARD

The parties' submissions cite different legal standards.  Plaintiff correctly states the standard for a motion to strike pursuant to Fed. R. Civ. P. ("Rule") 12(f).  (See Pl.'s Resp. to Mot. to Strike Notice of Errata, dated Oct. 22, 2014 [dkt. no. 139] ("Pl.'s Opp'n"), at 2-4.)  Rule 12(f) provides a mechanism through which a party can move to strike "from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  A "pleading" as used in Rule 12(f) includes: "(1) a complaint; (2) an answer to a complaint; (3) an answer to a counterclaim designated as a counterclaim; (4) an answer to a crossclaim; (5) a third-party complaint; (6) an answer to a third-party complaint; and (7) if the court orders one, a reply to answer."  See Fed. R. Civ. P. 7(a).  "Motions to strike are generally not favored" and a movant must meet a high bar to prevail on such a motion.  See, e.g., Bey v. City of N.Y., No. 99 Civ. 3873 (LMM) (RLE) (consolidated cases), 2010 WL 3910231, at *2 (S.D.N.Y. Sept. 21, 2010), aff'd 454 Fed. App'x. 1 (2d Cir. 2011), cert. denied, 133 S.Ct. 40 (2012).

However, HMH's Motion to Strike does not rely on Rule 12(f).  (See Defs.' Mem. of Law in Support of Their Mot. to Strike Pl.'s Notice of Errata, dated Oct. 3, 2014 [dkt. no. 137] ("Defs.' Mem."), at 3; Defs.' Reply Mem. in Further Support of

6

Mot. to Strike Pl.'s Notice of Errata, dated Oct. 29, 2014 [dkt. no. 142] ("Defs.' Reply"), at 1-3.)  Rather, HMH asks this Court to strike Pl.'s Notice of Errata pursuant to the Court's inherent authority to manage the cases before it.  (See id.)  It is well-established that a court has the "inherent authority" to manage the cases before it.  See In re UBS Auction Rate Sec. Litig., No. 08 Civ. 2967 (LMM), 2010 WL 2541166, at *16 (S.D.N.Y. June 10, 2010) (citing Farid v. Bouey, 554 F.Supp.2d 301, 313 (N.D.N.Y. 2008) ("considering motion to strike because "request[ed] relief ... squarely lies within the inherent authority of the court.").)  And, as HMH correctly points out, that "inherent authority" includes the court's ability "to strike any filed paper which it determines to be abusive or otherwise improper under the circumstances." NRDC v. FDA, 884 F.Supp.2d 108, 115 n.5 (S.D.N.Y. 2012) (citing In re Bear Stearns Cos., Inc., Sec., Derivative, and ERISA Litig., 763 F.Supp.2d 423, 581 (S.D.N.Y. 2011)).

III. DISCUSSION

Both the substance and procedural posture of this motion are unusual. After repeating, explicitly, one set of facts for approximately five years of litigation, upon which the Court relied in more than one decision, Plaintiff filed an errata representing an entirely opposite set of facts. Defendants then sought, and were granted by this Court, permission to challenge those new facts by way of a motion to strike the Errata—a procedural mechanism more often associated with opposing subsequent changes to deposition testimony under Fed. R. Civ. P. 30(e). See, e.g., Podell v. Citicorp Diners Club, Inc., 112 F.3d 98, 103 (2d Cir. 1997), cf. EBC, Inc. v. Clark Bldg. Sys., Inc., 618 F.3d 253, 267 n.14 (3d Cir. 2010); see also, HR U.S. LLC v. Mizco Int'l, Inc., Civil Action No. 07-CV-2394 (DGT)(JO), 2010 WL 3924548, at *9 (S.D.N.Y. Sept. 29, 2010). Complicating matters further, Defendants do not move pursuant to Rule 12(f); rather, the Motion to Strike is styled as one asking the Court to invoke its "inherent authority" to manage its docket. (See Defs.' Mem. at 3; Defs.' Reply at 1-3.) Defendants request this relief to prevent the "Errata's attempt to re-write the record" (Defs.' Mem. at 2); while, for its part, Plaintiff intends the Errata "solely to set the record straight." (Pl.'s Opp'n at 2.) It is an odd controversy to encounter at the stage of the litigation.

8

All that said, the issue ultimately rests on a simple inquiry: has Plaintiff offered evidence to support the Errata's version of events, sufficient to supplant the existing facts?[2] The Court finds it has not. Rather, the newly discovered evidence supports the existing facts. In particular, the Court relies on the depositions of David Muench, Marc Muench, and MPI (Napolitano Decl. Exs. 1-3); various agreements by and between David Muench and Corbis, and between Marc Muench and Corbis, regarding assignment and reassignment (id. Exs. 4-11, 18); documents regarding copyright registration (id. Exs. 12-14); and various employment and compensation agreements (id. Exs. 15-17).

Plaintiff's work for hire theory is flatly contradicted by the record, both "old" and "new." Even putting aside for a moment what David and Marc Muench intended, the relevant documents explicitly disavow work for hire. Plaintiff makes much of various employment documents—corporate minutes, W-2s, compensation agreements, and the like—allegedly demonstrating that David and Marc Muench were employees of DMPI

---

[2] The Court rejects Plaintiff's argument that "... court records frequently contain both evidence and testimony that tends to prove an asserted fact, and evidence that contradicts that fact. This is not a proper basis to strike a court filing from the record." (Pl.'s Opp'n at 4.) While Plaintiff's assertion regarding records may be accurate in some cases, it is not here, where Plaintiff has introduced an errata (and supporting declarations) directly contradicting sworn affidavits Plaintiff itself has submitted twice. Plaintiff's argument is disingenuous at best.

9

(and later MPI) and created the Images in the course of their employment. (Pl.'s Opp'n at 4-7.) However, the recently-discovered employment agreement Plaintiff relies on to advance its work for hire theory reads, in pertinent part:

> "Employee shall be the sole and exclusive owner of all transparencies produced by Employee during his employment with the Company, including all such transparencies that Employee has produced since Employee commenced working as an employee of the Company and all such transparencies that Employee hereafter produces during the term hereof .... Notwithstanding any presumption to the contrary in applicable copyright law ... such Transparencies shall be conclusively deemed <u>not</u> to be "works made for hire," ....

(Napolitano Decl. Ex. 15, Employment Agreement, dated June 1, 2001, by and between MPI and M. Muench (the "Employment Agreement"), at 3.1.) That the emphasis on "<u>not</u>" is in the original agreement serves to underscore the obvious. Moreover, in his recent deposition, Marc Muench corroborated the already-clear Employment Agreement, stating that, when he was working for DMPI, "[m]y understanding was that the images were owned by me if I took them, yes." (M. Muench Decl. 43:5-44:8.) Plaintiff's argument that the June 1, 2001 Employment Agreement is inapplicable because the Images were created prior to that date (<u>see</u> Pl.'s Opp'n at 6) is contradicted by a combination of the Employment Agreement, recently-taken deposition testimony, and common sense: the Employment

10

Agreement continued the existing relationship between David/Marc Muench and DMPI with David/Marc Muench and MPI. The names may have changed, but the understanding that the Images were not works for hire remained the same.

The targeted discovery, including deposition testimony, only serves to corroborate the existing version of events. As Plaintiff concedes, Defendants have conclusively established that the copyright registrations that include the Images do not indicate that the photographs were created as works for hire or that DMPI or MPI was the owner at the time of registration; indeed, the majority of these registrations were filed by Corbis on DMPI or MPI's behalf. (See Pl.'s Opp'n at 7.) The documents tell the same story as the Employment Agreement and the depositions: the Images were not works for hire.

All that remains are Plaintiff's arguments that the Muenchs' "testimony ... cannot change the legal fact of ownership" and that MPI's "'belief' regarding who owned the [Images] is not dispositive." (Id. at 7, 8-10.) This basically amounts to Plaintiff's arguing that the Images are not personally owned by David and Marc Muench—and are instead works for hire—by virtue of the Muenchs' allegedly mistaken belief that the Images were their personal property. Even allowing

11

arguendo that the Muenchs' intent is irrelevant, Plaintiff's argument cuts both ways: just as, according to Plaintiff, belief cannot transform works for hire into personal property, the reverse is also true. Perhaps David and Marc Muench always intended the Images to be the property of MPI or DMPI—consciously or unconsciously. But the documents and five years of litigation tell a different story, and what the Muenchs now believe (or always believed, depending on one's point of view) does not alter the basic facts.

Finally, although this Order does not rely on it, the Court briefly addresses the Pearson case raised by Defendants. Muench Photography, Inc. v. Pearson Educ., No. 12-cv-01927-WHO, 2013 WL 6185200, at *6-8 (N.D. Cal. Nov. 19, 2013). Defendants suggest that Plaintiff's Errata was filed as a direct reaction to Pearson, a strikingly similar case to the above-captioned matter taking place in the N.D. Cal., where Plaintiff MPI's claims were dismissed based on, among other factors, lack of standing. (See Letter from Defs., dated Feb. 25, 2014 [dkt. no. 119], at 2; Letter from Defs., dated June 10, 2014 [dkt. no. 128], at 2-3.) There, MPI proffered declarations setting forth the work for hire theory advanced in the Errata in this litigation. The court thoroughly rejected MPI's argument, lending no credence to the Muenchs' "uncorroborated and self-serving statements" and referencing other documents Plaintiff

12

has produced in the Errata-related discovery here that contradict Plaintiff's work for hire theory. Pearson, 2013 WL 6185200 at *6; see also Perma Research and Development Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1969) (stating the so-called "sham affidavit" rule). Here, the Court need not, and does not, reach the question of whether Plaintiff's Errata was the direct result of the Pearson litigation. It does, however, note the outcome of a similar argument advanced in similar litigation.

IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' Motion to Strike [dkt. no. 116]. The Clerk of Court is directed to strike that entry from the docket. The parties shall confer and inform the Court within twenty-one business days of this Order of the status of the litigation in light of this ruling, including: any potential motions the parties wish to file; the parties' respective positions regarding Plaintiff's request for permission to file an interlocutory appeal in this case [dkt. no. 113]; and Defendants' motion to dismiss in the related case 13 Civ. 834 [dkt. no. 7].

SO ORDERED.

Dated:   New York, New York
         August 11, 2015

_____
LORETTA A. PRESKA
Chief United States District Judge